Main Document Page 1 of 46

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number
DANIEL I. BARNESS
SPIRO MOSS BARNESS & HARRISON LLP
11377 W. OLYMPIC BLVD., FIFTH FLOOR
LOS ANGELES, CA 90064
TEL: (310) 235-2468
FAX: (310) 235-2456

☐ *Individual appearing without counsel*

☒ *Attorney for:* ARBUS, FOX & ILG, CREDITORS

FOR

05/07/2004 **FILED** 15:49
**LA04-12883EC**
DEBTOR:
TONKEN, AARON
JUDGE: HON. E. Carroll - 586
TRUSTEE:
CHAPTER: 07 MOTION

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF. ID: 735
RECEIPT NO: LA-015105 $ 150.00

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA**

In re: AARON TONKEN

Debtor(s).

CHAPTER 7

CASE NO.: LA 04-12883 EC

DATE: 6/1/04
TIME: 1:30 am
CTRM: 255 E. TEMPLE ST.
FLOOR: 1639

# NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)
## (MOVANT: LOREEN ARBUS, NORMAN CHANDLER FOX, ET AL.)
## (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:** ☒ **255 East Temple Street, Los Angeles** ☐ **411 West Fourth Street, Santa Ana** ☐ **21041 Burbank Boulevard, Woodland Hills** ☐ **1415 State Street, Santa Barbara** ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

   ☐ at the hearing ☐ at least ________ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised May 2004*

**F 4001-1M.NA**

55

Main Document Page 2 of 46

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of 7* **F 4001-1M.NA**

| In re (SHORT TITLE)<br>AARON TONKEN<br>Debtor(s). | CHAPTER: 7<br>CASE NO.: LA 04-12883 EC |
|---|---|

5. If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 5/7/04

SPIRO MOSS BARNESS & HARRISON LLP
*Print Law Firm Name (if applicable)*

DANIEL I. BARNESS
*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.
*Revised May 2004* **F 4001-1M.NA**

Main Document Page 3 of 46

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 3 of 7* **F 4001-1M.NA**

| In re (SHORT TITLE)<br>AARON TONKEN<br>Debtor(s). | CHAPTER: 7<br>CASE NO.: LA 04-12883 EC |
|---|---|

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## (MOVANT: LOREEN ARBUS, NORMAN CHANDLER FOX, ET AL. )

1. **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

   Case name: PEOPLE V. TONKEN / ARBUS et al. v. TONKEN, et al.
   Docket number: BC 292011 AND SC 78948 (consolidated cases)
   Court or agency where pending: Los Angeles County, Superior Court

2. **Case History:**
   a. [X] A voluntary [ ] An involuntary petition under Chapter [X] 7 [ ] 11 [ ] 12 [ ] 13 was filed on *(specify date)*:
   b. [ ] An Order of Conversion to Chapter [ ] 7 [ ] 11 [ ] 12 [ ] 13 was entered on *(specify date)*:
   c. [ ] Plan was confirmed on *(specify date)*:
   d. [ ] Other bankruptcy cases affecting this action have been pending within the past two years. See attached Declarations
   e. For additional case history, see attached continuation page.

3. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:
   a. [ ] The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.
   b. [ ] The claim is insured. Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.
   c. [ ] Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
   d. [X] Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case
   e. [X] The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.
   f. [X] The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.
   g. [X] Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4. [ ] Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** ***(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)***
   a. [X] Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.
   b. [ ] Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit ________.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.
*Revised May 2004* **F 4001-1M.NA**

Main Document Page 4 of 46

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 4 of 7* **F 4001-1M.NA**

| In re (SHORT TITLE) AARON TONKEN Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: LA 04-12883 EC |

c. [X] Other evidence *(specify)*:

1. Complaint in SC 078948
2. State of California's Motion for Relief From Stay filed herein on or about 3/23/04 of which Court is asked to take Judicial Notice

6. [X] **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1. Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:
   a. [X] Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate
   b. [ ] Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).
   c. [ ] Modifying or conditioning the stay as set forth in the attached continuation page:
2. Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.
3. [X] Additional provisions requested:
   a. [X] That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
   b. [X] That the 10-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived
   c. [X] That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M ER)*.
   d. [ ] For other relief requested, see attached continuation page.
4. If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 5/7/04

Respectfully submitted,

LOREEN ARBUS, NORMAN CHANDLER FOX, ET AL.
*Movant Name*

SPIRO MOSS BARNESS & HARRISON LLP
*Firm Name of Attorney for Movant (if applicable)*

By: [signature]
*Signature*

Name: DANIEL I. BARNESS
*Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised May 2004* **F 4001-1M.NA**

| In re AARON TONKEN (SHORT TITLE) Debtor(s). | CHAPTER: 7<br>CASE NO.: LA 04-12883 EC |
|---|---|

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
## (MOVANT: LOREEN ARBUS, NORMAN CHANDLER FO.)

I, LEONARD MACHTINGER, declare as follows:
*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:
   a. ☐ I am the Movant.
   b. ☒ I am the Movant's attorney of record in the Non-bankruptcy Action.
   c. ☐ I am employed by the Movant as *(state title and capacity)*:
   d. ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The Non-bankruptcy Action at issue is currently pending as:

   Case name: PEOPLE V. TONKEN / ARBUS et al. v. TONKEN, et al.
   Docket number: BC 292011 AND SC 78948 (consolidated cases)
   Court or agency where pending: Los Angeles County, Superior Court

4. **Procedural Status:**

   a. The causes of action pleaded in the non-bankruptcy forum are *(list)*:
   FRAUD, CONVERSION, BREACH OF FIDUCIARY DUTY, BREACH OF WRITTEN CONTRACT, BREACH OF ORAL CONTRACT, RESTITUTION OF GIFT, IMPLIED PRIVATE RIGHT OF ACTION FOR VIOLATION OF PENAL CODE 532d

   True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit A.

   b. The Non-bankruptcy Action was filed on *(specify date)*: 9/17/03

   c. Trial or hearing began/is scheduled to begin on *(specify date)*: 1/19/05

   d. The trial or hearing is estimated to require the following number of court days *(specify)*: 30 days

   e. Other defendants to the Non-bankruptcy Action are *(specify)*: AARON TONKEN & ASSOC; RONIN LAW GRP; K CLARKE

5. **Grounds for relief from stay:**
   a. ☐ The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

| In re AARON TONKEN (SHORT TITLE) Debtor(s). | CHAPTER: 7 CASE NO.: LA 04-12883 EC |
|---|---|

b. [X] The matter can be tried more expeditiously in the non-bankruptcy forum.

(1) [X] It is currently set for trial on: 1/19/05

(2) [ ] It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*: The basis for this belief is *(specify)*:

(3) [X] The matter involves non-debtor parties who are not subject to suit in the bankruptcy court. A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c. [ ] The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

(1) [ ] Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s)

(2) [ ] The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

(3) [ ] Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter [ ] 11 [ ] 13 bankruptcy case based upon the following facts *(specify)*:

d. [X] For other facts justifying relief from stay, see attached continuation page

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** May 6, , 2004 , **at** LOS ANGELES, CALIFORNIA ***(city, state)***.

LEONARD MACHTINGER
*Print Declarant's Name*

*Signature of Declarant*

05/06/04 17:31 FAX 310 552 2931 KENOFF & MACHTINGER ATT 002
May 06 2004 1:46PM HP LASERJET 3200 p.3

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of 7* **F 4001-1M.NA**

| In re AARON TONKEN (SHORT TITLE) Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: LA 04-12883 EC |

b. [X] The matter can be tried more expeditiously in the non-bankruptcy forum.

(1) [X] It is currently set for trial on: 1/19/05

(2) [ ] It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*: The basis for this belief is *(specify)*:

(3) [X] The matter involves non-debtor parties who are not subject to suit in the bankruptcy court. A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c. [ ] The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action

(1) [ ] Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

(2) [ ] The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

(3) [ ] Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter [ ] 11 [ ] 13 bankruptcy case based upon the following facts *(specify)*:

d. [X] For other facts justifying relief from stay, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on May 6, 2004, at LOS ANGELES, CALIFORNIA *(city, state)*.

LEONARD MACHTINGER
*Print Declarant's Name*

[Signature]
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised May 2004* **F 4001-1M.NA**

CONTINUATION SHEET --- DECLARATION OF LEONARD MACHTINGER

6. On May 4, 2004, the Court held a hearing on the motion by the State of California for relief from the automatic stay to proceed with its action entitled People, etc. v. Aaron Tonken, et al., Case No. BC 292011(the "State's Civil State Court Action"). The State's Civil State Court Action has been consolidated with the Action which I filed on behalf of the moving parties herein, Loreen Arbus, Norman Chandler Fox and the Isabelle and Leonard Goldenson Association, Inc. entitled Loreen Arbus, et al. v. Aaron Tonken, et al., Case No. SC 078948 (the "Arbus Action"). Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of the Complaint filed in the Arbus Action on September 17, 2003. Attached hereto as Exhibit "B" and incorporated herein by this reference is a true and correct copy of the Court's printed tentative ruling granting the motion. It is my understanding that the Court granted the State's Motion at the hearing on May 4, 2004.

7. Depositions in the State's Civil State Court Action are about to be conducted, and as attorney for plaintiffs in the case with which the State's Civil State Court Action has been consolidated, it is important that I be able to participate in such depositions.

8. In addition to the foregoing, prior to the commencement of this bankruptcy case, a default had been entered in the Arbus Action against Debtor. I would seek entry of a default judgment in that Action, which, if granted, would result in a relatively speedy liquidation of the claims of the moving parties against Tonken.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief, and that this declaration was executed this May 6, 2004 at Los Angeles, California.

________________________
Leonard Machtinger

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge, information and belief, and that this declaration was executed this May 6,
2004 at Los Angeles, California.

Leonard Machtinger

Daniel I. Barness (State Bar No. 104203)
**SPIRO MOSS BARNESS & HARRISON LLP**
11377 W. Olympic Blvd., Tenth Floor
Los Angeles, CA 90064
Telephone: (310) 235-2468
Facsimile (310) 235-2456

Attorneys for LOREEN ARBUS, NORMAN CHANDLER FOX and THE ISABELLE AND LEONARD GOLDENSEN ASSOCIATION, INC., Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>AARON TONKEN<br><br>Debtor | CASE NO. LA 04-12883 EC<br><br>CHAPTER 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY JOINDER BY LOREEN ARBUS, NORMAN CHANDLER FOX AND THE ISABELLE AND LEONARD GOLDENSEN ASSOCIATION, INC. FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ABSTENTION**<br><br>DATE: June 1, 2004<br>TIME: 1:30 p.m.<br>CTRM: 1639<br>255 East Temple Street<br>Los Angeles, CA 90012 |

LOREEN ARBUS, NORMAN CHANDLER FOX and THE ISABELLE AND LEONARD GOLDENSEN ASSOCIATION, INC., (collectively "Moving Parties"), Creditors herein, and plaintiffs in the California Superior Court action entitled Arbus, et. al. v. Tonken, LASC Case No. SC078948 (the "State Court Action"), submit this Memorandum

of Points and Authorities in support of their Motion for Relief from Stay and for Abstention.

## I.

## STATEMENT OF FACTS

The following facts are established in part by the record in these proceedings; by the annexed Declaration of Leonard Machtinger (the "Machtinger Declaration"); and by the Motion for Relief From Stay by the State of California filed herein on March 25, 2003 (the "State's Relief From Stay Motion"), of which the Court is asked to take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

On September 17, 2003, Moving Parties filed an action against Debtor and others in the California Superior Court, Los Angeles County, entitled Loreen Arbus, et al. v. Aaron Tonken, et al., Case No. SC 078948 (the "Arbus Action"). [Machtinger Declaration] In addition to the Debtor, the Arbus Action names Aaron Tonken & Associates, Ronin Law Group, and Kevin Mattes Clarke as co-defendants. A true and correct copy of the complaint in the Arbus Action is attached as Exhibit "A" hereto and incorporated herein by this reference. The Arbus Action arises from acts of fraud and misconduct by Tonken in connection with donations that were made by plaintiffs related to certain charity events Tonken produced, or was supposed to produce, and from loans that the Moving Parties made to Tonken. [Machtinger Declaration, Exhibit "A"]. The Complaint in the Arbus Action states causes of action for (1) breach of written contract; (2) breach of oral contract; (3) restitution of gift; (4) breach of fiduciary duty; (5) conversion; (6) fraud; and (7) implied private right of action for violation of California Penal Code section 532d. [Exhibit "A"]

On March 13, 2003, the State of California commenced an action entitled People ex rel. Bill Lockyer v. Aaron Tonken, et al. ("People v. Tonken") (LACSC Case Number BC292011). On February 17, 2004, People v. Tonken was consolidated with the Arbus Action. [State's Relief From Stay Motion]

On March 24, 2004, the State filed its Relief from Stay Motion herein. On May 4, 2004, the Court held a hearing on that motion, and issued a tentative ruling granting the Motion. [Machtinger Declaration, Exhibit "B"] It is anticipated that a written order granting the State's Relief from Stay Motion will shortly hereafter be entered. [Machtinger Declaration]

The present motion seeks relief from stay so that the Arbus Action may be continued, and proceed together with its companion case People v. Tonken.

The Motion also seeks abstention under 28 U.S.C. § 1334(c) .

## II.

## DISCUSSION

CAUSE EXISTS TO LIFT THE AUTOMATIC STAY TO ALLOW THE ARBUS ACTION TO CONTINUE IN STATE COURT, AND GROUNDS EXIST FOR ABSTENTION WITH RESPECT TO THE ARBUS ACTION

### A. General Principles regarding Relief from the Automatic Stay

Section 362(d) of the Bankruptcy Code[1] provides, in relevant part that "[o]n request of a party in interest . . . the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay —(1) for cause. . . ." § 362(d)(1).

The Ninth Circuit has recognized that "'[c]ause has no clear definition and is determined on a case-by-case basis.'" In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990), quoting In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985); see also In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir. 1986); In re Beguelin, 220 Bankr. 94, 97-98 (B.A.P. 9th Cir. 1998).

Courts have cited a number of factors to consider in making a determination of

---

[1] All further code section references are to the United States Bankruptcy Code, unless otherwise specified.

whether to lift the automatic stay. See, e.g., In re Claughton, 140 Bankr. 861, 867-868 (Bankr. W.D.N.C. 1992), aff'd 172 Bankr. 12 (W.D.N.C. 1993); In re Curtis, 40 Bankr. 795, 799-800 (Bankr. D. Utah 1984).

While section 362(d)(1) requires the moving party to initially show cause why the stay should be lifted, after the moving party has done so, the burden of proof shifts to the debtor to establish that the stay is proper. § 362, subd. (g); In re Curtis, 40 Bankr. at 802-803.

In In re Wiley, 288 Bankr. 818 (8th Cir. BAP 2003), it was held that judicial economy would be best served by granting relief from stay, and allowing litigation to proceed in a non- bankruptcy forum where the litigation was complex, and the bankruptcy court did not have jurisdiction over a nondebtor co-defendant. The difficulty of the state court to proceed with litigation without the debtor and the lack of any preliminary bankruptcy issues to resolve in order to proceed to trial were also factors considered in affirming the granting of relief from stay. It has also been held that it is appropriate to grant relief from stay where the matter at issue involves questions of state law, and the state court may be better suited to determine the issue than would the bankruptcy court. In re Blue, 47 Bankr. 478 (Bankr. N.D. Ill 2000) [See also Norton Bankruptcy Law and Practice, 118:2 (West Publishing Co. 2003).]

All of the foregoing principles are applicable to this case: Here there are co-defendants over whom this Court lacks jurisdiction; there are no bankruptcy issues involved; and the Arbus Action, as well as the State's Action with which it has been consolidated, involve California statutes and common law.

B. Lifting the Automatic Stay Will Promote the Congressional Policy of Allowing State Law Claimants to Pursue Their Claims in State Court

In In re Universal Life, 127 Bankr. 453, 455 (E.D. Cal. 1991), aff'd, 965 F.2d 777 (9th Cir. 1992), the court noted as follows: "[t]he Legislative history of § 362 (d)(1) states that 'a desire to permit an action to proceed to completion in another tribunal may

provide cause' for relief from a stay." 127 Bankr. 453 at, 455.

"A clear congressional policy exists to give state law claimants a right to have claims heard in state court." In re Castlerock Properties, 781 F.2d at 163, citing 28 U.S.C. § 1334(c); accord, In re Tucson Estates, Inc., 912 F.2d at 1166 [cause exists to grant relief from stay to allow state court trial to proceed]; Pursifull v. Eakin, 814 F.2d 1501, 1506 (10th Cir. 1987) [pending state proceeding dealt with the same issues as bankruptcy court and issues were a matter of state law best decided by state courts]; In re Claughton, 140 Bankr. at 868 [where pending litigation involves solely issues of state law, bankruptcy court should grant relief from stay to allow litigation to go forward in state court].

The Arbus Action involves solely state law claims. [Exhibit "A"] Given the fact that all of the claims involved in the consolidated state cases involve solely state law issues, and, as shown below, abstention under 28 U.S.C. § 1334(c) is appropriate, cause exists to lift the automatic stay.

C. Either Discretionary or Mandatory Abstention Are Applicable With Respect To The Arbus Action.

For purposes of discretionary abstention under 28 U.S.C. Section 1334(c)(1), abstention is warranted if (1) it is in the interest of justice; (2) in the interest of comity with state courts; or (3) in the interest of respect for state law. In re Davis, 177 Bankr. 907 (9th Cir. BAP 1995); In re Altchek, 119 Bankr. 31, 34 (Bankr. S.D.N.Y. 1990). Pursuant to 28 U.S.C. § 1334(c)(1), the Court may retain jurisdiction over the bankruptcy case but abstain from hearing the particular proceeding between a party in interest and the debtor. Each and all of the foregoing criteria apply with respect to the Arbus Action, particularly, because, with the Court's ruling granting the State's Relief from Stay Motion, the interests of justice dictate that the Arbus Action, with which People v. Tonken has been consolidated, be permitted to proceed apace with its companion case. Further, the Arbus Action includes parties who are not otherwise subject to this Court's

jurisdiction, and involves, among other things California statutes. [Exhibit "A"]

Mandatory Abstention under 28 U.S.C. § 1334(c)(2), is also proper here, because (1) the Arbus Action is a non-core matter (2) with respect to which an action could not have been commenced in a court of the United States absent bankruptcy jurisdiction[2]; (3) which has been commenced in the California Superior Court and (4) can be timely adjudicated. [Machtinger Declaration]

## III.

## CONCLUSION

For the foregoing reasons, and those set forth in the State's Relief from Stay Motion, the Moving Parties herein respectfully request that the automatic stay be lifted to permit the continuation of the Arbus Action in the California Superior Court, or, alternatively, that the Court abstain under section 1334(c) permitting the Moving Parties to resume the Arbus Action in the California Superior Court.

Dated: May 7, 2004

Respectfully submitted

SPIRO MOSS BARNESS & HARRISON LLP

By: Daniel T. Barness
Attorneys for LOREEN ARBUS, NORMAN CHANDLER FOX and THE ISABELLE AND LEONARD GOLDENSEN ASSOCIATION, INC., Creditors

2 Diversity jurisdiction would not provide such a basis, because "complete diversity" is lacking, i.e., there are adverse parties who share common state citizenship. 28 U.S.C. § 1332. [See Exhibit "A".]

**EXHIBIT "A"**

LEONARD S. MACHTINGER (SBN 66668)
KENOFF & MACHTINGER, LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
(310) 552-0808 (telephone)
(310) 277-0653 (facsimile)

Attorneys for Plaintiffs
LOREEN ARBUS, NORMAN CHANDLER FOX and THE ISABELLE AND LEONARD GOLDENSON ASSOCIATION, INC.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
SEP 17 2003
John A. Clarke, Executive Officer/Clerk
By D. Geter, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

LOREEN ARBUS, an individual; NORMAN CHANDLER FOX, an individual; and THE ISABELLE AND LEONARD GOLDENSON ASSOCIATION, INC., a New York not-for-profit corporation,

Plaintiffs,

vs.

AARON TONKEN, an individual; AARON TONKEN & ASSOCIATES, a limited liability company; RONIN LAW GROUP, a professional law corporation; KEVIN MATTES CLARKE, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No.: SC078948

COMPLAINT FOR:

1. BREACH OF WRITTEN CONTRACT
2. BREACH OF ORAL CONTRACT
3. RESTITUTION OF GIFT
4. RESTITUTION OF GIFT
5. BREACH OF FIDUCIARY DUTY
6. BREACH OF FIDUCIARY DUTY
7. CONVERSION
8. CONVERSION
9. FRAUD
10. FRAUD
11. IMPLIED PRIVATE RIGHT OF ACTION FOR VIOLATION OF PENAL CODE § 532d
12. IMPLIED PRIVATE RIGHT OF ACTION FOR VIOLATION OF PENAL CODE § 532d

Judge [illegible] Dept. [illegible]
Initial Status Conference & DEC 30 2003
OSC Re: Proof of Service SEC [illegible] at 8:30 a.m.
1725 Main Street, Santa Monica Courthouse

Plaintiffs Loreen Arbus, Norman Chandler Fox and The Isabelle and Leonard Goldenson Association, Inc. ("I&L") allege as follows:

GENERAL ALLEGATIONS

1. Plaintiff Loreen Arbus is an individual residing in

117

Los Angeles County, California. She is the President of Plaintiff I&L.

2. Plaintiff Norman Chandler Fox is an individual residing in Los Angeles County, California.

3. Plaintiff I&L is a not-for-profit corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

4. Plaintiffs are informed and believe and thereon allege that Defendant Aaron Tonken is an individual residing in Los Angeles County, California.

5. Plaintiffs are informed and believe and thereon allege that Defendant Aaron Tonken & Associates ("Tonken Associates") is a limited liability company with its principal place of business in Los Angeles County, California, and that Tonken is the President and Chief Executive Officer of Tonken Associates. Plaintiffs are informed and believe and thereon allege that, in doing the acts alleged herein, Tonken was acting on behalf of both himself and Tonken Associates.

6. Plaintiffs are informed and believe and thereon allege that Defendant Ronin Law Group is a California professional law corporation with its principal place of business in Los Angeles County, California.

7. Plaintiffs are informed and believe and thereon allege that Defendant Kevin Mattes Clarke is an individual residing in Los Angeles County, California and is a shareholder and/or member of Ronin Law Group.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 10 are

presently unknown to the Plaintiffs, and for that reason, those Defendants are sued by such fictitious names. The Plaintiffs are informed and believe, and on that basis allege, that each of Does 1 through 10 is in some way responsible for the damages alleged herein. The Plaintiffs will amend this Complaint when the true names and capacities of said Defendants are known.

9. The Plaintiffs are informed and believe, and on that basis allege, that Defendants were, and each of them was, at all times mentioned in this Complaint, acting as the agent and/or employee of each other Defendant, and in doing the things mentioned herein, the Defendants were, and each of them was, acting within the course and scope of said agency and employment.

"A FAMILY CELEBRATION 2001"

10. Tonken and Tonken Associates promoted and produced a charity fundraising event called "A Family Celebration 2001" ("Family Celebration"). Tonken, Tonken Associates, and The Giving Back Fund, Inc. ("GBF") agreed that GBF would be, among other things, the fiscal agent for Family Celebration and would collect all contributions for the event and pay all expenses incurred for the event.

11. In 2000, Tonken approached cast members of the television series "Ally McBeal", through their agent/ representative, regarding Family Celebration. In return for the cast members' agreement to attend and publicize the event, Tonken promised them that all net proceeds from Family Celebration would benefit charities selected by the cast members.

119

12. Tonken subsequently promised the music group N'Sync that, in return for their agreement to attend and publicize the event, 50% of the proceeds from Family Celebration would benefit charities selected by the group.

13. In or around January 2001, Tonken contacted Arbus and requested that she arrange for I&L to make a donation which he promised would be used to cover expenses for Family Celebration. Tonken promised Arbus that the net proceeds of Family Celebration would benefit charities approved by Arbus and that expenses for Family Celebration would not exceed $250,000. At the time Tonken made the aforesaid promises, he had no intention of keeping them.

14. In reliance on Tonken's representations and promises, Arbus agreed that I&L would donate $203,000. Tonken instructed Arbus to deliver a check for $150,000 payable to the American Spirit Foundation and a check for $53,000 payable to GBF; pursuant to said instructions, Arbus arranged for I&L to issue, and Arbus delivered, said checks to the American Spirit Foundation and GBF, respectively, in or around late January 2001.

15. Arbus arranged for said payments because she believed Tonken's representations that the beneficiaries of Family Celebration would ultimately receive more money if I&L supported Family Celebration than if I&L gave the $203,000 directly to the beneficiaries. Arbus accepted the charities designated by N'Sync and the cast of "Ally McBeal."

16. Plaintiffs are informed and believe and thereon allege that American Spirit Foundation was a defunct entity unconnected

120

with Family Celebration, whose accounts were controlled by Tonken and Tonken Associates, and that the $150,000 delivered to American Spirit Foundation was used by Tonken and Tonken Associates for purposes unrelated to Family Celebration.

17. Family Celebration took place on or about April 1, 2001. Plaintiffs are informed and believe and thereon allege that the event generated at least $1.5 million and the alleged cost of the event exceeded $800,000. Plaintiffs are informed and believe and thereon allege that the charities designated by the "Ally McBeal" cast and N'Sync have not received any of the net proceeds.

"CELEBRATING DIANA"

18. Tonken and Tonken Associates proposed a charity fundraising event in honor of singer Diana Ross called "Celebrating Diana." GBF agreed to be the fiscal agent for Celebrating Diana and to collect all contributions for the event and to pay all expenses incurred for the event.

19. Plaintiffs are informed and believe and thereon allege that in September 2000, Tonken and Tonken Associates entered into an agreement with the Joan English Fund for Women's Cancer Research (the "English Fund") regarding Celebrating Diana, in which Tonken and Tonken Associates promised that the English Fund would receive all of the net proceeds of the event in return for the English Fund's underwriting donation (i.e., donation to cover expenses for Celebrating Diana).

20. In or about October 2000, Tonken solicited and obtained an underwriting donation from the Lorsch Foundation for Celebrating Diana, in return for which Tonken promised the

Lorsch Foundation 50% of the net proceeds of the event.

21. In or about April 2001, Tonken contacted Arbus and requested that she arrange for I&L to make a donation which he promised would be used to cover expenses for Celebrating Diana. Tonken promised Arbus that, in return for I&L's donation, charities she was to designate on behalf of I&L would receive a substantial portion of charitable contributions raised at the event. Tonken never told Arbus that he had promised any of the proceeds to any other donors or their charities. At the time Tonken made the aforesaid promises, he had no intention of keeping them.

22. In reliance on Tonken's representations and promises, Arbus agreed that I&L would donate $400,000. Pursuant to Tonken's instructions, Arbus arranged for I&L to issue a check for $400,000 to GBF, which Arbus delivered on or about April 11, 2001.

23. Tonken sent a letter dated May 29, 2001 to Arbus regarding "Celebrating Diana" and other events. In his letter, Tonken promised Arbus that charities she was to designate on behalf of I&L would receive 50% of all charitable contributions raised at Celebrating Diana, which he stated he believed would be $1.5 million.

24. On or about April 17, 2001, GBF opened a bank account for the deposit of donations received for underwriting Celebrating Diana. GBF deposited the $400,000 donation from I&L into said underwriting account. Defendant Clarke was an authorized signatory for the aforesaid underwriting account.

///

122

25. The Plaintiffs are informed and believe and thereon allege that in April 2001 (and after April 17, 2001), at Tonken's direction, Clarke instructed the bank to make payments from said account to various organizations and individuals, totaling approximately $399,000, including $199,000 in payments to Ronin Law Group and to Clarke, without authorization and without invoices. The Plaintiffs are informed and believe and thereon allege that none of said $399,000 in disbursements was used to pay expenses for Celebrating Diana.

26. Celebrating Diana never took place and no part of I&L's donation was refunded.

"HOLLYWOOD GALA SALUTE TO MILTON BERLE"

27. Tonken and Tonken Associates promoted and produced a charity event in honor of comedian Milton Berle entitled "Hollywood Gala Salute to Milton Berle" (the "Berle Event").

28. In April 2001, Tonken requested that Arbus make a donation which he promised would be used to cover expenses for the Berle Event. Tonken sent a letter dated May 29, 2001 to Arbus regarding the Berle Event and other events. In his letter, Tonken promised that, in return for a donation of $175,000, Arbus' designated charity would receive a percentage of the gross receipts of the Berle Event equal to the first two digits of the total gross receipts: e.g., if the event raised $500,000, Arbus' charity was to receive 50%; if the event raised $400,000, Arbus' charity was to receive 40%. At the time Tonken made the aforesaid promises, he had no intention of keeping them.

///

29. In reliance on Tonken's representations and promises, Arbus agreed that she and Fox would donate $175,000 to cover expenses for the Berle Event. Tonken instructed Arbus to deliver a check for $100,000 payable to Ronin Law Group and a check for $75,000 payable to Westside Waldorf School ("WWS"). Pursuant to said instructions, on or about May 31, 2001, Arbus and Fox delivered said checks from their joint account to said payees.

30. In June 2001, Tonken and Tonken Associates promised WWS that it would receive 45% of the net proceeds of the Berle Event and that Whoopi Goldberg's charities would receive $45,000 from the Berle Event, notwithstanding the earlier promise to Arbus. Tonken and Tonken Associates never disclosed these subsequent promises to Arbus or Fox.

31. The Plaintiffs are informed and believe and thereon allege that Tonken, Tonken Associates, Clarke and Ronin Law Group diverted the aforesaid $75,000 check made payable to WWS to an account controlled by them, and that they did not use any part of the total $175,000 donation for expenses for the Berle Event.

32. The Berle Event took place on July 22, 2001. The Plaintiffs are informed and believe and thereon allege that the charity designated by Arbus (Women of Washington) never received any of the proceeds of the Berle Event. Arbus and Fox's $175,000 donation was never refunded.

THE CHER EVENT

33. In a letter to Arbus dated May 29, 2001, Tonken stated that he was planning a charity fundraising event in honor of the

first ladies of the United States to be attended by Cher in late November or early December 2001 (the "Cher Event"); he promised Arbus that 50% of all proceeds from the Cher Event would benefit Arbus' designated charities. In return, Tonken requested a $50,000 donation from Arbus to the Children's Craniofacial Foundation; he promised to refund the donation if Cher did not participate in the Cher Event. At the time Tonken made the aforesaid promises, he had no intention of keeping them.

34. In reliance on Tonken's representations and promises, Arbus and Fox delivered a check for $50,000 from their joint account to the Children's Craniofacial Foundation on or about June 30, 2001.

35. The Cher Event never took place. Arbus and Fox's $50,000 donation was never refunded.

## FIRST CAUSE OF ACTION

(For Breach of Written Contract -- By Arbus and Fox Against Defendants Tonken, Tonken Associates and Does 1 through 10)

36. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

37. Pursuant to Tonken's letter to Arbus dated May 29, 2001, Tonken and Tonken Associates, on the one hand, and Arbus and Fox, on the other hand, agreed as follows and as further alleged above:

(a) In return for payments totaling $175,000 from Arbus and Fox to WWS and the Ronin Law Group, Tonken and Tonken

Associates agreed to use said amount to pay expenses for the Berle Event and to give a percentage of the gross receipts of the Berle Event to Arbus' designated charity.

(b) In return for a payment of $50,000 from Arbus and Fox to the Children's Craniofacial Foundation, Tonken and Tonken Associates agreed to promote and produce the Cher Event and give 50% of all proceeds thereof to Arbus' designated charities.

38. Arbus and Fox performed all conditions, covenants and promises required to be performed on their part in accordance with the terms and conditions of the aforesaid agreement, except insofar as such performance has been excused or prevented by Tonken and Tonken Associates' breach of said agreement.

39. Tonken, Tonken Associates and Does 1 through 10 breached said agreement by, inter alia: (i) using said $175,000 for purposes unrelated to the Berle Event, (ii) failing to give any portion of the gross receipts of the Berle Event to Arbus' designated charity, and (iii) failing to promote and produce the Cher event.

40. As a result of the foregoing conduct of the aforesaid Defendants, Arbus and Fox were damaged in a sum to be determined at trial but believed to be, at least, $225,000.

SECOND CAUSE OF ACTION

(For Breach of Oral Contract -- By I&L Against Defendants Tonken, Tonken Associates and Does 1 through 10)

41. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

42. Tonken and Tonken Associates, on the one hand, and I&L (through its President, Loreen Arbus), on the other hand, orally agreed as follows and as further alleged above:

(a) In return for payments totaling $203,000 from I&L to the American Spirit Foundation and GBF, Tonken and Tonken Associates agreed to use said amount to pay expenses for Family Celebration, to give all net proceeds from Family Celebration to charities designated by N'Sync and the cast of "Ally McBeal", and that expenses for Family Celebration would not exceed $250,000.

(b) In return for a payment of $400,000 from I&L to GBF, Tonken and Tonken Associates agreed to use said amount to pay expenses for Celebrating Diana, to promote and produce Celebrating Diana, and to give a percentage of the gross receipts thereof to Arbus' designated charities.

43. I&L performed all conditions, covenants and promises required to be performed on its part in accordance with the terms and conditions of the aforesaid agreement, except insofar as such performance has been excused or prevented by Tonken and Tonken Associates' breach of said agreement.

44. Tonken, Tonken Associates and Does 1 through 10 breached said agreement by, <u>inter alia</u>: (i) using a substantial part of said $203,000 for purposes unrelated to Family Celebration, (ii) failing to give any portion of the gross receipts of Family Celebration to the designated charities, (iii) spending more than $250,000 on expenses for Family Celebration, and (iv) failing to promote and produce Celebrating Diana, as further alleged above.

45. As a result of the foregoing conduct of the aforesaid Defendants, I&L was damaged in a sum to be determined at trial but believed to be, at least, $603,000.

THIRD CAUSE OF ACTION

(For Restitution of Gifts -- By I&L Against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10)

46. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

47. As alleged above, Tonken and Tonken Associates told I&L, through its President Arbus, that I&L's donations of $203,000 and $400,000 for Family Celebration and Celebrating Diana, respectively, would be used to pay for the expenses of each event and that Tonken and Tonken Associates would give certain percentages of the proceeds from each event to charities designated or approved by Arbus. I&L reasonably relied upon said representations and promises, and based thereon, I&L made the following payments (which were given as gifts): $53,000 to GBF for Family Celebration, $150,000 to American Spirit Foundation (whose account was controlled by Tonken and Tonken Associates) for Family Celebration, and $400,000 to GBF for Celebrating Diana.

48. (a) As alleged above, the foregoing representations and promises were false, in that Tonken and Tonken Associates had no intention of using said donations for the expenses of said events or giving the percentages of proceeds from said events to charities designated or approved by Arbus. In fact,

the aforesaid donations were not used to pay the expenses of said events and no donations were made to any charities designated by Arbus. Instead, $199,000 was paid to Ronin Law Group and to Clarke and the other donated sums were used by and for the benefit of Tonken and Tonken Associates.

(b) At the time the foregoing false representations and promises were made, I&L was ignorant of their falsity, and reasonably believed them to be true. At the time the foregoing false representations and promises were made, the aforesaid Defendants knew them to be false. The foregoing false representations and promises were made to induce I&L to make the payments described above.

49. The aforesaid donations should be rescinded, and restitution made, because of the foregoing misrepresentations and/or false promises.

50. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that I&L is also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

FOURTH CAUSE OF ACTION

(For Restitution of Gifts --

By Arbus and Fox Against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10)

51. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

///

///

129

52. As alleged above, Tonken and Tonken Associates told Arbus and Fox that their donations of $175,000 for the Berle Event would be used to pay for the expenses of the event and that Tonken and Tonken Associates would give certain percentages of the proceeds from each event to charities designated by Arbus. Arbus and Fox reasonably relied upon said representations and promises, and based thereon, Arbus and Fox made the following payments (which were given as gifts): $100,000 to Ronin Law Group and $75,000 to WWS. The payment to WWS was diverted by Tonken, Tonken Associates, Clarke and the Ronin Law Group to an account controlled by them.

53. (a) As alleged above, the foregoing representations and promises were false, in that Tonken and Tonken Associates had no intention of using said donations for the expenses of said events or giving the percentages of proceeds from said events to Arbus' designated charities. In fact, the aforesaid donations were not used to pay expenses for the Berle Event. Instead, the funds were used by and for the benefit of the aforesaid Defendants.

(b) At the time the foregoing false representations and promises were made, Arbus and Fox were ignorant of their falsity, and reasonably believed them to be true. At the time the foregoing false representations and promises were made, the aforesaid Defendants knew them to be false. The foregoing false representations and promises were made to induce I&L to make the payments described above.

54. The aforesaid donations should be rescinded, and restitution made, because of the foregoing misrepresentations

and/or false promises.

55. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that Arbus and Fox are also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

FIFTH CAUSE OF ACTION

(For Breach of Fiduciary Duty - By I&L Against Defendants Tonken, Tonken Associates, Clarke and Does 1 through 10)

56. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

57. A fiduciary relationship existed between Tonken, Tonken Associates, Clarke and Does 1 through 10, on the one hand, and I&L, on the other hand. This fiduciary relationship was established by Business and Professions Code § 17510.8, Government Code § 12599, by common law, and by agreement.

58. Tonken and Tonken Associates solicited donations from I&L and controlled the donations as further alleged above. This solicitation and control established a fiduciary duty on the part of Tonken and Tonken Associates to ensure that the donations were used for their intended purposes.

59. When Clarke became a signatory on the Celebrating Diana underwriting account, he owed a fiduciary duty to I&L to ensure that I&L's donation was used for its intended purpose.

60. Tonken, Tonken Associates, Clarke and Does 1 through 10 breached their fiduciary duties, among other things, by using

131

I&L's donations for purposes unrelated to their intended purposes.

61. As a direct and proximate result of the aforesaid Defendants' actions as alleged herein, I&L has suffered damages in excess of $603,000.

62. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that I&L is also entitled to exemplary and punitive damages in a sum sufficient to the punish the aforesaid Defendants.

SIXTH CAUSE OF ACTION

(For Breach of Fiduciary Duty -
By Arbus and Fox Against Defendants Tonken, Tonken Associates
and Ronin Law Group and Does 1 through 10)

63. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

64. A fiduciary relationship existed between Tonken, Tonken Associates, Ronin Law Group, and Does 1 through 10, on the one hand, and Arbus and Fox, on the other hand. This fiduciary relationship was established by Business and Professions Code § 17510.8, Government Code § 12599, by common law, and by agreement.

65. Ronin Law Group accepted Arbus and Fox's donations as further alleged above. The acceptance of these donations established a trust and a fiduciary duty on the part of Ronin Law Group owed to Arbus and Fox to ensure that the donations were used for their intended purposes.

///

66. Tonken, Tonken Associates and Does 1 through 10 solicited donations from Arbus and Fox and controlled the donations as further alleged above. This solicitation and control established a fiduciary duty on the part of Tonken and Tonken Associates to ensure that the donations were used for their intended purposes.

67. Tonken, Tonken Associates, Ronin Law Group and Does 1 through 10 breached their fiduciary duties, among other things, by using the Arbus and Fox donations for purposes unrelated to their intended purposes.

68. As a direct and proximate result of the Defendants' actions as alleged herein, Arbus and Fox have suffered damages in excess of $225,000.

69. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that the Plaintiffs are also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

<u>SEVENTH CAUSE OF ACTION</u>

(For Conversion -- By I&L Against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10)

70. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

71. As further alleged above, I&L delivered, <u>inter alia</u>, the following donations: (i) $150,000 for Family Celebration to an American Spirit Foundation account controlled by Tonken and

Tonken Associates and (ii) $400,000 for Celebrating Diana to a GBF account controlled by Tonken, Tonken Associates, GBF and Clarke. As further alleged above, said donations were made for the purpose of paying the expenses of charity fundraising events.

72. The Plaintiffs are informed and believe and thereon allege that, disregarding their duty to use the aforesaid donations for their intended purpose, Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10 converted the donations to their own use.

73. As a direct and proximate result of the acts and conduct described above, I&L has been damaged in excess of $550,000.

74. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that I&L is also entitled to exemplary and punitive damages in a sum sufficient to punish aforesaid Defendants.

EIGHTH CAUSE OF ACTION

(For Conversion -- By Arbus and Fox Against Defendants Tonken, Tonken Associates, Ronin Law Group, Clarke and Does 1 through 10)

75. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

76. As further alleged above, Arbus and Fox delivered, inter alia, the following donations: (i) $100,000 for the Berle Event to Ronin Law Group, and (ii) $75,000 for the Berle Event to a WWS account controlled by Tonken, Tonken Associates, Ronin

134

Law Group, and Clarke. As further alleged above, said donations were made for the purpose of paying the expenses of charitable fundraising events.

77. The Plaintiffs are informed and believe and thereon allege that, disregarding their duty to use the aforesaid donations for their intended purpose, Tonken, Tonken Associates, Ronin Law Group, Clarke and Does 1 through 10 converted the donations to their own use.

78. As a direct and proximate result of the acts and conduct described above, Arbus and Fox have been damaged in excess of $175,000.

79. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that Arbus and Fox are also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

NINTH CAUSE OF ACTION

(For Fraud -- By I&L Against Defendants Tonken, Tonken Associates and Does 1 through 10)

80. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

81. As alleged above, Tonken, acting for himself and Tonken Associates, and Does 1 through 10 made false representations and promises to I&L.

82. With respect to each of the aforesaid false representations, Tonken, acting for himself and for Tonken Associates, and Does 1 through 10, knew the representations to

be false at the time they were made.

83. With respect to each of the aforesaid false promises, Tonken, acting for himself and for Tonken Associates, and Does 1 through 10, had no intention of keeping the promises at the time they were made.

84. Each of the aforesaid false promises and representations were made to induce I&L to make payments, as alleged above. Had the false promises or representations not been made, none of the payments made by I&L as alleged herein would have been made.

85. With regard to each of the aforesaid false promises and representations, the Plaintiff (or its agent to whom the promise or representation was made and who relied upon the promise or representation) was unaware of the falsity of the promise or representation and reasonably relied upon it.

86. As a direct and proximate result of the acts and conduct described above, I&L has been damaged in excess of $603,000.

87. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that I&L is also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

TENTH CAUSE OF ACTION

(For Fraud -- By Arbus and Fox Against Defendants Tonken, Tonken Associates and Does 1 through 10)

88. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

89. As alleged above, Tonken, acting for himself and Tonken Associates, and Does 1 through 10 made false representations and promises to Arbus and Fox.

90. With respect to each of the aforesaid false representations, Tonken, acting for himself and for Tonken Associates, and Does 1 through 10, knew the representations to be false at the time they were made.

91. With respect to each of the aforesaid false promises, Tonken, acting for himself and for Tonken Associates, and Does 1 through 10 had no intention of keeping the promises at the time they were made.

92. Each of the aforesaid false promises and representations were made to induce Arbus and Fox to make payments, as alleged above. Had the false promises or representations not been made, none of the payments made by Arbus and Fox as alleged herein would have been made.

93. With regard to each false promise or representation alleged in this cause of action, the Plaintiffs were unaware of the falsity of the promise or representation and reasonably relied upon it.

94. As a direct and proximate result of the acts and conduct described above, Arbus and Fox have been damaged in excess of $225,000.

95. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that Arbus and Fox are also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

ELEVENTH CAUSE OF ACTION

(Implied Private Right of Action for Violation of Penal Code § 532d -- By I&L Against Defendants Tonken, Tonken Associates and Does 1 through 10, inclusive)

96. Plaintiff I&L realleges and incorporates herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

97. The false representations by Tonken, Tonken Associates and Does 1 through 10 alleged above violated California Penal Code § 532d, which embodies a public policy against false representations in connection with the solicitation or receipt of charitable contributions.

98. I&L is an injured member of the public for whose benefit said statute was enacted.

99. As a direct and proximate result of the acts and conduct of Tonken, Tonken Associates and Does 1 through 10 described above, I&L has been damaged in excess of $603,000.

100. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that I&L is also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

TWELFTH CAUSE OF ACTION

(Implied Private Right of Action for Violation of Penal Code § 532d -- By Arbus and Fox Against Defendants Tonken, Tonken Associates and Does 1 through 10)

101. Plaintiffs Arbus and Fox reallege and incorporate herein by this reference each and every allegation set forth above in ¶¶ 1 through 35, inclusive.

102. The false representations by Tonken, Tonken Associates and Does 1 through 10 alleged above violated California Penal Code § 532d, which embodies a public policy against false representations in connection with the solicitation or receipt of charitable contributions.

103. Arbus and Fox are injured members of the public for whose benefit said statute was enacted.

104. As a direct and proximate result of the acts and conduct of Tonken, Tonken Associates and Does 1 through 10 described above, Arbus and Fox have been damaged in excess of $225,000.

105. The acts and conduct alleged herein of the aforesaid Defendants were willful, fraudulent, oppressive, and malicious, such that Arbus and Fox are also entitled to exemplary and punitive damages in a sum sufficient to punish the aforesaid Defendants.

WHEREFORE, Plaintiffs Loreen Arbus, Norman Chandler Fox, and The Isabelle and Leonard Goldenson Association, Inc. pray for judgment against the Defendants as follows:

1. On the First Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates and Does 1 through 10, damages of at least $225,000.

2. On the Second Cause of Action by I&L against Defendants Tonken, Tonken Associates and Does 1 through 10, damages of at least $603,000.

3. On the Third Cause of Action by I&L against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10:

(a) For damages of at least $603,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

4. On the Fourth Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group, and Does 1 through 10:

(a) For damages of at least $175,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

5. On the Fifth Cause of Action by I&L against Defendants Tonken, Tonken Associates, Clarke and Does 1 through 10:

(a) For damages of at least $603,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

6. On the Sixth Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates, Ronin Law Group and Does 1 through 10:

(a) For damages of at least $225,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

7. On the Seventh Cause of Action by I&L against Defendants Tonken, Tonken Associates, Clarke, Ronin Law Group and Does 1 through 10:

(a) For damages of at least $550,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

8. On the Eighth Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates, Ronin Law Group, Clarke

and Does 1 through 10:

(a) For damages of at least $175,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

9. On the Ninth Cause of Action by I&L against Defendants Tonken, Tonken Associates and Does 1 through 10:

(a) For damages of at least $603,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

10. On the Tenth Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates and Does 1 through 10:

(a) For damages of at least $225,000; and

(b) For exemplary and punitive damages in an amount to be determined at trial.

11. On the Eleventh Cause of Action by I&L against Defendants Tonken, Tonken Associates and Does 1 through 10:

(a) For damages of at least $603,000;

(b) For exemplary and punitive damages in an amount to be determined at trial; and

(c) For reasonable attorneys' fees incurred in this suit.

12. On the Twelfth Cause of Action by Arbus and Fox against Defendants Tonken, Tonken Associates and Does 1 through 10:

(a) For damages of at least $225,000;

(b) For exemplary and punitive damages in an amount to be determined at trial; and

///

141

**EXHIBIT "B"**

**United States Bankruptcy Court**
**Central District of California**

**The Honorable Ellen Carroll, Presiding**

**Courtroom 1639 Calendar**

**Tuesday, May 4, 2004** **Hearing Room** 1639

2:00 pm

**04-12883** **TONKEN, AARON** **Chapter 07**

**#2** Hearing re: Motion for relief from stay
(State of California VS Debtor)
Docket #: Related #:

**Courtroom Deputy:**

- NONE LISTED -

**Tentative Ruling:**

5/3/2004 - Appearance waived. No opposition has been received by the court. The motion is granted as to the claims for relief not covered by the motion that is #3 on the calendar. Movant shall submit a proposed order within 7 days.

[NOTE: If a late opposition is presented at the scheduled hearing, the court will schedule a continued hearing, if necessary, to allow movant to respond to the late opposition.]

Creditor Atty:
Debtor Atty: PHILIP D DAPEER
Primary Debtor Atty: PHILIP D DAPEER
Trustee: HELEN RYAN FRAZER

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 11377 W. Olympic Blvd., Tenth Floor, Los Angeles, CA 90064-1683

On **May 7, 2004**, I served the foregoing document described as: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY LOREEN ARBUS, NORMAN CHANDLER FOX AND THE ISABELLE AND LEONARD GOLDENSEN ASSOCIATION, INC. FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ABSTENTION**

on interested parties in this action

_X_ by placing the true copies thereof enclosed in sealed envelopes as stated on the attached mailing list:
_ by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

[See attached Service List]

_X_ BY MAIL

_ *I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

_X_ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angetes, California in the ordinary course of business. I am aware that on motion of the party served, services is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **May 7, 2004**, at Los Angeles, California.

_ **(BY PERSONAL SERVICE) I caused Due Process Attorney Service to personally delivered such envelopes by hand to the offices of the addressees as indicated on the attached list.
Executed on **May 7, 2004** at Los Angeles, California.

_ BY FACSIMILE

I transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date between the hours and 8:00 a.m. and 6:00 p.m. The facsimile transmission was reported as complete and without error by the transmitting facsimile machine.

_ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_X_ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Signature

**SERVICE LIST**

In re TONKEN
Case No. LA 04 12883 EC

Aaron Tonken
269 South Beverly Drive, PMB 372
Beverly Hills, CA 90212
[Debtor]

Philip D. Dapeer, Esq.
5670 Wilshire Blvd., Ste. 1470
Los Angeles, CA 90036
[Fax: 323 954-0457]
[Attorney for Debtor]

Sonja K. Berndt, Esq.
Deputy Attorney General
Office of the California Attorney General
300 South Spring Street, Room 5212
Los Angeles, CA 90013
[Fax: (213) 897-7605]

Helen Ryan Frazer, Esq.
Atkinson Andelson Loya Rudd & Romo
17871 Park Plaza Drive
Cerritos, CA 90703
[Chapter 7 Trustee]

Office of the United States Trustee
725 S. Figueroa Plaza, 26th Floor
Los Angeles, CA 90017

Eric P. Israel, Esq.
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, 3rd. Floor
Los Angeles, CA 90067-2904
(Fax: (310) 277- 5735
[Proposed Attorney for Ch 7 Trustee]