**LA04-12883EC**

DEBTOR:
  TONKEN, AARON
JUDGE: HON. E. Carroll - 586
TRUSTEE:
CHAPTER: 07 MOTION

------------------------------------------------

  CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF. ID: 735
RECEIPT NO: LA-016415   $ 150.00

*... without counsel*

*... Robert Freedman, RFF Family Partnership, L.P., R.FF, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: AARON TONKEN, an individual | CHAPTER: 7 |
| | CASE NO.: LA 04-12883-EC |
| Debtor(s). | DATE: 6/8/04<br>TIME: 1:30 p.m.<br>CTRM: 1639<br>FLOOR:16 |

### NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  Robert Freedman, et. al                    )
### (Action in Non-bankruptcy Forum)

1. **NOTICE IS HEREBY GIVEN** to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**  ☒ **255 East Temple Street, Los Angeles**      ☐ **411 West Fourth Street, Santa Ana**

   ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**

   ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served: ☐ at the hearing  ☐ at least _____ court days before the hearing.

   (1) ☐ An Application for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ An Application for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) ☐ An Application for Order Shortening Time has been filed and remains pending.

4. You may contact the Bankruptcy Clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form 390*), or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

5. If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 05/18/04

Law Offices of Henry I. Bushkin
*Print Law Firm Name (if applicable)*

Henry I. Bushkin
_____
*Print Name of Individual Movant or Attorney for Movant*

_____
*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*                                   1

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action) - *Page 2 of* ___          **350NA**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| AARON TONKEN | Debtor(s). | CASE NO.: LA 04-12883-EC |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT: Robert Freedman                    )

1.  **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor and Debtor's bankruptcy estate with respect to the following pending lawsuit or administrative proceeding in a non-bankruptcy forum:

    Case name: People v. Aaron Tonken, et. al.
    Docket number: BC292011
    Court or agency where pending:  Los Angeles County Superior Court

2.  **Case History:**
    a.  ☒ A Voluntary   ☐ An Involuntary Petition  under Chapter   ☒ 7   ☐ 11   ☐ 12   ☐ 13  was filed on:
    b.  ☐ An Order of Conversion to Chapter   ☐ 7   ☐ 11   ☐ 12   ☐ 13  was entered on:
    c.  ☐ Other bankruptcy cases affecting this action have been pending within the past two years.
    d.  ☐ Plan was confirmed on *(specify date)*:
    e.  For additional case history, see attached continuation page.

3.  **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:
    a.  ☐ The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.
    b.  ☐ The claim is insured.  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.
    c.  ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    d.  ☒ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.
    e.  ☒ The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.
    f.  ☒ The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.
    g.  ☒ Other reasons to allow the non-bankruptcy action to proceed are set forth in an attached Declaration.

4.  ☐ Movant also seeks annulment of the stay to validate post-petition acts, as specified in the attached Declaration(s).

5.  **Evidence in Support of Motion:** *(**Important Note**: Declaration(s) in support of the Motion **MUST** be attached hereto.)*
    a.  ☒ Movant submits the attached Declaration(s) to provide evidence in support of the Stay Motion pursuant to Local Bankruptcy Rules.
    b.  ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.
    c.  ☒ Other evidence *(specify)*:  Exh. 1 Second Amended Complaint (BC292011)

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*                          **350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
|---|---|

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| AARON TONKEN                                    Debtor(s). | CASE NO.: LA 04-12883-EC |

6.  ☒  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:
    a.  ☒  Terminating the stay as to Debtor and Debtor's bankruptcy estate.
    b.  ☐  Annulling the stay as to the acts set forth in the attached declaration(s).
    c.  ☐  Modifying or conditioning the stay as set forth in the attached continuation page:

2.  Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.

3.  ☒  Additional provisions requested:
    a.  ☒  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
    b.  ☒  That the Order be binding and effective in any bankruptcy case commenced by or against the above-named Debtor(s) for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.
    c.  ☒  That the 10-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.
    d.  ☐  See Extraordinary Relief Attachment *(Attach Optional Court Form 350ER)*.
    e.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 5/18/04

Respectfully submitted,

Robert Freedman
*Movant Name*

Law Offices of Henry I. Bushkin
*Firm Name of Attorney for Movant (if applicable)*

By: _____
*Signature*

Name: __Law Offices of Henry I Bushkin__
*Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action)

# 350NA

| In re | AARON TONKEN, an individual | Debtor(s) | CHAPTER: 7<br>CASE NO. LA 04-2883-EC |
|---|---|---|---|

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### SUMMARY

Robert Freedman, RFF Family Partnership, L.P., RFF, Inc., Movants herein, hereby submit this memorandum of points and authorities in support of their motion for relief from the automatic stay with respect to the consolidated action pending in the Los Angeles County Superior Court entitled People ex rel. *Bill Lockyer v. Aaron Tonken, et al.* ("People v. Tonken", or together with the First Amended Complaint and the *Arbus v. Tonken* matters defined below, the "State Court Action"). The Movants are also defendants in *People v. Tonken*. The Attorney General for the State of California (the "Attorney General") has already obtained relief from the automatic stay with respect to the State Court Action. The State Court Action cannot proceed as to all parties without relief from stay for the Movants. Further, the Attorney General's claims against the Movants are inextricably related to the allegations of the Debtor's misconduct such that denying the Movants relief from stay would effectively impede the Movants' ability to defend, while the Attorney General proceeds against the Movants and the Debtor.

### II.

### STATEMENT OF FACTS

On March 13, 2003, the Attorney General commenced the State Court Action against the Debtor. On September 25, 2003, the Attorney General filed a Second Amended Complaint. The State Court Action arises from numerous alleged instances of fraud and other misconduct committed by the Debtor and other defendants against a number of California charities in connection with various charity events

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action)                                    **350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|-------|------------------------------|------------|-------------------------|
|       |                              | Debtor(s)  | CASE NO. LA 04-2883-EC  |

that were produced or supposed be produced by the Debtor. The Attorney General's causes of action alleged against the Debtor are as follows: (1) violation of California Government Code section 12599 (failure of commercial fundraiser for charitable purposes to register, file reports, and provide an accounting); (2) breach of fiduciary duty; (3) fraud; (4) negligent misrepresentation; (5) constructive fraud; (6) conversion; (7) unfair competition (California Business and Professions Code section 17200, et seq.); (8) negligence; (9) breach of contract; and (10) promissory estoppel. More specifically, the Attorney General alleges, inter alia, that the Debtor made numerous misleading representations in connection with his solicitations of donations for charity events, unlawfully diverted donations from the events, and failed to provide an accounting of the charitable funds he solicited, received, or controlled despite demands for an accounting from the Attorney General. The defendants named in the State Court Action are the Debtor, Aaron Tonken & Associates, Robert Freedman, RFF Family Partnership, L.P., R.F.F., Inc., Kevin Mattes Clarke, Ronin Law Group and Cynthia Gershman. The only debtor defendant named in the State Court Action is Tonken.

On September 17, 2003, Loreen Arbus, Norman Chandler Fox, and the Isabelle and Leonard Goldenson Association, Inc. filed a state civil action against Debtor, Aaron Tonken & Associates, Ronin Law Group, and Kevin Mattes Clarke. That case arises from alleged acts of fraud and misconduct by the Debtor in connection with donations that were made by plaintiffs related to certain charity events the Debtor produced, or was supposed to produce, and from loans that plaintiffs made to the Debtor. The causes of action in *Arbus v. Tonken* are as follows: (1) breach of written contract; (2) breach of oral contract; (3) restitution of gift; (4) breach of fiduciary duty; (5) conversion; (6) fraud; and (7) implied private right of action for violation of California Penal Code section 532(d).

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action)                                    **350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|-------|----------------------------|--------------|-------------------------|
|       |                            | Debtor(s)    | CASE NO. LA 04-2883-EC  |

On February 17, 2004, the Los Angeles County Superior Court granted the Attorney General's

motion to consolidate *People v. Tonken* with *Arbus v. Tonken*. The basis for the state court's ruling was

that the cases involved common donations and other common facts, and the failure to consolidate could

result in inconsistent rulings with regard to the issue of to whom damages are due in connection with the

common donations. The two state cases were consolidated for all purposes with a single judgment to

issue.

On February 10, 2004, the Debtor commenced the instant Chapter 7 case.   This Court has

already ruled that an exception to the automatic stay applies to the Attorney General's claims against the

Debtor and granted the Attorney General relief from stay.

Cause exists to grant relief from the automatic stay to the Movants as well so that the State Court

Action, including all related actions, can move forward as a consolidated case in the state court. As

discussed above, the Court has already granted relief from stay to the Attorney General. All of the

claims involved the State Court Action, arise under state law and the cases can be most expeditiously

resolved in the state court. Further, the State Court Action, involves claims that are non-dischargeable in

nature. Additionally, allowing the State Court Action to go forward will not interfere with the

bankruptcy case since the Movants only request relief from the stay to allow the state cases to proceed to

judgment and the Attorney Genera already has relief from stay. Movants do not request relief from the

stay in order to allow collection on any judgment rendered in the State Court Action. Finally, the

benefits in granting relief from the automatic stay outweigh any prejudice to the Debtor.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
| In re        AARON TONKEN, an individual | CHAPTER: 7 |
| Debtor(s) | CASE NO. LA 04-2883-EC |

## III.

## CAUSE EXISTS TO GRANT RELIEF FROM STAY

11 U.S.C. section 362(d)(1), provides in relevant part that "on request of a party in interest ... the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay (1) for cause. . . .". The Ninth Circuit Court of Appeals recognizes that "'cause has no clear definition and is determined on a case-by-case basis.'" *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990), quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985); see also *In re Castlerock Properties*, 781 F.2d 159,163 (9th Cir. 1986); *In re Beguelin*, 220 B.R. 94, 97-98 (B.A.P.9th Cir.1998).

While section 362(d)(1) requires the moving party to initially show cause why the stay should be lifted, after the moving party has done so, the burden of proof shifts to the debtor to establish that the stay is proper. section 362, subd. (g); *In re Curtis*, 40 B.R. 795 at 802-803 (Bankr.D.Utah 1984).

The Bankruptcy Code does not expressly define "cause" for relief from stay in the context of litigation in a non-bankruptcy forum. However, case law has developed extensive factual tests to determine whether there is "cause" to grant relief from stay to pursue litigation in a non-bankruptcy forum. The Second Circuit in *Sonnax Industries, Inc. v. Tri Component Products, Inc. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir.1990), adopted a list from *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984), of twelve potentially relevant factors in deciding whether to lift the automatic stay to permit litigation to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | | **350NA** |
|---|---|---|
| In re    AARON TONKEN, an individual | Debtor(s) | CHAPTER: 7<br>CASE NO. LA 04-2883-EC |

creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether Movants' success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.*, 907 F.2d at 1286; *Curtis*, 40 B.R. at 799- 800.

While the *Sonnax/Curtis* factors have been widely accepted, other courts have developed slightly modified versions of this multi-factor test. The court in *In re Johnson,* 115 B.R. 634, 636 (Bankr.D.Minn.1989) presented yet another list of factors in deciding whether cause exists to grant relief from stay:

1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; 2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; 3. Whether the state court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred; 4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; 6. Whether the creditor has a probability of success on the merits, *In re Bock Laundry Machine* Co., 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984); 7. And, as this Court now recognizes, whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*In re Johnson* 115 B.R. 634, 636 -636 (Bkrtcy.D.Minn.,1989) (citations omitted).

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

8

**350NA**

| In re | AARON TONKEN, an individual | CHAPTER: 7 |
|-------|----------------------------|------------|
|       | Debtor(s)                  | CASE NO. LA 04-2883-EC |

The factors set forth in *In re Johnson* have been adopted by *In re America West Airlines*, which add some more factors for the Bankruptcy Court to take into account when deciding whether cause exists to grant relief from stay:

> 1) Whether the litigation causes debtor great prejudice; 2) Whether a balancing of the respective hardships tips in favor of the debtor or creditor, resulting from denial or granting of the relief; 3) Whether public policy supports the type or kind of action the Movants is bringing against the Debtor.

*In re America West Airlines, Inc.* 148 BR 920, 923-924 (Bankr.D.Ariz.1993).

As discussed more fully below, Movants have submitted evidence on these multiple factors and it is clear that such analysis would weigh in favor of granting relief from stay. While some of the factors have no direct bearing on this case, either "for" or "against," the relevant factors weigh in favor of granting relief from stay.

## A. Lifting the Automatic Stay Will Promote the Congressional Policy of Allowing State Law Claimants to Pursue Their Claims in State Court

*In re Universal Life*, the court noted as follows: "the Legislative history of § 362 (d)(1) states that's a desire to permit an action to proceed to completion in another tribunal may provide cause' for relief from a stay." *In re Universal Life*, 127 B.R. 453, 455 (E.D. Cal. 1991), affd, 965 F.2d 777 (9th Cir. 1992), quoting H.R. No. 595, 95th Cong., 1st sess. 343, 1977 U.S. Code Cong. & Admin. News 5787, 6300. "A clear congressional policy exists to give state law claimants a right to have claims heard in state court." *In re Castlerock Properties*, 781 F.2d at 163, citing 28 U.S.C. § 1334(c); accord, *In re Tucson Estates, Inc.*, 912 F.2d at 1166 [cause exists to grant relief from stay to allow state court trial to proceed]; *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir.1987) [pending state proceeding dealt with

---

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** | |
|---|---|---|
| In re AARON TONKEN, an individual | | CHAPTER: 7 |
| | Debtor(s) | CASE NO. LA 04-2883-EC |

the same issues as bankruptcy court and issues were a matter of state law best decided by state courts];

*In re Claughton*, 140 B.R. at 868 [where pending litigation involves solely issues of state law, bankruptcy court should grant relief from stay to allow litigation to go forward in state court].

Here, the State Court Action, involves solely state law claims such as California's Unfair Competition Law (Business and Professions Code section 17200 et seq.), California's Supervision of Trustees and Fundraisers for Charitable Purposes Act (California Government Code section 12580 et seq.), state laws applicable to solicitation for charitable purposes (including Business and Professions Code section 17510.8), and state laws applicable to fraud and conversion. Given the fact that all of the claims involved in the consolidated state cases involve solely state law issues, cause exists to lift the automatic stay.

## B. Relief from Stay Would Result in a Resolution of All the Issues Between the Movants and the Debtor

In this case, relief from stay would resolve all the issues between the Movants and the Debtor. The Movants' have potential claims against the Debtor in the State Court Action are based on the Debtor's fraudulent conduct. Such claims would not be dischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6), and under principals of collateral estoppel and res judicata, need not be litigated again in this Court.

If the instant motion is granted, and if the elements of fraud, use of a false statement, and the like are established directly or by necessary implication in the consolidated state cases, Tonken may not re-litigate them in a non-dischargeability proceeding filed by the State in this Court. *Grogan v.*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

10

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
|---|---|

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s) | CASE NO. LA 04-2883-EC |

*Garner*, 498 U.S. 279, 284-285, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). This would result in a

truncated non-dischargeability proceeding in this Court, which would conserve judicial resources

and decrease the cost and effort that would need to be expended by the parties. For these reasons,

cause exists to lift the automatic stay.

## C. The State Proceeding Will Not Interfere with the Orderly Administration of the Bankruptcy Case

Another factor courts consider in determining whether to grant relief from an automatic stay is

whether the non-bankruptcy case will interfere with the orderly and efficient administration of the

bankruptcy case. *In re Robbins*, 964 F.2d 342, 345-346 (4th Cir. 1992); *In re Universal Life Church,*

*Inc.*, 127 B.R. at 455.

Here, allowing the consolidated State Court Action to go forward will not interfere with the

administration of the bankruptcy estate. This Court retains jurisdiction to determine the allowance of

claims against the estate. The Movants seek only to prosecute their claims against the Debtor and obtain

a judgment. This motion does not request this Court to lift the stay with regard to enforcement of any

judgment obtained in the State Court Action. The Debtor will not be prejudiced in lifting the stay

because the Court has already granted the Attorney General relief from stay, so the Debtor will have to

defend the State Court Action in state court. The Movants' claims against the Debtor arise from the same

transactions and misconduct of Debtor which form the basis of the Attorney General's claims, so there

will be minimal additional cost to the Debtor to also allow the Movants to proceed in the State Court

Action. Moreover, as discussed above, the Movants will obtain specific findings in the State Court

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
|---|---|

| In re     AARON TONKEN, an individual | CHAPTER: 7 |
|---|---|
| Debtor(s) | CASE NO. LA 04-2883-EC |

Action such that the fraud claims will not have to be relitigated in the context of a nondischargeablity action in this Court.

## D. <u>Lifting the Stay Would Promote Judicial Economy and Allow the Claims to be Resolved in State Court, Where They Can be Most Expeditiously Resolved</u>

Judicial economy is one of the factors courts have used to determine whether there is cause to lift the automatic stay. *In re Kemble*, 776 F.2d 802, 807 (9th Cir.1985); *In re Beguelin*, 220 B.R. at 98. This Court also considers where the claims against the debtor can be most expeditiously resolved. See Form Motion "Grounds for Relief from Stay."

The estimated length of trial for the State Court Action, according to the State Court's case management order dated September 25, 2003, is 30 days. The Attorney General has demanded a jury trial. Complexity of the issues, the length of time required for trial and the burden on the bankruptcy court are additional factors considered by courts in determining whether to lift the stay. *In re Universal Life Church, Inc.,* 127 B.R, at 455. Here, the complexity of the State Court Action and the substantial amount of time for trial and trial-related proceedings counsel in favor of lifting the stay to allow the State Court Action, and the case with which it has been consolidated, to move forward in state court.

Moreover, the state law claims in the State Court Action can be expeditiously resolved in the state court. The initial complaint was filed on March 13, 2003, and discovery has continued from May 2003 to the present. The parties have already propounded and responded to interrogatories, special interrogatories, requests for admissions, and requests for production of documents. The Debtor has provided a large number of documents to the plaintiff. In all, plaintiff has obtained over

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
|---|---|

| In re          AARON TONKEN, an individual | CHAPTER: 7 |
|---|---|
| Debtor(s) | CASE NO. LA 04-2883-EC |

18,000 pages of documents through formal and informal discovery and pre-filing administrative discovery. Trial for the consolidated State Court Action is set for January 19, 2005.

Important depositions will soon commence in the State Court Action, and it is imperative that the Movants be able to fully participate. It is also important that the Movants have the ability to propound discovery on the Debtor.

In the interest of judicial economy, and because the claims against the Debtor can be more expeditiously resolved in the state court, the motion for relief from the automatic stay with regard to State Court Action should be granted.

## E. The State Court Action Involves Parties Over Which the Bankruptcy Court Lacks Jurisdiction and Full Relief May Not be Afforded All Non-Debtor Parties Without the Debtor's Presence

The defendants named in the State Court Action are the Debtor, Aaron Tonken & Associates, Robert Freedman, RFF Family Partnership, L.P., R.F.F., Inc., Kevin Mattes Clarke, Ronin Law Group and Cynthia Gershman. The only bankruptcy debtor defendant named in the State Court Action is the Debtor.

## F. Public Policy Supports the State Court Action

As described above, the State Court Action was commenced by the Attorney General on behalf of the people of California as part of its police power to protect the citizens of California from any further

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

13

Motion for Relief from Stay (Non-bankruptcy Action)

**350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s) | CASE NO. LA 04-2883-EC |

fraudulent conduct by the Debtor as well as to seek restitution for the Debtor's victims. Clearly, public policy supports the State Court Action.

## G. There are No Threshold Bankruptcy Law Issues

The State Court Action, involves solely state law claims such as California's Unfair Competition Law (Business and Professions Code section 17200 et seq.), California's Supervision of Trustees and Fundraisers for Charitable Purposes Act (California Government Code section 12580 et seq.), state laws applicable to solicitation for charitable purposes (including Business and Professions Code section 17510.8), and state laws applicable to fraud and conversion. There are no threshold Bankruptcy law issues that need to be decided in order for the State Court Action to proceed.

## H.    Prejudice to the Parties

Another factor the court considers in determining whether to lift the automatic stay to allow a non-bankruptcy case to proceed is prejudice to the parties. *In re Universal Life Church, Inc., 127* B.R. at 455. The Movants will be severely prejudiced if relief from stay is not granted because the Attorney General's claims against the Movants in the State Court Action are inextricably related to the allegations of the Debtor's misconduct such that denying the Movants relief from stay would effectively impede the Movants' ability to defend themselves in the State Court Action, while the Attorney General proceeds against the Movants and the Debtor.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | | **350NA** |
|---|---|---|
| In re | AARON TONKEN, an individual | CHAPTER: 7 |
| | Debtor(s) | CASE NO. LA 04-2883-EC |

In contrast, the Debtor will not be prejudiced in lifting the stay because the Court has already

granted the Attorney General relief from stay, so the Debtor will have to defend the State Court Action in

state court. The Movants' potential claims against the Debtor arise from the same transactions and

misconduct of Debtor which form the basis of the Attorney General's claims, so there will be minimal

additional cost to the Debtor to also allow the Movants to proceed in the State Court Action. In fact, relief

from stay should be more cost effective for the Debtor since he needs to defend in only one action. While

costs to the debtor in litigating the non-bankruptcy case is a factor to be considered in whether to lift the

stay, that factor is not determinative. *In re Westwood Broadcasting, Inc.*, 35 B.R. at 49. Even costs termed

"moderate" have been found to be insufficient prejudice to the debtor to avoid lifting the automatic stay.

Id; see also, *In re Phillips,* 40 B.R. 194 (Bankr. D. Col. 1984) [costs of defending non-bankruptcy action,

by themselves, have not been found to be "great prejudice" so as to bar modification of the stay]; accord, *In*

*re Terry*, 12 B.R. 78, 581-583 Bankr. E.D. Wis. 1981).

## IV.

## BOTH MANDATORY AND DISCRETIONARY ABSTENTION APPLY TO THE

## STATE COURT ACTION

28 U.S.C. § 1334(c)(2) provides for mandatory abstention in a proceeding "based upon a

state law claim or state law cause of action, related to a case under Title 11 but not arising

under Title 11 or arising in a case under Title 11 " where an "action is commenced and can be

timely adjudicated" in state court. Mandatory abstention applies here because (1) the State

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|-------|------------------------------|------------|------------------------|
| | | Debtor(s) | CASE NO. LA 04-2883-EC |

Court Action, is not a core matter, (2) could not have been commenced in a court of the United States absent bankruptcy jurisdiction, (3) has been commenced in California Superior Court, and (4) can be timely adjudicated in California Superior Court.

Section 1334(c)(1) provides for discretionary abstention to allow the bankruptcy court to abstain "in the interest of justice, or in the interest of comity with state courts or respect for state law" in a proceeding arising under Title 11 or arising in or related to a case under Title 11. Discretionary abstention is warranted if (1) it is in the interest of justice; (2) in the interest of comity with state courts; or (3) in the interest of respect for state law. *In re Davis*, 177 B.R. 907 (9th Cir. BAP 1995). Pursuant to section 1334(c)(1), the court may retain jurisdiction over the main bankruptcy case but abstain from hearing a particular proceeding. Here, the elements of discretionary abstention apply because the Court has already granted the Attorney General relief from stay in the State Court Action and it would be in the interest of justice to grant the Movants relief from stay as well: the Attorney General's claims against the Movants are inextricably related to the allegations of the Debtor's misconduct such that denying the Movants relief from stay would effectively impede the Movants' ability to defend themselves, while the Attorney General proceeds against the Movants and the Debtor. Furthermore, the State Court Action involves interpretation of California statutes and law.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) | | **350NA** |
|---|---|---|
| In re      AARON TONKEN, an individual | Debtor(s) | CHAPTER: 7 CASE NO. LA 04-2883-EC |

## V.

## CONCLUSION

For all of the foregoing reasons, Movants respectfully requests that this Court grant the instant

Motion.

Dated: 5/19/04

<div align="right">

Respectfully submitted,

Robert Freedman, RFF Family Partnership, L.P., RFF, Inc.
Movants Name

Law Offices of Henry I. Bushkin
Firm Name of Attorney for Movants (if applicable)

By: _____
     Signature

Name: Henry I. Bushkin
Type Name of Individual Movant or Attorney for Movant

</div>

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action) ·

# 350NA

| In re | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| AARON TONKEN | | Debtor(s). | CASE NO.: LA 04-12883-EC |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: Robert Freedman, et.al)

I, Henry I. Bushkin _____, declare as follows:
*(Print Name of Declarant)*

1.   I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

   a.   ☐ I am the Movant.

   b.   ☒ I am the Movant's attorney of record in the Non-bankruptcy Action.

   c.   ☐ Other *(specify)*:

2.   I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.   The Non-bankruptcy Action at issue is currently pending as:

       Case name: People v. Aaron Tonken, et al.
       Docket number: BC292011
       Court or agency where pending:  L.A. County Superior Court

4.   **Procedural Status**

   a.   The causes of action pleaded in the non-bankruptcy forum are *(list)*:

       Fraud, Money had and received, Equitable Indemnity.

       True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit _1___ .

   b.   The Non-bankruptcy Action was filed on *(specify date)*: 4/29/03

   c.   Trial began/is scheduled to begin on *(specify date)*: 1/19/05

   d.   The trial is estimated to require the following number of court days for trial, if trial were held in bankruptcy court *(specify)*: 30 days

   e.   Other defendants to the Non-bankruptcy Action are *(specify)*: Kevin Clarke,Ronin Law Group,Cynthia Gershman, Edward Jamison, Blake Lindquist,Andrew Donen and Others.

5.   **Grounds for relief from stay:**

   a.   ☐ The claim is insured. The insurance carrier and policy number are *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

# 350NA

*Revised January 2001*

| Motion for Relief from Stay (Non-bankruptcy Action) | **350NA** |
|---|---|

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| AARON TONKEN | Debtor(s). | CASE NO.: LA 04-12883-EC |

b.  ☒  The matter can be tried more expeditiously in the non-bankruptcy forum.

   (1)  ☒  It is currently set for trial on: 1/19/05

   (2)  ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:
       The basis for this belief is *(specify)*:

   (3)  ☒  The matter involves non-debtor parties who are not subject to suit in the bankruptcy court. A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

c.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

   (1)  ☐  Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor.

   (2)  ☐  The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

   (3)  ☐  Debtor does not have a reasonable likelihood of reorganizing in this Chapter ☐ 11 ☐ 13 bankruptcy case based upon the following facts *(specify)*:

d.  ☒  For other facts justifying relief from stay, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on  Mav 18. 2004  at Los Angeles. California  *(city, state)*.

Henry I. Bushkin
_____
*Print Declarant's Name*

_____
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*   **350NA**

19

Motion for Relief from Stay (Non-bankruptcy Action)      **350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|-------|----------------------------|---|----------------------------|
| | | Debtor(s) | CASE NO. LA 04-2883-EC |

6. The Attorney General for the State of California (the "Attorney General") has already obtained relief from the automatic stay with respect to the State Court Action.

7. On March 13, 2003, the Attorney General commenced the State Court Action against the Debtor. On September 25, 2003, the Attorney General filed a Second Amended Complaint. The State Court Action arises from numerous instances of alleged fraud and other misconduct committed by the Debtor and other defendants against a number of California charities in connection with various charity events that were produced or supposed be produced by the Debtor. The Attorney General's causes of action alleged against the Debtor are as follows: (1) violation of California Government Code section 12599 (failure of commercial fundraiser for charitable purposes to register, file reports, and provide an accounting); (2) breach of fiduciary duty; (3) fraud; (4) negligent misrepresentation; (5) constructive fraud; (6) conversion; (7) unfair competition (California Business and Professions Code section 17200, et seq.); (8) negligence; (9) breach of contract; and (10) promissory estoppel. More specifically, the Attorney General alleges, inter alia, that the Debtor made numerous misleading representations in connection with his solicitations of donations for charity events, unlawfully diverted donations from the events, and failed to provide an accounting of the charitable funds he solicited, received, or controlled despite demands for an accounting from the Attorney General.

8. On September 17, 2003, Loreen Arbus, Norman Chandler Fox, and the Isabelle and Leonard Goldenson Association, Inc. filed a state civil action against Debtor, Aaron Tonken & Associates, Ronin Law Group, and Kevin Mattes Clarke. That case arises from alleged acts of fraud and misconduct by the Debtor in connection with donations that were made by plaintiffs related to

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action)                              **350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|-------|-----------------------------|-----------|-------------|
|       |                             | Debtor(s) | CASE NO. LA 04-2883-EC |

certain charity events the Debtor produced, or was supposed to produce, and from loans that

plaintiffs made to the Debtor. The causes of action in *Arbus v. Tonken* are as follows: (1) breach of

written contract; (2) breach of oral contract; (3) restitution of gift; (4) breach of fiduciary duty; (5)

conversion; (6) fraud; and (7) implied private right of action for violation of California Penal Code

section 532d.

9.  On February 17, 2004, the Los Angeles County Superior Court granted the Attorney General's

motion to consolidate *People v Tonken* with *Arbus v. Tonken.* The basis for the state court's ruling was

that the cases involved common donations and other common facts. The failure to consolidate could

result in inconsistent rulings with regard to the issue of to whom damages are due in connection with the

common donations. The two state cases were consolidated for all purposes with a single judgment to

issue.

10.  The State Court Action, involves solely state law claims.

11.  In this case, relief from stay would resolve all the issues between the Movants and the Debtor. The

Movants' potential claims against the Debtor in the State Court Action are based on the Debtor's

fraudulent conduct. Such claims are non-dischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).

The Movants intend to seek specific factual findings in the State Court Action that would assist the

Movants in proving that the Debtor's debt to the Movants are non-dischargeable under 523(a)(2), (a)(4)

and (a)(6).

12.  The estimated length of trial for the State Court Action, according to the State Court's case

management order dated September 25, 2003, is 30 days. The Attorney General has demanded a jury

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

Motion for Relief from Stay (Non-bankruptcy Action)

**350NA**

| In re | AARON TONKEN, an individual | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s) | CASE NO. LA 04-2883-EC |

trial. The state law claims in the State Court Action can be expeditiously resolved in the state court. The initial complaint was filed on March 13, 2003. Discovery began in May 2003 and is still ongoing. The parties have already propounded and responded to interrogatories, special interrogatories, requests for admissions, and requests for production of documents. In all, plaintiffs have obtained over 18,000 pages of documents through formal and informal discovery and pre-filing administrative discovery. Trial for the consolidated State Court Action is set for January 19, 2005.

13.  The defendants named in the State Court Action are the Debtor, Aaron Tonken & Associates, Robert Freedman, RFF Family Partnership, L.P., RFF., Inc., Kevin Mattes Clarke, Ronin Law Group and Cynthia Gershman. The only bankruptcy debtor defendant named in the State Court Action is the Debtor.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**350NA**

| Motion for Relief from Stay (Non-bankruptcy Action) - *Page 6 of* ___ | **350NA** |
|---|---|

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| AARON TONKEN | Debtor(s). | CASE NO.: LA 04-12883-EC |

## PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF Los Angeles

1.   I am over the age of 18 and not a party to the within action.  My business address is as follows:

2.   **Regular Mail Service**: On 5/19/04 _____, pursuant to Local Bankruptcy Rule 9013-1, I served the documents described as: NOTICE OF MOTION and MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (including supporting declarations) on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at Los Angeles _____, California, addressed as set forth on the attached list.

> **Note:** If the Notice and Motion have been served pursuant to an Order Shortening Time ("Order"), you must file a Proof of Service that indicates that the notice and service requirements contained in the Order have been met.

3.   **See attached list for names and addresses of all parties and counsel that have been served**.  *(In the manner set forth in Local Bankruptcy Rule 7004-1(b), specify capacity in which service is made; e.g., Debtor, Debtor's Attorney, Trustee, Trustee's Attorney, Creditors Committee or 20 largest unsecured creditors, etc.)*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:

Hamed Wali
_____
*Type Name*

_____
*Signature*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised January 2001*

**350NA**

1

<div align="center"><u>**MAILING LIST**</u></div>

2

Sonja K. Berndt, Esq.
OFFICE OF THE ATTORNEY GENERAL

3

300 South Spring Street, 13th Floor
Los Angeles, CA  90013

4

Brian Sun, Esq.

5

O'NEILL, LYSAGHT & SUN, LLP
100 Wilshire Boulevard, Suite 700

6

Santa Monica, CA 90401

7

Kevin Clarke, Esq.
8726 S. Sepulveda Boulevard, Suite 1431

8

Los Angeles, CA  90045

9

Edward A. Klein, Esq.
LINER YANKELEVITZ SUNSHINE & REGENSTREIF LLP
1100 Glendon Avenue, 14th Floor

10

Los Angeles, CA  90024

11

12

Leonard S. Machtinger, Esq.
Kenoff & Machtinger, LLP
1901 Avenue of the Stars, Suite 1050

13

Los Angeles, CA 90067

14

Philip D. Dapeer, Esq.
5670 Wilshire Blvd., Suite 1470

15

Los Angeles, CA 90036

16

Edward Jamison, Esq.
11301 W. Olympic Blvd., Suite 540

17

Los Angeles, CA 90064

18

<u>Chapter 7 Trustee</u>
Helen Ryan Frazer
Atkinson Andelson Loya Ruud & Romo

19

17871 Park Plaza Drive
Cerritos, CA 90703

20

21

United States Trustee
Ernst & Young Plaza

22

725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

23

Manuel H. Miller, Esq.
5530 Corbin Ave., Suite 210

24

Tarzana, CA 91356

25

26

27

28

<div align="center">24</div>

CONFORMED COPY

1   BILL LOCKYER
    Attorney General
2   JAMES M. CORDI
    Supervising Deputy Attorney General
3   TANIA M. IBAÑEZ, SBN 145398
    SONJA K. BERNDT, SBN 131358
4   Deputy Attorneys General
        300 South Spring Street, Room 5212
5       Los Angeles, California  90013
        Telephone: (213) 897-2179
6       Fax: (213) 897-7605
    Attorneys for Plaintiff
7

ORIGINAL FILED

SEP 2 5 2003

LOS ANGELES
SUPERIOR COURT

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES

10

11  THE PEOPLE OF THE STATE OF CALIFORNIA    Case No.: BC292011
    ex rel. BILL LOCKYER, Attorney General,
12                                           SECOND AMENDED COMPLAINT
                                    Plaintiff, FOR DAMAGES, CIVIL PENALTIES,
13                                           DECLARATION OF A
                        v.                   CONSTRUCTIVE TRUST, AN
14                                           ACCOUNTING, AN INJUNCTION
    AARON TONKEN; AARON TONKEN &             AND FOR OTHER EQUITABLE
15  ASSOCIATES, a limited liability company; RELIEF ARISING FROM:
    ROBERT FREEDMAN; RFF Family Partnership,
16  L.P., aka FFP, a limited partnership; R.F.F., Inc., a (1) VIOLATION OF GOV. CODE
    for-profit corporation; KEVIN MATTES     SECTION 12599;
17  CLARKE; RONIN LAW GROUP, a professional  (2) BREACH OF FIDUCIARY
    law corporation; CYNTHIA GERSHMAN;       DUTY
18  CYNTHIA GERSHMAN, as trustee of the Cynthia (3) AIDING AND ABETTING A
    Gershman Foundation; and DOES 1 through 100, BREACH OF FIDUCIARY DUTY
19                                           (4) WRONGFUL RETENTION OF
                                   Defendants. PROPERTY
20                                           (5) FRAUD AND DECEIT
                                             (6) CONSPIRACY TO COMMIT
21                                           FRAUD AND DECEIT
                                             (7) NEGLIGENT
22  AND RELATED CROSS ACTION.                MISREPRESENTATION
                                             (8) CONSTRUCTIVE FRAUD
23                                           (9) CONVERSION
                                             (10) UNFAIR BUSINESS PRACTICES
24                                           (11) NEGLIGENCE
                                             (12) NEGLIGENCE PER SE
25                                           (13) BREACH OF PLEDGE
                                             AGREEMENT
26                                           (14) BREACH OF CONTRACT
                                             (15) PROMISSORY ESTOPPEL
27

28

                                    1.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    Plaintiff, the People of the State of California ex rel. Bill Lockyer, Attorney

2    General of the State of California, complains and alleges as follows:

3    <u>**General Allegations**</u>

4    1. Plaintiff BILL LOCKYER is the duly elected Attorney General of the State of

5    California and is charged with the general supervision of all charitable organizations within this

6    State; with the enforcement and supervision over trustees, commercial fundraisers, and

7    fiduciaries who hold or control property in trust for charitable and eleemosynary purposes; and

8    with enforcement and supervision under California's Unfair Business Practice Act for unlawful,

9    unfair, or fraudulent business acts or practices. The Attorney General is authorized to enforce, in

10   the name of the People, the provisions of the Supervision of Trustees and Fundraisers for

11   Charitable Purposes Act (Gov. Code, § 12580 et seq.), the Nonprofit Corporation Law (Corp.

12   Code, § 5000 et seq.), and those provisions of the Business and Professions Code that prohibit

13   unlawful, unfair, and fraudulent business practices (Bus. & Prof. Code, § 17200 et seq.).

14   2. At all times material herein, defendants and each of them have been transacting

15   business in the County of Los Angeles. The violations of law hereinafter described have been

16   and are now being carried out in part within said county and elsewhere. Unless enjoined and

17   restrained by an order of this Court, the defendants may continue to engage in the unlawful

18   actions, practices and courses of conduct set forth below.

19   3. Defendant Aaron Tonken (Tonken) is a resident of Los Angeles County, State

20   of California. Tonken is a promoter and producer of fundraising events for nonprofit and other

21   organizations. At all times relevant herein, Tonken also acted as a commercial fundraiser for

22   charitable purposes and as a fiduciary and, in that capacity, had a fiduciary relationship with the

23   donors and the beneficiaries of any charitable solicitation he made or caused to be made.

24   4. Plaintiff is informed and believes and thereon alleges that defendant Aaron

25   Tonken & Associates (AT Associates) was, and is, a limited liability company with its principal

26   place of business located in Los Angeles County. On information and belief, Tonken is President

27   and Chief Executive Officer of AT Associates.

28

---

2.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1        5. Defendant Robert Freedman (Freedman) is a resident of Los Angeles County,

2  State of California.

3        6. On information and belief, defendant RFF Family Partnership, L.P., aka FFP

4  (hereinafter the RFF Family Partnership), is a limited partnership registered and doing business

5  in the State of California with its principal place of business located in the County of Los

6  Angeles. On further information and belief, defendant Robert Freedman controls the RFF

7  Family Partnership. Plaintiff also refers to the RFF Family Partnership as a Freedman-controlled

8  entity.

9        7. On information and belief, defendant R.R.F., Inc. is a California for-profit

10  corporation with its principal place of business located in the County of Los Angeles. On further

11  information and belief, defendant Robert Freedman controls R.R.F., Inc. Plaintiff also refers to

12  R.F.F., Inc. as a Freedman-controlled entity.

13        8. Defendant Kevin Mattes Clarke (Clarke), an attorney, is a resident of Los

14  Angeles County, State of California. On information and belief, Clarke is a shareholder of Ronin

15  Law Group.

16        9. Plaintiff is informed and believes and thereon alleges that defendant Ronin

17  Law Group (Ronin) is a professional law corporation incorporated in the State of California. On

18  information and belief Ronin has its principal place of business in the County of Los Angeles.

19        10. Defendant Cynthia Gershman (Gershman), is a resident of Los Angeles

20  County, State of California. Gershman is the trustee of the Cynthia Gershman Foundation

21  (Gershman Foundation), a charitable trust registered with the Attorney General's Registry of

22  Charitable Trusts. Defendant Gershman is sued both individually and in her capacity as trustee

23  of the Gershman Foundation.

24        11. Defendants Does 1 through 100 are named as fictitious defendants who have

25  participated or acted in concert with one of more of the defendants, or who have acted on behalf

26  of or as agents, servants or employees of one or more of the defendants herein, but whose true

27  names and capacities, whether individual, corporate or otherwise, are presently unknown to

28

3.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  plaintiff. Plaintiff is informed and believes and thereon alleges that defendants Does 1 through

2  100 have directly or indirectly participated in and are responsible for the acts and omissions that

3  are more specifically described herein. Because plaintiff is presently uninformed as to the true

4  names and capacities of defendants Does 1 through 100, plaintiff sues them herein by fictitious

5  names, but will seek leave to amend this Second Amended Complaint when their true names are

6  discovered.

7         12.  Defendants have committed and continue to commit the breaches of fiduciary

8  duty, violations of trust, violations of law, negligent and fraudulent acts, acts of conversion and

9  the other wrongful acts as alleged hereafter in this complaint.

10         13.  In order to preserve and conserve the charitable assets and in order to prevent

11  waste, dissipation and loss of charitable donations and assets of other charities in this State to the

12  irreparable damage of the general public including the People of the State of California, it is

13  necessary that the injunctive relief herein prayed for be granted.

14  <u>A FAMILY CELEBRATION 2001</u>

15         14.  Defendants Tonken and AT Associates decided to promote and produce a

16  charity fundraising event to be called A Family Celebration 2001 (Family Celebration). In the

17  Spring of 2000, Tonken approached cast members of the television series "Ally McBeal" through

18  their agent/representative. Tonken promised that all net proceeds from Family Celebration

19  would benefit the various charities selected by those Ally McBeal cast members (hereinafter

20  referred to as the McBeal charities). In exchange, the cast members agreed to attend the charity

21  event and give the event publicity.

22         15.  Tonken informed the McBeal agent/representative that the event would cost

23  approximately $250,000 and that, since the entire cost of the event would be underwritten by the

24  Gershman Foundation, the event would raise significant amounts of donations for the McBeal

25  charities. From the Spring of 2000 to December 2000, Tonken repeatedly promised all of the net

26  proceeds of Family Celebration to the McBeal charities and promised the event was to be fully

27  underwritten by the Gershman Foundation. On or about January 16, 2001, Tonken entered into a

28

<div align="center">4.</div>

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    written agreement with the McBeal cast members' agent/representative whereby Tonken agreed

2    that 100 percent of the first $650,000 received for sponsor tables, ticket sales and net auction

3    proceeds, and certain specified amounts from ad placement in the "tribute book" would be

4    distributed to the McBeal charities.

5          16. Notwithstanding Tonken's representations, the underwriting funds from the

6    Gershman Foundation were never transferred over to Family Celebration. Further,

7    notwithstanding the January 16, 2001 agreement, Tonken improperly caused funds received from

8    sponsor tables to be spent on underwriting rather than earmarking and preserving those funds for

9    the McBeal charities.

10          17. On or about February 8, 2001, defendants Tonken and AT Associates

11    authorized their agent to enter into an agreement on their behalf with an agent acting on behalf of

12    the popular music group known as *Nsync whereby *Nsync would perform at Family

13    Celebration. In exchange for *Nsync's participation, the parties agreed that the charity

14    designated by *Nsync to be a beneficiary of the event, Challenge for the Children, Inc., would

15    receive 50 percent of the net revenues. Defendants Tonken and AT Associates entered into this

16    agreement despite the fact they had already promised that 100 percent of the first $650,000

17    received for sponsor tables, ticket sales and net auction proceeds would be distributed to the

18    McBeal charities.

19          18. On information and belief, defendants Tonken and AT Associates diverted

20    funds from Family Celebration by soliciting and collecting funds from California donors for

21    Family Celebration and advising the donors to make their donation checks payable to the

22    American Spirit Foundation, which was not a beneficiary of the event. Defendant Tonken has

23    never been an officer or director of the American Spirit Foundation, a foundation that has been

24    defunct since at least March 2000. Tonken caused those checks to be deposited into bank

25    accounts controlled by himself and AT Associates. For example, between 2000 and 2001,

26    Tonken solicited and collected a donation of $150,000 from the Isabelle and Leonard Goldenson

27    Association, Inc. (I&L Association), a donation of $40,000 from the Gershman Foundation, and a

28

---

5.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   donation of $150,000 from the Robert H. Lorsch Foundation Trust ("Lorsch Foundation") for the

2   Family Celebration event. On information and belief, Tonken and AT Associates diverted these

3   funds for purposes unrelated to the event.

4       19. On information and belief, defendant Tonken, AT Associates and Does 1-

5   100, in breach of their fiduciary duty to the donors and beneficiaries of Family Celebration,

6   improperly commingled Family Celebration funds with other funds, improperly diverted

7   charitable donations intended by the donors for Family Celebration and used those funds for

8   purposes unrelated to the event. Defendants have failed to account for these funds despite a

9   demand from the donors, the beneficiaries, and the Attorney General of California.

10      20. On or about February 8, 2001, Tonken and AT Associates entered into a letter

11  agreement with a charitable corporation named the Giving Back Fund, Inc. (the GBF). The GBF

12  is incorporated in Massachusetts and is doing business in Massachusetts and in California.

13  Pursuant to the February 8, 2001 agreement, the GBF agreed to act as fiscal agent for Family

14  Celebration. As fiscal agent, the GBF agreed to collect all contributions for the event and to pay

15  all expenses incurred for the event from an account that would be monitored by the event's

16  accountant, Tanner, Mainstain, Hoffer & Peyrot (Tanner Mainstain). The GBF would also

17  provide donor acknowledgment letters. Under the agreement, the GBF was to receive a

18  charitable contribution in the amount of $100,000 to $200,000, depending upon the amount of

19  revenues collected for the event. Plaintiff is informed and believes and thereon alleges that the

20  GBF did not receive any funds for its services.

21      21. Family Celebration took place on April 1, 2001. The honorary chairpersons

22  of the event were former President Bill Clinton and Hillary Clinton. The dinner chairpersons

23  were television producer David E. Kelley and his wife, actress Michelle Pfeiffer. Plaintiff is

24  informed and believes and thereon alleges that over 900 persons attended the event and the event

25  generated at least $1.5 million in total proceeds. Notwithstanding Tonken's representation that

26  the cost of the event would be approximately $250,000, the alleged cost of the event exceeded

27  $800,000.

28

6.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

22. When the GBF discovered that donations made specifically for Family Celebration were deposited into Tonken-controlled accounts that were not monitored by the GBF or by Tanner Mainstain, the GBF demanded an accounting of these funds from Tonken and AT Associates. An accounting was also demanded by Tanner Mainstain and by some donors to the event.

23. In breach of their fiduciary duty to the charitable beneficiaries and donors of Family Celebration, Tonken and AT Associates refused to provide a complete and accurate accounting of all of the funds collected specifically for the event and deposited into accounts not monitored by the GBF and Tanner Mainstain. On information and belief, in breach of their fiduciary duty to the donors and beneficiaries of the event, Tonken and AT Associates failed and continue to fail to turn over funds designated for Family Celebration from bank accounts under the control of Tonken and AT Associates.

24. The California Attorney General has demanded that Tonken and AT Associates provide an accounting of all of the revenues and expenses for Family Celebration. Defendants have refused to provide any accounting.

## CELEBRATING DIANA

25. In September 2000, Tonken and AT Associates entered into an agreement with the Joan English Fund for Women's Cancer Research (the English Fund). The English Fund is a small nonprofit public benefit corporation incorporated in California. Under the agreement, the English Fund was to pay Tonken and AT Associates $75,000 for Tonken's services and for underwriting a charitable fundraising event to take place by March or April 2001. At or around the time the agreement was executed, Tonken represented to Thomas English (English), President of the English Fund, that the event would be called Celebrating Diana and would honor entertainer Diana Ross. The agreement provided that the English Fund was to receive 100 percent of the net proceeds from the event. On information and belief, Tonken advised English that he expected the fundraiser would net approximately $250,000 to $500,000 in proceeds.

7.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

26.  On or about September 11, 2000, the English Fund gave Tonken two checks, each drawn in the amount of $37,500.  Pursuant to an oral agreement between Tonken and English, one check would be cashed immediately and the other would be cashed no earlier than September 25, 2000, the date written on the second check.  Shortly thereafter, Tonken told English that he needed the second $37,500 installment before September 25, 2000.  Tonken asked English for another check that could be cashed immediately.  On information and belief, Tonken advised English that he would send the check dated September 25, 2000 back to the English Fund, uncashed.  Based upon Tonken's representation, English obtained a cashier's check for $34,500 and another check for $3,000 and sent them to Tonken.

27.  Approximately two days later, English discovered that Tonken had cashed all four of the checks.  When English later attempted to recover the overpayment of $37,500, Tonken told English that he had no funds with which to reimburse the English Fund.  Plaintiff is informed and believes and thereon alleges that, in breach of his fiduciary duty to the English Fund, Tonken diverted $112,000 for purposes unrelated to Celebrating Diana.

28.  On or about October 27, 2000, Tonken solicited a donation from the Lorsch Foundation.  In exchange, the Lorsch Foundation was to be a beneficiary of Celebrating Diana, splitting the net proceeds with the English Fund.  The Lorsch Foundation made a $75,000 donation for the event as a result of Tonken's solicitation and Tonken received and/or controlled those funds.  At no time did Tonken inform the Lorsch Foundation that he had already promised the English Fund 100 percent of the net proceeds.  Likewise, Tonken never told the English Fund that their portion of the net proceeds would be reduced because the Lorsch Foundation was added as a beneficiary.

29.  On or about January 9, 2001, Tonken and AT Associates solicited and received a $150,000 loan from Loreen Arbus for Celebrating Diana.  Defendant Tonken told Ms. Arbus that he needed a loan to secure the presence of South Africa's former President, Nelson Mandela, at the event.  On information and belief, defendant Tonken falsely stated to Ms. Arbus that he had received an exclusive agreement for presenting President Mandela in the United

8.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1　States for one year. As a result of the solicitation from defendant Tonken, Ms. Arbus personally

2　loaned him $150,000 for the event.

3　　　　30. In April 2001, the I&L Association made a donation of $400,000 for

4　Celebrating Diana as a result of another Tonken solicitation. Tonken received and/or controlled

5　those funds. The donation was facilitated by Ms. Arbus based upon the representation of Tonken

6　that a substantial portion of the net proceeds of the event would be distributed to charities to be

7　named by Ms. Arbus. Tonken failed to inform Ms. Arbus that he had already promised the

8　English Fund 100 percent of the net proceeds and the Lorsch Foundation 50 percent of the net

9　proceeds.

10　　　　31. On or about April 4, 2001, Tonken and AT Associates entered into a written

11　agreement with the Giving Back Fund. The GBF agreed to provide services as a fiscal agent for

12　the collection and distribution of all contributions associated with Celebrating Diana, to take

13　place in February 2002, in Los Angeles, California. Tonken and AT Associates agreed, *inter*

14　*alia*, to arrange for a charitable contribution to be paid to the GBF from the proceeds of the

15　event. At the time Tonken and AT Associates entered into the GBF agreement, they had already

16　entered into agreements with the English Fund providing that the English Fund would receive

17　100 percent of the net proceeds of the event, the Lorsch Foundation would receive 50 percent of

18　the net proceeds and Loreen Arbus' charities would receive a substantial portion of the proceeds.

19　　　　32. On or about April 17, 2001, the GBF opened two bank accounts for

20　Celebrating Diana—one for deposit of donations specifically received for underwriting expenses

21　and one for deposit of donations specifically received for direct payment to the charitable

22　beneficiaries of the event. At the time the bank accounts were opened, Pollick met with Tonken,

23　Freedman and Clarke at a branch of the City National Bank. The $400,000 donation from the

24　I&L Association was wired into the Celebrating Diana underwriting account. The donation was

25　to be used solely to pay expenses incurred in connection with Celebrating Diana.

26　　　　33. Pursuant to an oral agreement between Marc Pollick, President and Chief

27　Executive Officer of the GBF, and Tonken and AT Associates, Pollick was an authorized

28

---

9.

**SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF**

1    signatory on the Celebrating Diana bank accounts. On information and belief, at Tonken's

2    request, Tonken's personal attorney, defendant Clarke, was also designated as an authorized

3    signatory on the accounts, but Clarke was required to obtain authorization from Pollick before

4    making any disbursements from the accounts. Further, invoices were required to substantiate all

5    withdrawals.

6        34. Notwithstanding the agreement referenced in paragraph 31, in approximately

7    eight days during April 2001, defendants Tonken, AT Associates and Clarke raided the

8    Celebrating Diana underwriting account. More specifically, on information and belief, at

9    Tonken's direction, Clarke instructed the bank to make payments from the account to various

10   organizations and individuals, including to Clarke's own law firm and to himself individually,

11   depleting the account of approximately $399,000. Of this amount, $199,000 was not authorized

12   by Pollick and no supporting documentation substantiating any disbursements from the

13   underwriting account has been submitted to Pollick or anyone else from the GBF. On

14   information and belief, a substantial portion of these funds were misused and misappropriated by

15   Tonken, AT Associates and Clarke for purposes unrelated to Celebrating Diana. As an example,

16   Tonken and AT Associates improperly diverted funds from this account to make a donation to

17   the Westside Waldorf School on behalf of defendant Gershman.

18       35. With respect to the disbursement of $200,000 from the Celebrating Diana

19   underwriting account, plaintiff is informed and believes that, in 2001 (prior to the April 2001

20   meeting between Tonken, Pollick, Freedman and Clarke), Tonken and Freedman conspired to

21   defraud the beneficiaries of Celebrating Diana of $200,000 by falsely advising Pollick, who

22   represented the beneficiaries' interest, that $200,000 of the funds deposited in the underwriting

23   account needed to be immediately transferred to Freedman in order to secure the presence of

24   former South African President Nelson Mandela at the event. Subsequently, at the April 2001

25   meeting, Tonken falsely advised Pollick, in defendant Freedman's immediate presence, that

26   $200,000 was to be paid to Freedman immediately so that Freedman could secure the presence of

27   Mandela at the event. Freedman failed to disclose to Pollick the fact that the transfer of

28

10.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  $200,000 to Freedman from the event account had nothing to do with Celebrating Diana.

2         36. On information and belief, the $200,000 in charitable funds referenced

3  immediately above were not used to secure the presence of President Mandela or for any other

4  purpose related to Celebrating Diana. Rather, Tonken and AT Associates misappropriated these

5  funds by directing $200,000 to defendant Freedman and/or the RFF Family Partnership for his/its

6  own benefit. On information and belief, neither Freedman nor the RFF Family Partnership

7  performed services to the event that justified the payment.

8         37. In and around July 2002, Tonken advised Ms. Arbus that Celebrating Diana

9  would not go forward. He proposed to Ms. Arbus that 100 percent of the proceeds of the

10  Celebrating Diana *replacement* event would be distributed to charities designated by Ms. Arbus.

11  To this date, neither Celebrating Diana nor any replacement event has occurred.

12         38. The English Fund has made several demands upon Tonken and AT

13  Associates to repay the $75,000 payment the English Fund made to Tonken and AT Associates

14  for Celebrating Diana. In breach of their fiduciary duty to the English Fund, Tonken and AT

15  Associates have refused to repay that money. To this date, no replacement event has occurred

16  and the English Fund has not been reimbursed for its payment to Tonken.

17         39. The GBF, Ms. Arbus and the California Attorney General have demanded

18  that defendants Tonken and AT Associates provide a complete and accurate accounting of the

19  funds donated to Celebrating Diana. In breach of their fiduciary duty to the donors and

20  beneficiaries of Celebrating Diana, Tonken and AT Associates have refused to do so.

21                    **THE HOLLYWOOD GALA SALUTE TO MILTON BERLE**

22         40. In the Summer of 2000, defendants Tonken and AT Associates approached

23  the Westside Waldorf School (WWS), a nonprofit school in California. Tonken offered to

24  organize and promote charitable events to raise money for WWS. Tonken asked that WWS

25  honor defendant Gershman at a luncheon and promised that, in exchange, Gershman would make

26  substantial donations to the school. WWS honored Gershman publicly at a luncheon that took

27  place in the Summer of 2000.

28

11.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

41. In January of 2001, Gershman, as trustee of the Gershman Foundation, irrevocably pledged to donate $650,000 to WWS to enable the school to move to a new location. Gershman signed the pledge agreement thereby binding the Gershman Foundation. The pledge agreement was accepted by WWS. In reliance on Gershman's pledge of $650,000, WWS commenced negotiations concerning a school site, which would allow the school to expand. WWS made public announcements about Gershman's generous donation. Persons associated with the school spent numerous hours negotiating the purchase of their new location, which resulted in a letter agreement to purchase a 45,000 square-foot building.

42. In the pledge agreement, Gershman also irrevocably agreed, on behalf of the Gershman Foundation, to underwrite four charitable fundraising events to benefit WWS during the years 2001 through 2004. In exchange, WWS agreed to use Tonken's services as a producer for the four charitable events and paid Tonken $25,000 to commence work on the first event.

43. On information and belief, in April 2001, Gershman, for no valid reason, reneged on the irrevocable pledge agreement. Gershman instructed Tonken to donate to WWS $30,000 raised from his other events and to return his $25,000 fee. On information and belief, Tonken first gave WWS a check that bounced. Tonken then caused a bank check in the amount of $55,000 made payable to WWS to be drawn on the Celebrating Diana underwriting account, even though Marc Pollick had not authorized the payment from that account.

44. On information and belief, WWS found itself in dire financial straits due to Gershman's pledge withdrawal. In an effort to appease the WWS board, Tonken told Steven Stockman, a board member of WWS, that Tonken could produce a charitable event that would make up for the lost pledge. Tonken suggested that WWS participate in the Hollywood Gala Salute to Milton Berle (the Berle Event) that would take place on July 22, 2001. On June 11, 2001, Tonken entered into a written agreement with WWS. Tonken agreed to produce and obtain financing for the event. Tonken told the WWS board that he had already secured $150,000 in underwriting and that the expenses of the event were estimated to be approximately $175,000.

12.

**SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF**

45. Under the July 11, 2001 agreement, the event's costs were not to exceed $200,000 without approval from WWS. Tonken's fee for producing the event would be 20 percent of the net revenues. Actress Whoopie Goldberg's charities would receive $45,000 for her appearance at the event, and out of the remaining income or adjusted net income, 45 percent was to be distributed to WWS, 40 percent to Women of Washington (a charitable organization), and 15 percent to any remaining charities designated by Tonken.

46. WWS agreed to act as fiscal agent for the event and opened a bank account for the deposit of all donations for the event. From this account, WWS was to pay for the event's costs upon submission of invoices from Tonken.

47. On information and belief, WWS failed to receive any net revenue from the event because charity funds were improperly diverted by Tonken, AT Associates, Clarke, Ronin, and Does 1-100. On information and belief, Tonken diverted underwriting funds. As an example, in June 2001, Tonken solicited and received and/or controlled $175,000 in donations made by Loreen Arbus to underwrite the event. Arbus made out two checks for the event, one for $75,000 and one for $100,000. Instead of depositing both checks with WWS as required by the agreement, Tonken had the $100,000 check deposited into a Ronin Law Group trust account. On information and belief, Tonken, Ronin and Clarke did not turn over the $100,000 donation to WWS.

48. After the event, WWS learned that Tonken had deposited event donations into bank accounts controlled by Tonken and/or his agents. WWS demanded that Tonken supply check registers and bank account records for all deposits and disbursements made by Tonken related to the Berle Event. On information and belief, Tonken refused to make a full accounting of all donations for the event deposited into bank accounts controlled by Tonken and/or his agents.

49. Tonken also diverted funds raised through credit card receipts. WWS demanded that Tonken supply an accounting of all credit card receipts for the event, but Tonken refused to do so. On information and belief, defendants Tonken, Clarke and Does 1-100

13.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  improperly diverted the credit card receipts for the event.

2       50. WWS also failed to receive any net revenue from the event because Tonken

3  recklessly gave away more tickets than were actually sold. Although Tonken estimated that the

4  cost of the event would be $175,000, the actual cost of the event was twice that amount. On

5  information and belief, Tonken never received authority from WWS to exceed the $200,000 limit

6  on expenses.

7       51. Tonken also deliberately misled Loreen Arbus in soliciting funds for the Berle

8  Event. Tonken failed to disclose to Arbus that Whoopie Goldberg's charities would receive

9  $45,000 and that WWS was also a beneficiary. In soliciting the underwriting from the I&L

10  Association, Tonken told Arbus that her charity, the Women of Washington, would be the

11  primary beneficiary of the event and that, at a minimum, that charity would receive a $48,000

12  donation. Although Arbus donated $175,000 to underwrite the event, Women of Washington did

13  not receive the proceeds promised by Tonken.

14       52. The California Attorney General has demanded that Tonken and AT

15  Associates provide an accounting of all of the revenues and expenses for the Berle Event.

16  Defendants have refused to provide any accounting.

17            **THE KIDS CAMPAIGN EVENT**

18       53. The Kids Campaign is a small California nonprofit public benefit corporation.

19  In or around September 2001, Tonken and AT Associates approached Chris Woodrum,

20  Executive Director of the Kids Campaign, about producing a charity fundraising event for the

21  benefit of the Kids Campaign and other charities. On information and belief, in or around

22  September 2001, the Kids Campaign and Tonken and AT Associates orally agreed that Tonken

23  and AT Associates would produce the event (the Kids Campaign Event). On further information

24  and belief, it was agreed that the Kids Campaign Event would occur in the first quarter of 2002.

25       54. Tonken and AT Associates directed Woodrum to open two bank accounts in

26  the name of the Kids Campaign—one to be used for underwriting expenses of the event and one

27  for direct contributions to the beneficiaries of the event.

28

14.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    55.  On information and belief, in or around September 2001, Tonken and AT

2  Associates and Woodrum orally agreed that Tonken and AT Associates would receive 10 percent

3  of the net proceeds from the Kids Campaign Event as compensation for work performed for the

4  event.  The parties further agreed that the remainder of the net proceeds would be split among the

5  following three charities: (1) the Kids Campaign; (2) the Mark Wahlberg Youth Foundation; and

6  (3) the Children's Craniofacial Association.

7    56.  In or around October 2001, the Joseph K. & Inez Eichenbaum Foundation

8  (the Eichenbaum Foundation) made a $75,000 donation to underwrite the event as a result of a

9  solicitation made by Tonken and AT Associates.  Tonken and AT Associates received and/or

10  controlled those funds.  The Eichenbaum Foundation is a California nonprofit public benefit

11  corporation.

12    57.  On information and belief, in or around November 2001, the Children's

13  Craniofacial Association (the CCA) made a $25,000 donation to underwrite the event as a result

14  of a solicitation made by Tonken and AT Associates.  Tonken and AT Associates received and/or

15  controlled those funds.  The CCA is a nonprofit corporation with its principal place of business

16  in Dallas, Texas.

17    58.  On information and belief, in or around October 2001, Tonken and Woodrum

18  met at the City National Bank for the purpose of depositing the $75,000 contribution from the

19  Eichenbaum Foundation into a Kids Campaign Event account.  Freedman was present at this

20  meeting.  On information and belief, in 2001, prior to the aforementioned meeting, defendants

21  Tonken and Freedman entered into an agreement to defraud the Kids Campaign Event

22  beneficiaries of $60,000 in order for Tonken to satisfy a debt owed to Freedman that was

23  unrelated to the Kids Campaign Event.  At the October 2001 meeting, immediately after the

24  deposit of $75,000 into the event account, Tonken requested Woodrum to prepare and sign a

25  check drawn on the account in the amount of $60,000, made payable to "FFP/Robert Freedman."

26  On information and belief, in Freedman's immediate presence, Tonken falsely represented to

27  Woodrum that the check was to pay expenses for the Kids Campaign Event.  On information and

28

---

**15.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  belief, the $60,000 in charitable funds referenced immediately above were not used for purposes

2  related to the Kids Campaign Event. Rather, Tonken and AT Associates misappropriated these

3  funds by directing $60,000 to defendant Freedman and/or the RFF Family Partnership for his/its

4  own benefit. On information and belief, neither Freedman nor the RFF Family Partnership

5  performed services to the event that justified the payment.

6    59. In breach of their fiduciary duty to the charitable beneficiaries and donors of

7  the event, Tonken and AT Associates caused funds from the Kids Campaign Event account to be

8  improperly diverted for purposes unrelated to the event. Although Tonken solicited and received

9  $100,000 for the purpose of underwriting the Kids Campaign Event, to this date, the event has

10  not taken place.

11    60. The California Attorney General has demanded that Tonken and AT

12  Associates provide an accounting of all of the revenues and expenses for the Kids Campaign

13  Event. The Kids Campaign has also demanded an accounting. Defendants have refused to

14  provide any accounting.

15  ## MICHAEL J. FOX FOUNDATION EVENT

16    61. In or around October of 2002, Aaron Tonken solicited funds from Martin

17  Gubb (Gubb) in connection with a charity fundraising event. Gubb wanted to raise money to

18  find a cure for Parkinson's disease. For $50,000, Tonken agreed to organize a charity event.

19  Gubb agreed to donate the use of his residence and to advance the costs of the event. After the

20  event, Gubb was to be reimbursed for all event expenses and the remaining proceeds would go to

21  charity. Tonken promised to secure the presence of celebrities so that the event could raise

22  significant charity funds. Tonken told Gubb that Celine Dion would appear and entertain at the

23  event if Gubb donated $50,000 to either the Betty Ford Center or the Muscular Dystrophy

24  Association. Tonken also told Gubb that the Michael J. Fox Foundation (Fox Foundation)

25  agreed to be the fiscal agent for the event. Tonken directed Gubb to make a $15,000 donation to

26  the Fox Foundation as a show of good faith.

27    62. Gubb gave Tonken a check for $50,000 to be forwarded to the Betty Ford

28

16.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    Center and Gubb gave Tonken $15,000 to be forwarded to the Fox Foundation. Instead, Tonken,

2    AT Associates and Does 1-100 diverted the money into bank accounts controlled by Tonken, his

3    agents, and Does 1-100.

4        63.  The event, initially scheduled to take place on November 14, 2002, was

5    postponed by Tonken multiple times, based on purported problems with Ms. Dion and/or the Fox

6    Foundation. On information and belief, Ms. Dion never agreed to attend a charity event at

7    Gubb's house in exchange for a $50,000 donation to the Betty Ford Center, and the Fox

8    Foundation never agreed to act as the fiscal agent for the event. The event has not taken place.

9    Tonken never forwarded the Gubb donations to the Betty Ford Center and the Fox Foundation.

10   Moreover, Tonken has refused to return any money advanced by Gubb.

11   **UNIFIED IN GREAT CAUSE FOR AN EVENING TO REMEMBER**

12       64.  Defendants Tonken, AT Associates and Does 1-100 agreed to produce a

13   charity fundraising event to benefit the City of Hope, the Inner-City Games Foundation and

14   Knowledge is Power. The event was called Unified in Great Cause for an Evening to Remember

15   (the Great Cause Event). The event honored actors Kelsey Grammar and Arnold

16   Schwarzenegger, and was hosted by singer Rod Stewart.

17       65.  Tonken approached Ms. Charisse Browner, the president of the Performing

18   Arts Foundation, in the spring of 2002 and invited Knowledge is Power dba Performing Arts

19   Foundation (Knowledge is Power) to become involved in a charity event Tonken was planning.

20   Tonken told Ms. Browner that the Gershman Foundation would underwrite the entire event.

21   Knowledge is Power entered into an agreement with Tonken, whereby Tonken would be paid

22   $35,000 plus 20% of the gross revenues received. Knowledge is Power was to be one of two

23   charities that would be beneficiaries of the event. Knowledge is Power would receive at a

24   minimum 60 percent of all net proceeds including table sales, advertising, and auction sales.

25       66.  Tonken never informed Ms. Browner that the City of Hope was also an

26   intended beneficiary of the event. Rather, Ms. Browner was led to believe that only the Inner

27   City Games Foundation and Knowledge is Power were to be beneficiaries of the event.

28

17.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

67. On information and belief, the expenses of the event were fully underwritten. The Gershman Foundation donated $690,000 funds for underwriting, but Tonken deposited those funds in a bank account he controlled. Knowledge is Power did not receive all of the underwriting funds controlled by Tonken and Tonken lied about the amount of underwriting he had solicited and controlled. Tonken informed Knowledge is Power that he received only $125,000 in underwriting from when, in truth, he had received an additional $690,000 from the Gershman Foundation.

68. On information and belief, the auction sales grossed in excess of $100,000, and the ticket sales raised over $160,000. On information and belief, thousands of dollars were raised in advertisements in the event tribute book.

69. Although the event took place on September 19, 2002, and was considered a success, no donations have been made to the City of Hope or the Inner-City Games Foundation from the event. Knowledge is Power received a donation of $62,000, yet they should have received approximately $450,000, if Tonken had accounted for the concealed $690,000 in underwriting received from the Gershman Foundation. On information and belief, Tonken and Does 1-100 diverted the underwriting donations from the Gershman Foundation into bank accounts controlled by Tonken and Does 1-100 and disbursed funds from these accounts for purposes that were unrelated to the event.

70. Rod Stewart, through his attorney, made a demand on Tonken for an accounting of the disposition of the proceeds from the event, but Tonken refused to account.

71. The California Attorney General has demanded that Tonken and AT Associates provide an accounting of all of the revenues and expenses for the Great Cause Event. Defendants have failed to provide one.

## A TIME TO GIVE

72. The Afghanistan World Foundation (AWF) is a small nonprofit public benefit corporation incorporated in California in May 2002. In September 2002, defendants Tonken and AT Associates entered into a written contract with the AWF through Sonia Nassery Cole (its

18.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  founder and chairperson) whereby Tonken agreed to provide "special event services" in

2  connection with a charity fundraiser to be called "A Time to Give," which was to be held on

3  February 7, 2003. The fundraiser was to benefit the Afghan people.

4      73. For a $25,000 fee, Tonken agreed, *inter alia*, to do the following: (a) assist

5  another firm in obtaining celebrity pre-approvals to wear Audemars Piguet watches and attend

6  the event, (b) provide additional entertainers to perform at the event, (c) send out solicitation

7  letters for contributions, and (d) use his best efforts in selling as many tables at the event as

8  possible through mail solicitation.

9      74. At Tonken's insistence, the AWF paid Tonken and AT Associates the

10  $25,000 fee within days after the contract was consummated.

11      75. In October 2002, Tonken breached the contract by refusing to perform under

12  the contract.

13      76. As a result of Tonken's actions and failure to act, A Time to Give has not

14  occurred to date.

15  <div align="center">**EVENING OF HOPE**</div>

16      77. Project Inform is a nonprofit public benefit corporation in California that is

17  devoted to working to end the AIDS epidemic. Project Inform has hosted annual "Evening of

18  Hope" fundraising dinners for several years.

19      78. In 2001, defendant Tonken promised representatives of Project Inform that he

20  would support the 2001 Evening of Hope fundraising dinner with a $10,000 donation from

21  defendant Gershman and/or the Gershman Foundation. On information and belief, Tonken had

22  Gershman's authority to make pledges binding both her personally and the Gershman

23  Foundation. At Tonken's request and, in return for that pledge, Project Inform held nine tickets

24  for the event under Gershman's name and one ticket under Tonken's name. On information and

25  belief, the 10 tickets were claimed by Tonken and/or Gershman and/or the Gershman Foundation

26  on the evening of the event, but neither Tonken nor Gershman nor the Gershman Foundation

27  made a donation toward the event.

28

<div align="center">19.</div>

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

# THE CYNTHIA GERSHMAN FOUNDATION

79. The Cynthia Gershman Foundation (the Gershman Foundation) is a California charitable trust and is recognized as a nonprofit private foundation exempt from taxation under section 501(c)(3) of the Internal Revenue Code. According to its trust documents, the Gershman Foundation is required to distribute its income and principal exclusively for exempt purposes. Moreover, no income or principle of the trust was to benefit the trustee or any other private individual such as Aaron Tonken. The trust instrument required that Gershman refrain from making any expenditures subject to excise taxes as defined by Internal Revenue Code Section 4945(d), and to refrain from any self-dealing transactions as defined by Internal Revenue Code Section 4941(d).

80. Gershman engaged in the following self-dealing transactions. Gershman improperly advanced her personal social interests at the expense of the foundation by having the Gershman Foundation pay for her attendance at charity events. On information and belief, Gershman also funneled Gershman Foundation donations through Tonken, who in turn used them to pay Gershman's public relations expenses, insurance, and other expenses unrelated to charity. On information and belief, Gershman also funneled donations through Tonken, who in turn used them to pay back personal loans that Tonken owed to Gershman.

81. As a trustee, Gershman had a fiduciary duty to exercise due care to ensure that donations she authorized from the Gershman Foundation went to charity instead of Tonken-controlled bank accounts. She breached that duty by failing to use due care in violation of state law and by failing to exercise expenditure responsibility as required by federal law. Beginning in 1997 and continuing through 2003, Gershman violated Federal Tax Laws by failing to exercise expenditure responsibility over foundation grants by failing to obtain grant agreements, annual reports, accounting reports, financial statements or final reports from any of the grantee organizations on how the Gershman Foundation's funds were actually spent. On information and belief, Gershman failed to take other steps to ensure that donations she made from the Gershman Foundation went to charity. Instead, on information and belief, from 1997 to 2003, Gershman

20.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   entrusted donations to Tonken, AT Associates and Does 1-100.  Tonken, AT Associates and

2   Does 1-100 diverted the donations Gershman entrusted to them.  On information and belief,

3   Tonken, AT Associates and Does 1-100 diverted donations made to the Foundation for the

4   Performing Arts, the American Foundation for the Performing Arts, the American Spirit

5   Foundation, the Performing Arts Foundation, and the David L. Singer Memorial Foundation, as

6   well other charities.  On information and belief, all of those donations, or a portion of those

7   donations, were diverted by Tonken, AT Associates and Does 1-100 for non-charitable purposes.

8   On information and belief, Tonken did not have authority from the charities to divert the donated

9   funds.  If Gershman had exercised due care and expenditure responsibility the diversion of

10  donations would not have taken place.

11          82.  As one example of diversion, on December 7, 2000, Tonken opened a bank

12  account in his own name doing business as the Performing Arts Foundation, a sole proprietorship

13  (the Performing Arts dba account).  On information and belief, Tonken controls this account and

14  is the sole signatory on the account.  On December 7, 2002, the Gershman Foundation made a

15  charitable donation of $175,000, which Tonken caused to be deposited into his Performing Arts

16  dba account.  On information and belief, Tonken and AT Associates improperly and unlawfully

17  diverted portions of these charitable funds for non-charitable purposes including making car

18  payments, car insurance payments, paying the public relations expenses of defendant Gershman,

19  and paying a life insurance premium on a policy taken out on the life of Gershman.  On

20  information and belief, Tonken is a beneficiary under the aforementioned life insurance policy.

21          83.  On information and belief, beginning in 1997 and continuing into 2003,

22  Tonken, AT Associates and Does 1-100, opened numerous bank accounts using the names of

23  charities as dba's for themselves.  Tonken, AT Associates and Does 1-100 would then deposit

24  the charity donation checks provided to them by Gershman and others into these bank accounts.

25  From these accounts, Tonken and Does 1-100 would then pay bills, withdraw cash or obtain

26  cashier checks for purposes unrelated to charity.  On information and belief, Gershman did

27  nothing to verify how the charity funds deposited into Tonken-controlled bank accounts were

28

21.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    being used.  Gershman's utter failure to exercise expenditure responsibility or due care has

2    caused the Gershman Foundation to lose over $3 million.

3                84.  The Attorney General has demanded that Tonken and AT Associates provide

4    an accounting of all of the funds deposited into the Performing Arts dba account.  Defendants

5    have refused to do so.  The Attorney General has demanded that Gershman produce records

6    regarding the Gershman Foundation's donations, but she has failed to produce all records

7    requested or to provide a complete accounting.

8                                    **FIRST CAUSE OF ACTION**

9                            **(For Violation of Government Code Section 12599)**

10                  **(Against Defendants Tonken, AT Associates and Does 1-100)**

11               85.  Plaintiff re-alleges and incorporates by reference herein each and every

12   allegation contained in paragraphs 1 through 84, above.

13               86.  On information and belief, for compensation, Tonken, AT Associates and

14   Does 1-100 solicited funds in this state for charitable purposes for Family Celebration,

15   Celebrating Diana, the Berle Event, the Kids Campaign Event, the Fox Foundation Event, the

16   Great Cause Event and A Time to Give.  On information and belief, for compensation,

17   defendants Tonken, AT Associates and Does 1-100 received and/or controlled funds donated as a

18   result of their solicitation for these events.

19               87.  On information and belief, for compensation, Tonken, AT Associates and

20   Does 1-100 procured and/or engaged a compensated person(s) to solicit, receive, and/or control

21   funds for the purpose of underwriting Family Celebration, Celebrating Diana, the Berle Event,

22   the Kids Campaign Event, the Fox Foundation Event, the Great Cause Event and A Time to Give

23   and for the purpose of providing direct contributions to the charitable beneficiaries of those

24   events.

25               88.  By virtue of the actions of Tonken, AT Associates and Does 1-100 described

26   herein, they are commercial fundraisers for charitable purposes within the meaning of

27   Government Code section 12599.

28

                                              22.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1       89. At all times relevant herein to present, Tonken and AT Associates and Does

2  1-100 have failed to register as commercial fundraisers with the Attorney General's Registry of

3  Charitable Trusts in violation of Government Code section 12599, subdivision (b) and have

4  failed to pay the applicable registration fees required by statute. The Registry of Charitable

5  Trusts has not granted any extensions to Tonken, AT & Assocs. and Does 1-100 to register as

6  commercial fundraisers for charitable purposes or to pay the required registration fees.

7       90. As commercial fundraisers for charitable purposes, Tonken, AT Associates

8  and Does 1-100 were required to file financial reports for the years 2000, 2001 and 2002 with the

9  Registry of Charitable Trusts pursuant to Government Code section 12599, subdivision (c).

10  Tonken, AT Associates and Does 1-100 failed to file those reports. No extensions to file the

11  reports have been granted.

12       91. Pursuant to Government Code section 12599, subdivision (g), at all times

13  relevant herein, Tonken, AT Associates and Does 1-100 were commercial fundraisers for

14  charitable purposes and as such are subject to the Attorney General's supervision. Under

15  Government Code section 12599, subdivision (g), Tonken, AT Associates and Does 1-100 are

16  constructive trustees for charitable purposes with regard to all funds collected from solicitations

17  for Family Celebration, Celebrating Diana, the Berle Event, the Kids Campaign Event, the Fox

18  Foundation Event, the Great Cause Event, and A Time to Give as described herein and have a

19  duty to account to the Attorney General for all such funds.

20       92. The Attorney General has demanded an accounting from Tonken and AT

21  Associates of all of the funds received from solicitations they made in connection with the Kids

22  Campaign Event, Celebrating Diana, Family Celebration, the Berle Event the Fox Foundation

23  Event and the Great Cause Event and all disbursements of those funds. As to each of these

24  events other than the Fox Foundation Event, Tonken and AT Associates have violated

25  Government Code section 12599, subdivision (g), by failing to provide an accounting to the

26  Attorney General.

27       93. Pursuant to Government Code section 12599, subdivision (f), plaintiff is

28

**23.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    entitled to an injunction against Tonken, AT & Assocs. and Does 1-100 prohibiting them from

2    soliciting for charitable purposes in this State until they have complied with the registration and

3    reporting provisions of Government Code section 12599.

### SECOND CAUSE OF ACTION

### (For Breach of Fiduciary Duty)

### (Against Defendants Tonken, AT Associates, Clarke, Gershman

### (as Trustee of the Gershman Foundation), and Does 1-100)

8    94.  Plaintiff re-alleges and incorporates by reference herein each and every

9    allegation contained in paragraphs 1 through 93, above.

10    95.  A fiduciary relationship existed between Tonken, AT Associates and Does 1-

11   100, and the individuals and entities from whom they solicited donations for the Kids Campaign

12   Event, Celebrating Diana, Family Celebration, the Berle Event, the Fox Foundation Event, and

13   the Great Cause Event.  The fiduciary relationship was established by statute (Business and

14   Professions Code section 17510.8 and Government Code section 12599), by common law, and

15   by agreement.

16    96.  Defendants Tonken, AT Associates, Clarke and Does 1-100 accepted the

17   charitable contributions on behalf of the charitable beneficiaries of these events.  The acceptance

18   of those donations established a charitable trust and a fiduciary duty on the part of Tonken, AT

19   Associates, Clarke and Does 1-100 owed to the charitable beneficiaries of these events and to the

20   donors of these events to ensure that the donations were used for these events.

21    97.  Tonken, AT Associates, Clarke and Does 1-100 breached their fiduciary duty

22   to the charitable beneficiaries and donors of these events when they caused the funds to be

23   improperly diverted and used for purposes unrelated to the event.

24    98.  As trustees, Tonken, AT Associates, Clarke and Does 1-100 had a duty to the

25   donors and to the beneficiaries of the charitable fundraising events alleged herein to account for

26   the funds they received and held in trust.  Defendants breached their fiduciary duty when they

27   failed to provide such an accounting for these events other than the Fox Foundation Event.

28

24.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

99. As trustees holding assets in trust for charitable purposes, Tonken, AT Associates, Clarke and Does 1-100 had a duty to segregate contributions collected for these events from other funds and to maintain separate accounting records. Defendants breached their fiduciary duty to the donors and beneficiaries of the events when they commingled funds collected for the events with other funds and failed to keep separate accounting records.

100. A fiduciary relationship existed between Tonken, AT Associates and the Gershman Foundation when those defendants solicited donations from the Gershman Foundation to be used for charitable purposes. Defendants accepted the Gershman Foundation's funds and caused them to be deposited into the Performing Arts dba account as well as other Tonken-controlled bank accounts. The acceptance of these funds established a charitable trust and a fiduciary duty on the part of defendants Tonken and AT Associates owed to the Gershman Foundation to ensure that the funds were used for charitable purposes. Defendants breached their fiduciary duty to the Gershman Foundation when they caused the funds to be improperly diverted for non-charitable purposes.

101. When Clarke became a signatory on the Celebrating Diana underwriting account, he became an agent/trustee of the beneficiaries and was bound to act with the utmost good faith for the charities' benefit. He owed a duty to the beneficiaries of Celebrating Diana and to the I&L Association to ensure that the funds in that account were used for purposes solely related to the event. Defendant Clarke breached his fiduciary duty when he failed to obtain proper authorization for disbursement of approximately $200,000 in the account and improperly diverted those funds for purposes unrelated to the event.

102. As a charitable trustee, Gershman has a fiduciary duty towards the trust and must refrain from engaging in any acts of self-dealing. Gershman breached her fiduciary duty by engaging in self-dealing acts. From 1997 to 2003, Gershman used the Gershman Foundation funds to improperly benefit herself by having the foundation purchase tickets to charity events for Gershman and her friends. Gershman also has a fiduciary duty to exercise due care and to exercise expenditure responsibility to protect and preserve the trust property. Gershman

25.

1   breached her fiduciary duty by failing to ensure that donations the Gershman Foundation made

2   were properly distributed to charity instead of to Tonken-controlled bank accounts. Gershman

3   violated federal tax laws by failing to exercise expenditure responsibility which required that she

4   obtain grant agreements and take other measures to ensure that money she donated on behalf of

5   the Gershman Foundation went to charity. Instead, on information and belief, Gershman

6   recklessly put the trust assets in peril by entrusting donations to Tonken, AT Associates and Does

7   1-100. Because Gershman failed to use due care and failed to exercise expenditure responsibility

8   Tonken, AT Associates and Does 1-100 were able to, and did, divert the charitable donations.

9          103. As a direct and proximate result of the actions of Tonken, AT Associates

10  and Does 1-100 as alleged herein, the beneficiaries of the aforementioned events, as well as the

11  beneficiaries of the Gershman Foundation, have been damaged in an amount presently unknown

12  to plaintiff, but believed to be in excess of $1 million.

13         104. As a direct and proximate result of the actions of Clarke and Does 1-100 as

14  alleged herein, the beneficiaries of Celebrating Diana have been damaged in an amount presently

15  unknown to plaintiff, but believed to be in excess of $199,000.

16         105. As a direct and proximate result of Gershman's breach of fiduciary duty, the

17  beneficiaries of the Gershman Foundation and the beneficiaries of Family Celebration and the

18  Berle Event have been damaged in an amount unknown to plaintiff, but believed to be in excess

19  of $4 million.

20         106. The amount of money due from Tonken, AT Associates, Clarke, Gershman

21  and Does 1-100 to the charitable beneficiaries of the fundraising events at issue in this cause of

22  action are unknown to plaintiff, but are believed to be in excess of $1.7 million. The exact

23  amount cannot be ascertained without an accounting of the receipts and disbursements of those

24  events. The facts necessary for calculation of the receipts and disbursements, and thus the

25  amount owed to the beneficiaries of the events, are within the special knowledge of defendants.

26  The Attorney General has demanded an accounting from defendants Tonken and AT Associates

27  of all of the funds received from their solicitations related to Family Celebration, Celebrating

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    Diana, the Berle Event, the Kids Campaign Event, the Fox Foundation Event and the Great

2    Cause Event. Defendants have failed to provide an accounting to the Attorney General other

3    than with regard to the Fox Foundation Event.

4        107. Defendants engaged in fraudulent, oppressive and malicious conduct and

5    plaintiff is, therefore, entitled to an award of punitive damages in an amount to be decided at the

6    time of trial. In doing the acts alleged in this cause of action, defendants and each of them acted

7    in callous disregard of the rights of the charity beneficiaries, knowing that their conduct was

8    substantially certain to injure the charities.

9        108. By reason of each and all of the acts alleged in this cause of action, Tonken,

10   AT Associates, Clarke, and Gershman have failed to comply with the trust which they have

11   assumed and have departed from the public and charitable purposes they were bound to serve. In

12   order to preserve and conserve the assets of the Gershman Foundation and in order to prevent

13   waste, dissipation and loss of charitable donations and assets of other charities in this State to the

14   irreparable damage of the general public including the People of the State of California, it is

15   necessary that the injunctive relief herein prayed for against defendants Tonken, AT Associates,

16   Clarke and Gershman be granted.

17                   **THIRD CAUSE OF ACTION**

18           **(For Aiding and Abetting a Breach of Fiduciary Duty)**

19              **(Against Defendants Clarke, Ronin Law Group,**

20              **Gershman (as an Individual and as Trustee of the**

21              **Gershman Foundation), Freedman and Does 1-100)**

22       109. Plaintiff re-alleges and incorporates by reference herein each and every

23   allegation contained in paragraphs 1 through 108, above and paragraphs 136-139 and 141-163,

24   below.

25       110. Tonken and AT Associates and Does 1-100 breached their fiduciary duty to

26   the donors and beneficiaries of Family Celebration, Celebrating Diana, the Kids Campaign

27   Event, the Berle Event, the Fox Foundation Event, and the Great Cause Event, when they

28

                                    27.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   improperly commingled funds and diverted, misused and misappropriated funds specifically

2   donated for the events for purposes unrelated to the events.  Tonken, AT Associates and Does 1-

3   100 diverted, misused and misappropriated such funds for purposes that include paying off

4   Tonken's prior debts and making payments to defendants Clarke and the Ronin Law Group that

5   were unrelated to the events.

6           111.  On information and belief, defendants Clarke and Ronin aided and abetted

7   and/or participated in Tonken's breach of fiduciary duty for the purpose of advancing Clarke's

8   own interests or financial advantage.  Clarke and Ronin assisted Tonken in the diversion of

9   charity funds by allowing unauthorized disbursements from the Celebrating Diana underwriting

10  account.  Clarke and Ronin aided and abetted Tonken's breach of fiduciary duty by allowing

11  Tonken to deposit charity funds into the Ronin Law Group trust account.  On information and

12  belief, Clarke knew or should have known that his receipt of charity funds from Tonken was

13  improper.  Clarke deposited checks into the Ronin Law Group trust account that were clearly

14  marked as being designated for charity.  Clarke also made checks payable to Gershman, even

15  though Gershman had provided no services for the charity events and payments to Gershman

16  were not authorized by the Giving Back Fund or any other benefitting charity.

17          112.  As a proximate result of defendant Clarke's actions in aiding and abetting

18  and/or participating in Tonken's breach of fiduciary duty, the beneficiaries of the charity events

19  have been damaged in an amount presently unknown to plaintiff, but believed to be in excess of

20  $299,000.

21          113.  On information and belief, defendant Gershman, as an individual, aided and

22  abetted and/or participated in Tonken's breach of fiduciary duty for the purpose of advancing her

23  own interests or financial advantage.  Gershman authorized Tonken to take money out of the

24  Celebrating Diana account to pay Westside Waldorf School after Gershman reneged on the

25  pledge agreement.  Gershman allowed Tonken to pay her personal bills with charity funds.  She

26  aided Tonken in diverting money from the Gershman Foundation.  As a proximate result of

27  Gershman's actions in aiding and abetting and/or participating in Tonken's breach of fiduciary

28

<hr>

28.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   duty, the beneficiaries of Celebrating Diana, Family Celebration, and the Berle Event have been

2   damaged in an amount presently unknown to plaintiff, but believed to be in excess of $1 million.

3           114. On information and belief, defendant Freedman aided and abetted Tonken's

4   breach of fiduciary duty for the purpose of advancing Freedman's own interests or financial

5   advantage. Freedman assisted Tonken in the diversion of charity funds by taking $260,000 in

6   payments from charity accounts controlled by Tonken.

7           115. On information and belief, Freedman and Tonken entered into an agreement

8   to defraud the beneficiaries of Celebrating Diana. On information and belief, this conspiracy was

9   to be accomplished by Tonken's false representation to Pollick (who represented the

10   beneficiaries of the event) that Freedman needed to be paid $200,000 from the event account so

11   Freedman could secure the presence of Nelson Mandela at the event. On information and belief,

12   when Tonken told Pollick in Freedman's immediate presence that $200,000 needed to be

13   transferred from the event account to Freedman so that Freedman could secure the presence of

14   Nelson Mandela, Freedman heard this statement, and he knew it was untrue. Freedman had a

15   duty to disclose that this representation was not true and that he was being paid the $200,000 for

16   a prior loan to Tonken that was unrelated to the event. However, in furtherance of the conspiracy

17   to defraud, he concealed that fact from Pollick. Freedman told Pollick to wire the $200,000 to

18   Freedman's account or to the account of the RFF Family Partnership. As a proximate result of

19   defendant Freedman's actions, the beneficiaries of Celebrating Diana have been damaged in the

20   amount of $200,000.

21           116. On information and belief, Freedman and Tonken entered into an agreement

22   to defraud the beneficiaries of the Kids Campaign Event. On information and belief, this

23   conspiracy was to be accomplished by Tonken's false representation to Chris Woodrum (who

24   represented the beneficiaries of the event) that Freedman needed to be paid $60,000 from the

25   event account immediately to repay him for a loan he had made to the event. On information and

26   belief, when Tonken told Woodrum in Freedman's immediate presence that $60,000 needed to

27   be transferred from the event account to Freedman to repay him for a loan Freedman had

28

---

**29.**

1    previously made to the event, Freedman heard the statement and knew it was untrue. Freedman

2    had a duty to disclose that this representation was not true and that he was being paid the $60,000

3    for a prior loan he made to Tonken that was unrelated to the Kids Campaign Event. However, in

4    furtherance of the conspiracy to defraud, he concealed that fact from Woodrum. As a proximate

5    result of defendant Freedman's actions, the beneficiaries of the Kids Campaign Event have been

6    damaged in the amount of $60,000.

7         117. In doing the acts alleged in this cause of action, defendants and each of them

8    acted in callous disregard of the rights of the charity beneficiaries, knowing that their conduct

9    was substantially certain to injure the charities. In doing the acts alleged in this cause of action,

10    defendants and each of them engaged in fraudulent, oppressive and malicious conduct and

11    plaintiff is, therefore, entitled to an award of punitive damages in an amount to be decided at the

12    time of trial.

13    <div align="center">**FOURTH CAUSE OF ACTION**</div>

14    <div align="center">**(For Wrongful Retention of Property/Unjust Enrichment)**</div>

15    <div align="center">**(Against Defendants Freedman, the RFF Family Partnership,**</div>

16    <div align="center">**R.F.F., Inc., Clarke and Ronin Law Group)**</div>

17         118. Plaintiff hereby re-alleges and incorporates by reference each and every

18    allegation contained in paragraphs 1 through 108, above and paragraphs 136-139 and 141-163,

19    below.

20         119. The transfer of $200,000 from the Celebrating Diana account to Freedman's

21    account, or the RFF Family Partnership account, was in breach of trust and occurred as a result of

22    fraud.

23         120. On information and belief, Freedman instructed Pollick to wire the $200,000

24    to Freedman's account or to the account of the RFF Family Partnership with knowledge of

25    Tonken's breach of trust and fraud. At the time of the money transfer, Freedman had knowledge

26    of Tonken's false representation to Pollick that the money transferred to Freedman or to the RFF

27    Family Partnership was to be used to secure the presence of Nelson Mandela at Celebrating

28

<div align="center">30.</div>

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  Diana.

2       121. The transfer of $200,000 from the Celebrating Diana account to Freedman's

3  account or to the account of the RFF Family Partnership was wrongful. The retention of these

4  funds by Freedman and/or the RFF Family Partnership constitutes unjust enrichment. These

5  funds are subject to a constructive trust for the benefit of the beneficiaries of Celebrating Diana.

6  These beneficiaries have been damaged in the amount of $200,000 by Freedman's wrongful

7  retention of the funds.

8       122. The transfer of $60,000 from a Kids Campaign account to Freedman's

9  account or to the account of "FFP," aka the RFF Family Partnership, was in breach of trust and

10  occurred as a result of fraud.

11       123. On information and belief, Freedman took the $60,000 with knowledge of

12  Tonken's breach of trust and fraud. Freedman had knowledge of Tonken's false representation

13  to Chris Woodrum that the money transferred to Freedman or to the RFF Family Partnership, was

14  to repay Freedman for a prior loan of funds Freedman made to the Kids Campaign Event.

15       124. The transfer of $60,000 from a Kids Campaign account to Freedman's

16  account or to the account of the RFF Family Partnership was wrongful. The retention of the

17  funds by Freedman or by the RFF Family Partnership constitutes unjust enrichment. These funds

18  are subject to a constructive trust for the benefit of the beneficiaries of the Kids Campaign Event.

19  These beneficiaries have been damaged in the amount of $60,000 by Freedman's wrongful

20  retention of the funds.

21       125. On information and belief, on or about January 11, 2001, the Cynthia

22  Gershman Foundation made out a donation check to the David L. Singer Memorial Foundation

23  (Singer Foundation) in the amount of $26,000. Tonken took control over those funds. In so

24  doing, Tonken became a constructive trustee and had a duty to see that those funds were

25  delivered to the Singer Foundation. On information and belief, Tonken subsequently endorsed

26  the check over to defendant Freedman and/or R.F.F., Inc. without authority to do so and in breach

27  of his fiduciary duty to the beneficiaries of the Singer Foundation. On information and belief,

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   Tonken endorsed the check over to Freedman and/or R.F.F., Inc. in order to repay Freedman for

2   monies loaned by him to Tonken for purposes that were unrelated to the Singer Foundation. On

3   information and belief, Freedman and/or R.F.F., Inc. accepted the check and cashed it with

4   knowledge that Tonken had no authority to endorse the check over to him/it and with knowledge

5   that Tonken's endorsement was a breach of his fiduciary duty.

6          126. The endorsement of the donation check over to Freedman and/or R.F.F.,

7   Inc., as referenced above, was wrongful, and the retention of the funds by Freedman and/or

8   R.F.F., Inc. constitutes unjust enrichment  These funds are subject to a constructive trust for the

9   benefit of the beneficiaries of the Singer Foundation.  These beneficiaries have been damaged in

10  the amount of $26,000 by the wrongful retention of the funds.

11         127. On information and belief, the Cynthia Gershman Foundation made at least

12  two checks out to the Performing Arts Foundation for the purpose of underwriting the charity

13  event "Family Celebration." One of the checks, in the amount of $10,000, was dated February

14  27, 2002, and one check, in the amount of $15,000, was dated November 22, 2002.  Tonken

15  accepted the checks and exercised control over those funds.  In so doing, he became a

16  constructive trustee over those charitable funds and had a duty to ensure that they were used for

17  the event.  On information and belief, Tonken subsequently endorsed the $10,000 check over to

18  Freedman and/or R.F.F., Inc. without authority to do so and in breach of his fiduciary duty to the

19  beneficiaries of the event.  On information and belief, Tonken subsequently endorsed the

20  $15,000 check over to Freedman and/or "FFP" (aka the RFF Family Partnership) without

21  authority to do so and in breach of his fiduciary duty to the beneficiaries of the event. On

22  information and belief, Tonken endorsed the checks over to Freedman and/or to Freedman-

23  controlled entities in order to repay Freedman for monies loaned by him to Tonken for purposes

24  that were unrelated to the Family Celebration event.  On information and belief, Freedman

25  accepted the checks and cashed them on his own behalf or on behalf of the above-referenced

26  Freedman-controlled entities with knowledge that Tonken had no authority to endorse the checks

27  over to him and with knowledge that Tonken's endorsements were in breach of his fiduciary

28

---

32.

1    duty.

2         128.  The endorsement of the donation checks over to Freedman, as referenced

3    above, was wrongful, and the retention of the funds by Freedman and/or R.F.F., Inc., and/or the

4    RFF Family Partnership constitutes unjust enrichment.  These funds are subject to a constructive

5    trust for the benefit of the beneficiaries of the Family Celebration event.  Those beneficiaries

6    have been damaged in the amount of $25,000 by Freedman's wrongful retention of the funds.

7         129.  In breach of his fiduciary duty to the beneficiaries of Celebrating Diana and

8    in violation of his oral agreement with Marc Pollick, defendant Clarke disbursed approximately

9    $199,000 of funds from the Celebrating Diana underwriting account without the authorization of

10    Pollick.  Defendant Clarke wrongfully transferred $57,055 of those funds into his own accounts,

11    or into Ronin Law Group accounts, for his own personal benefit, knowing that such transfer was

12    wrongful.

13         130.  The transfer of $57,055 from the Celebrating Diana underwriting account to

14    Clarke's and/or Ronin Law Group accounts was in breach of trust and occurred as a result of

15    fraud.

16         131.  Clarke's transfer of $57,055 from the Celebrating Diana account to his own

17    accounts or to Ronin Law Group accounts was wrongful and Clarke's/Ronin Law Group's

18    retention of these funds constitutes unjust enrichment.  These funds are subject to a constructive

19    trust for the benefit of the beneficiaries of Celebrating Diana.  These beneficiaries have been

20    damaged in the amount of $57,055 by Clarke's or Ronin Law Group's wrongful retention of

21    those funds.

22         132.  In breach of his fiduciary duty to a donor and the beneficiaries of the Berle

23    Event, Tonken instructed Ms. Arbus to make her $100,000 donation for event underwriting to be

24    made out to a Ronin Law Group Trust Account.  On information and belief, Clarke deposited

25    that money into a Ronin Law Group Trust Account with knowledge of Tonken's breach of

26    fiduciary duty and with knowledge that the money was designated by the donor for purposes

27    related to the Berle Event.  On information and belief, defendant Clarke wrongfully failed to use

28

---

33.

1 │ those funds for purposes related to that event.

2 │        133. The transfer of $100,000 from donor Loreen Arbus' account to Clarke's

3 │ and/or Ronin Law Group's accounts was in breach of trust and occurred as a result of Tonken's

4 │ breach of fiduciary duty to the beneficiaries of the event.

5 │       134. Clarke's deposit of $100,000 of Berle Event funds into a Ronin Law Group

6 │ Trust Account and his failure to use those funds for the event was wrongful and Clarke's/Ronin

7 │ Law Group's retention of these funds constitutes unjust enrichment. These funds are subject to a

8 │ constructive trust for the benefit of the beneficiaries of the Berle Event. These beneficiaries have

9 │ been damaged in the amount of $100,000 by Clarke's/Ronin Law Group's wrongful retention of

10 │ those funds.

11 │ **FIFTH CAUSE OF ACTION**

12 │ **(For Fraud and Deceit)**

13 │ **(Against Defendants Tonken, AT Associates, Clarke**

14 │ **Ronin Law Group and Freedman)**

15 │       135. Plaintiff re-alleges and incorporates by reference herein each and every

16 │ allegation contained in paragraphs 1 through 134, above.

17 │       136. With regard to the allegations of fraud in this cause of action against

18 │ defendant AT Associates, defendant Tonken made the false representations alleged. As the

19 │ company's President and Chief Executive Officer, he was authorized to speak for the company.

20 │       137. With regard to the allegations of fraud in this cause of action against

21 │ defendant Ronin Law Group, defendant Clarke made the false representations alleged. As the

22 │ corporation's President and Chief Executive Officer, he was authorized to speak for the

23 │ corporation.

24 │       138. With regard to each false representation alleged in this cause of action, the

25 │ person to whom the representation was made and who relied upon the representation was

26 │ unaware of the falsity of the representation.

27 │       139. Defendants Tonken, AT Associates, Clarke and Ronin Law Group owed the

28 │

---

34.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1 | charities, donors and beneficiaries a duty to disclose all material facts related to the charity

2 | fundraiser events. Defendants failed to disclose and suppressed information as alleged in this

3 | cause of action with the intent to induce the charities and donors to act.

4 |      140. On information and belief, defendants Tonken and AT Associates falsely

5 | represented to donors that donations made payable to the American Spirit Foundation would be

6 | used for purposes related to Family Celebration. On further information and belief, at the time

7 | defendants made these representations they knew that they were false because they had deposited

8 | the donations into Tonken's bank account and intended to use some of the funds for purposes

9 | unrelated to Family Celebration. On information and belief, in making the false representations,

10 | defendants intended to deceive these donors and to induce the donors to make donations payable

11 | to the American Spirit Foundation. In justifiable reliance upon defendants' false representations,

12 | these donors made the donations requested by defendants and made their checks payable to the

13 | American Spirit Foundation. Had defendants not made the false representations these donors

14 | would not have made the requested donations to the American Spirit Foundation.

15 |      141. On information and belief, defendants Tonken and AT Associates falsely

16 | represented to Loreen Arbus that the $400,000 donation made by the I&L Association would be

17 | used for Celebrating Diana. On further information and belief, at the time defendants made this

18 | representation they knew it was false because defendants intended to divert, misuse and

19 | misappropriate all, or a substantial portion, of this donation to purposes unrelated to the event.

20 | On information and belief, in making this false representation, defendants intended to deceive

21 | Ms. Arbus and to induce her to facilitate a donation for Celebrating Diana. Ms. Arbus justifiably

22 | relied upon defendants' misrepresentation in facilitating this donation. Had the false

23 | representation not been made, the donation would not have been made.

24 |      142. On information and belief, defendants Clarke and Ronin Law Group falsely

25 | represented to Marc Pollick that before making any disbursements from the Celebrating Diana

26 | underwriting account, Clarke would obtain authorization in writing from Pollick. On further

27 | information and belief, when defendants Clarke and Ronin made these representations they knew

28 |

---

**35.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1 | them to be false because they intended to divert funds from the account without receiving any

2 | written authorization from Pollick. On information and belief, in making the false

3 | representations, Clarke and Ronin intended to deceive Pollick and to induce him to agree to

4 | allow Clarke to be a signatory on the account. In justifiable reliance on the false representation,

5 | Pollick agreed that Clarke could be a signatory on the account. Had defendants not made the

6 | false statement, Pollick would not have agreed to allow Clarke to be a signatory on the account

7 | and the funds in the account would not have been disbursed for purposes unrelated to Celebrating

8 | Diana.

9 |       143. On information and belief, defendants Tonken and AT Associates falsely

10 | represented to Marc Pollick that $200,000 was needed from the Celebrating Diana underwriting

11 | account to secure the presence of Nelson Mandela at Celebrating Diana. On further information

12 | and belief, at the time they made this representation they knew that it was false because they

13 | intended to divert the funds to defendant Freedman for purposes unrelated to Celebrating Diana.

14 | On information and belief, in making this false representation, defendants intended to deceive

15 | Pollick and to induce him to authorize the $200,000 payment. Pollick justifiably relied on the

16 | false representation in authorizing the disbursement of $200,000 from the Celebrating Diana

17 | underwriting account. Had the false representation not been made, Pollick would not have

18 | authorized the disbursement of $200,000 from the underwriting account.

19 |       144. On information and belief, defendants Tonken and AT Associates falsely

20 | represented to a representative of the Eichenbaum Foundation that the foundation's $75,000

21 | donation would be used for purposes related to the Kids Campaign Event. On further

22 | information and belief, at the time they made this representation they knew that it was false

23 | because they intended that all, or a substantial portion, of the donation would be used for

24 | purposes unrelated to the event. On information and belief, in making the false representation,

25 | defendants Tonken and AT Associates intended to deceive the representative of the Eichenbaum

26 | Foundation and to induce the foundation into making a donation. The Eichenbaum Foundation

27 | justifiably relied on defendants' false representation in making the donation. On information and

28 |

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   belief, had the false representation not been made, the donation solicited by defendants would not

2   have been made.

3          145.   On information and belief, defendants Tonken and AT Associates falsely

4   represented to a representative of the Children's Craniofacial Association (CCA) that the CCA's

5   $25,000 donation would be used for purposes related to the Kids Campaign Event.  On further

6   information and belief, at the time defendants made this representation they knew it was false

7   because they intended that all or a substantial portion of that donation would be used for

8   purposes unrelated to the event.  On information and belief, in making the false representation,

9   Tonken and AT Associates intended to deceive the representative of the CCA and to induce the

10  CCA to make the donation.  The CCA justifiably relied on defendants' misrepresentation in

11  making its donation.  On information and belief, had the false representation not been made, the

12  donation would not have been made.

13         146.   On information and belief, defendant Freedman heard Tonken advise Marc

14  Pollick that the purpose of the meeting in April 2001 at a branch of the City National Bank was

15  to open event bank accounts, deposit the $400,000 donation for the event from the I&L

16  Association, and immediately pay Freedman, or an entity he controlled, $200,000 from one of the

17  accounts so that Freedman could secure the presence of Nelson Mandela at the event.

18         147.   Freedman knew that the statement that he was to receive $200,000 from the

19  event account to secure the presence of Nelson Mandela was false at the time he heard it.  He

20  knew that he was to be paid funds from a Celebrating Diana event account for a prior loan he

21  made to Tonken that had nothing to do with Celebrating Diana.  He concealed that fact from

22  Pollick with the intent to defraud the beneficiaries of Celebrating Diana.

23         148.   The fact that Freedman or an entity he controlled was to receive event funds

24  for purposes that had nothing to do with Celebrating Diana would have been a material fact in

25  Pollick's decision whether to authorize the transfer of funds to Freedman.  Freedman had a duty

26  to disclose this fact to Pollick.

27         149.   Freedman knew that Pollick was unaware that the money Freedman or an

28

37.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    entity he controlled was to receive from the event account had nothing to do with securing the

2    presence of Nelson Mandela, or Celebrating Diana, and that Pollick had no reasonable means of

3    discovering this fact.

4              150. By reason of his failure to disclose material facts to Pollick, Freedman

5    intended to induce Pollick, who represented the beneficiaries of Celebrating Diana, to authorize

6    the transfer of funds to Freedman or to an entity he controlled for Freedman's own profit. Pollick

7    authorized the transfer of funds as a result of the nondisclosure which, in turn, resulted in damage

8    to the beneficiaries of the event in the amount of $200,000.

9              151. On information and belief, defendant Freedman heard Tonken advise Chris

10   Woodrum at the October 2001 meeting at a branch of the City National Bank that the purpose of

11   immediately transferring $60,000 to Freedman or to an entity he controlled was to repay

12   Freedman for a loan he had previously made to the Kids Campaign Event.

13             152. Freedman knew that the statement that he was to receive $60,000 from the

14   Kids Campaign Event account as re-payment of a loan he had previously made to the event, was

15   false at the time he heard it. He knew that he was to be paid funds from a Kids Campaign Event

16   account for a prior loan he made to Tonken that had nothing to do with the event, but he

17   concealed that fact from Woodrum with the intent to defraud the beneficiaries of the event.

18             153. The fact that Freedman or an entity he controlled was to receive event funds

19   for purposes that had nothing to do with the Kids Campaign Event would have been a material

20   fact in Woodrum's decision whether to authorize the transfer of funds to Freedman. Freedman

21   had a duty to disclose that fact to Woodrum.

22             154. Freedman knew that Woodrum was unaware that the money Freedman or an

23   entity he controlled was to receive from the event account had nothing to do with the Kids

24   Campaign Event, and that Woodrum had no reasonable means of discovering this concealed fact.

25             155. By reason of his failure to disclose material facts to Woodrum, Freedman

26   intended to induce Woodrum, who represented the beneficiaries of the Kids Campaign Event, to

27   authorize the transfer of funds to Freedman or to an entity he controlled for his own profit by

28

---

38.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   reason of the nondisclosure. Woodrum authorized the transfer of funds as a result of the

2   nondisclosure which, in turn, resulted in damage to the beneficiaries of the event in the amount

3   of $60,000.

4       156.  Under Civil Code section 2224, Tonken and AT Associates are involuntary

5   trustees of all donations they received through their fraud and deceit. They hold these donations

6   as involuntary trustees for the benefit of the charities who would otherwise have received them.

7       157.  Under Civil Code section 2224, Clarke and Ronin are involuntary trustees of

8   all funds to which they gained control through their fraud and deceit. They hold these funds as

9   involuntary trustees for the benefit of the charities who would otherwise have received them.

10      158.  Under Civil Code section 2224, Freedman is an involuntary trustee of all

11  funds to which he gained control through his fraud and deceit.

12      159.  As a proximate result of the false representations of Tonken and AT

13  Associates as alleged herein, the beneficiaries of the events mentioned in this cause of action

14  have been deprived of what is due them, in the aggregate, in an amount presently unknown to

15  plaintiff, but believed to be in excess of $500,000.

16      160.  As a proximate result of the misrepresentations of Clarke and Ronin Law

17  Group as alleged herein, the beneficiaries of Celebrating Diana have been deprived of what is

18  due them in an amount presently unknown to plaintiff, but exceeding $199,000.

19      161.  As a proximate result of Freedman's failure to disclose a material fact as

20  alleged herein, the beneficiaries of Celebrating Diana have been damaged in the amount of

21  $200,000 and the beneficiaries of the Kids Campaign Event have been damaged in the amount of

22  $60,000.

23      162.  The amount of money due to the beneficiaries of the events at issue from

24  Tonken, AT Associates, Clarke and Ronin Law Group are unknown to plaintiff and cannot be

25  ascertained without an accounting of the receipts and disbursements of the charity events

26  mentioned. The facts necessary for calculation of the receipts and disbursements of the events,

27  and thus the amounts owed by defendants, are within the special knowledge of defendants.

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

163. In doing the acts alleged in this cause of action, defendants and each of them acted in callous disregard of the rights of the charity beneficiaries, knowing that their conduct was substantially certain to injure the charities. In doing the acts alleged in this cause of action, defendants and each of them engaged in fraudulent, oppressive and malicious conduct and plaintiff is, therefore, entitled to an award of punitive damages in an amount to be decided at the time of trial.

<div align="center">

**SIXTH CAUSE OF ACTION**

**(For Conspiracy to Commit Fraud and Deceit)**

**(Against Defendant Freedman)**

</div>

164. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 71 and 136-163, above.

165. On information and belief, as alleged above, defendants Tonken and Freedman entered into an agreement to defraud the beneficiaries of Celebrating Diana of $200,000 so that Tonken could satisfy a prior debt he owed to Freedman that was unrelated to Celebrating Diana. Tonken and Freedman intended to enter into the agreement and intended to defraud the beneficiaries of Celebrating Diana. Tonken and Freedman defrauded those beneficiaries when (a) Tonken falsely represented to Marc Pollick that $200,000 needed to be immediately transferred to Freedman so Freedman could secure the presence of Nelson Mandela at the event and (b) Freedman concealed from Pollick the fact that the $200,000 to be transferred to him was for a purpose unrelated to Celebrating Diana. As a result of the conspiracy, the beneficiaries of Celebrating Diana have been damaged in the amount of $200,000.

166. On information and belief, as alleged in above, defendants Tonken and Freedman entered into an agreement to defraud the beneficiaries of the Kids Campaign Event of $60,000 in order that Tonken could satisfy a prior debt he owed to Freedman that was unrelated to the event. Tonken and Freedman intended to enter into the agreement and intended to defraud the beneficiaries of the event. Tonken and Freedman defrauded those beneficiaries when (a) Tonken falsely represented to Chris Woodrum that $60,000 needed to be immediately transferred

<div align="center">40.</div>

1   to Freedman to repay him for a loan he made to the event and (b) Freedman concealed from

2   Woodrum the fact that the $60,000 to be transferred to him was for a purpose unrelated to the

3   event. As a result of the conspiracy, the beneficiaries of the event have been damaged in the

4   amount of $60,000.

5        167. In doing the acts alleged in this cause of action, defendants and each of them

6   acted in callous disregard of the rights of the charity beneficiaries, knowing that their conduct

7   was substantially certain to injure the charities. In doing the acts alleged in this cause of action,

8   defendants and each of them engaged in fraudulent, oppressive and malicious conduct and

9   plaintiff is, therefore, entitled to an award of punitive damages in an amount to be decided at the

10   time of trial.

11   <center>**SEVENTH CAUSE OF ACTION.**</center>

12   <center>**(For Negligent Misrepresentation)**</center>

13   <center>**(Against Defendants Tonken, AT Associates, Clarke and Ronin Law Group)**</center>

14        168. Plaintiff re-alleges and incorporates by reference herein each and every

15   allegation contained in paragraphs 1 through 134, above.

16        169. With regard to the allegations of misrepresentation against defendant AT

17   Associates as alleged, Tonken made the misrepresentations alleged. As the company's President

18   and Chief Executive Officer, he was authorized to speak for the company.

19        170. With regard to the allegations of misrepresentation against defendant Ronin

20   Law Group as alleged, Clarke made the misrepresentations alleged. As the corporation's

21   President and Chief Executive Officer, he was authorized to speak for the corporation.

22        171. With regard to each representation alleged in this cause of action, the

23   representation was false and the person to whom it was made and who relied upon it was

24   unaware of the falsity of the representation.

25        172. On information and belief, defendants Tonken and AT Associates

26   negligently misrepresented to donors that donations made payable to the American Spirit

27   Foundation would be used for purposes related to Family Celebration. On further information

28

<center>41.</center>

---

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1 | and belief, at the time defendants made these misrepresentations they had no reasonable ground

2 | for believing them to be true because they intended to use some of the funds for purposes

3 | unrelated to Family Celebration. In fact, Tonken deposited some of the funds in bank accounts

4 | he controlled. On information and belief, in making the misrepresentations, defendants intended

5 | to induce the donors to make donations payable to the American Spirit Foundation. In justifiable

6 | reliance upon defendants' misrepresentations, these donors made the donations requested by

7 | defendants and made their checks payable to the American Spirit Foundation. Had defendants

8 | not made the misrepresentations these donors would not have made the requested donations to

9 | the American Spirit Foundation.

10 | 173. On information and belief, defendants Tonken and AT Associates

11 | misrepresented to Loreen Arbus that the $400,000 donation made by the I&L Association would

12 | be used for Celebrating Diana. On further information and belief, at the time defendants made

13 | this misrepresentation they had no reasonable ground for believing it to be true because

14 | defendants intended to divert, misuse and misappropriate all, or a substantial portion, of the

15 | funds donated by the I&L Association for purposes unrelated to the event. On information and

16 | belief, in making this misrepresentation, defendants intended to induce Ms. Arbus to facilitate a

17 | donation for Celebrating Diana. Ms. Arbus justifiably relied upon defendants' misrepresentation

18 | in facilitating the $400,000 donation for the event from the I&L Association. Had the

19 | misrepresentation not been made, the donation would not have been made.

20 | 174. On information and belief, defendants Clarke and Ronin Law Group

21 | negligently misrepresented to Marc Pollick that before making any disbursements from the

22 | Celebrating Diana underwriting account, Clarke would obtain authorization in writing from

23 | Pollick. On further information and belief, when defendants Clarke and Ronin made this

24 | misrepresentation they had no reasonable ground for believing it to be true because they intended

25 | to divert funds from the account without any written authorization from Pollick. On information

26 | and belief, in making the misrepresentation, Clarke and Ronin intended to induce Pollick to agree

27 | to allow Clarke to be a signatory on the account. In justifiable reliance on the misrepresentation,

28 |

---

**42.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    Pollick agreed that Clarke could be a signatory on the account. Had defendants not made the

2    misrepresentation, Pollick would not have agreed to allow Clarke to be a signatory on the

3    account and the funds within the account would not have been improperly diverted for purposes

4    unrelated to Celebrating Diana.

5          175. On information and belief, defendants Tonken and AT Associates

6    negligently misrepresented to Marc Pollick that $200,000 was needed from the Celebrating

7    Diana underwriting account to secure the presence of Nelson Mandela at Celebrating Diana. On

8    further information and belief, at the time they made this misrepresentation they had no

9    reasonable ground for believing it to be true, because they intended to direct that the same

10    $200,000 from the account be given to defendant Freedman or to a Freedman-controlled entity

11    for purposes unrelated to Celebrating Diana. On information and belief, in making this

12    misrepresentation to Pollick, defendants intended to induce Pollick to authorize the $200,000

13    payment. Pollick justifiably relied on the misrepresentation in authorizing the disbursement of

14    $200,000 from the Celebrating Diana underwriting account. Had the misrepresentation not been

15    made, Pollick would not have authorized the disbursement of $200,000 from the account.

16          176. On information and belief, defendants Tonken and AT Associates

17    negligently misrepresented to a representative of the Eichenbaum Foundation that the

18    foundation's $75,000 donation would be used for purposes related to the Kids Campaign Event.

19    On further information and belief, at the time they made this misrepresentation they had no

20    reasonable ground for believing it to be true, because they intended that all or a substantial

21    portion of the donation would be used for purposes unrelated to the event. On information and

22    belief, in making the misrepresentation, Tonken and AT Associates intended to induce the

23    foundation to make a donation. The Eichenbaum Foundation justifiably relied on defendants'

24    misrepresentation in making the donation. On information and belief, had the misrepresentation

25    not been made, the donation solicited by defendants would not have been made.

26         177. On information and belief, defendants Tonken and AT Associates

27    negligently misrepresented to a representative of the Children's Craniofacial Association (CCA)

28

43.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  that the CCA's $25,000 donation would be used for purposes related to the Kids Campaign

2  Event. On further information and belief, at the time defendants made this misrepresentation

3  they had no reasonable ground for believing it to be true, because they intended that all or a

4  substantial portion of that donation would be used for purposes unrelated to the event. On

5  information and belief, in making the misrepresentation, Tonken and AT Associates intended to

6  induce the CCA to make the donation. The CCA justifiably relied on defendants'

7  misrepresentation in making its donation. On information and belief, had the misrepresentation

8  not been made, the donation would not have been made.

9       178.  Under Civil Code section 2224, Tonken and AT Associates are involuntary

10  trustees of all donations they received through their negligent misrepresentation. They hold these

11  donations as involuntary trustees for the benefit of the charities who would otherwise have

12  received them.

13       179.  Under Civil Code section 2224, Clarke and Ronin are involuntary trustees of

14  all funds to which they gained control through their negligent misrepresentation. They hold these

15  funds as involuntary trustees for the benefit of the charities who would otherwise have received

16  them.

17       180.  As a proximate result of the misrepresentations of Tonken and AT

18  Associates as alleged herein, the beneficiaries of the events mentioned in this cause of action

19  have been deprived of what is due them, in the aggregate, in an amount presently unknown to

20  plaintiff, but believed to be in excess of $500,000.

21       181.  As a proximate result of the misrepresentations of Clarke and Ronin Law

22  Group as alleged herein, the beneficiaries of Celebrating Diana have been deprived of what is

23  due them in an amount presently unknown to plaintiff, but exceeding $199,000.

24       182.  The amount of money due to the beneficiaries of the events at issue from

25  Tonken, AT Associates, Clarke and Ronin Law Group are unknown to plaintiff and cannot be

26  ascertained without an accounting of the receipts and disbursements of the charity events

27  mentioned. The facts necessary for calculation of the receipts and disbursements of the events,

28

44.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  and thus the amounts owed by defendants, are within the special knowledge of defendants.

2          183.  In doing the acts alleged in this cause of action, defendants and each of them

3  engaged in negligent conduct and plaintiff is therefore entitled to an award of general and special

4  damages in an amount to be decided at the time of trial.

5                          **EIGHTH CAUSE OF ACTION**

6                          **(For Constructive Fraud)**

7              **(Against Defendants Tonken, AT Associates, Clarke,**

8                      **Ronin Law Group and Does 1-100)**

9          184.  Plaintiff re-alleges and incorporates by reference herein each and every

10  allegation contained in paragraphs 1 through 134, above.

11          185.  Defendants owed a fiduciary duty to the donors from whom they solicited

12  and received donations to disclose all material facts relative to the donation.  Defendants also

13  owed a fiduciary duty to the beneficiaries of the events to disclose all material facts relative to the

14  charity fundraising events including material facts, including the safekeeping and preservation of

15  the charitable contributions donated for such events.  Defendants failed to disclose and

16  suppressed information as alleged in this cause of action with the intent to induce the charities

17  and donors to act.

18          186.  On information and belief, with regard to Family Celebration, Tonken and

19  AT Associates failed to disclose the following material facts to the donors:  that the corporate

20  status of the American Spirit Foundation was suspended; that the donations which they advised

21  to be made payable to the American Spirit Foundation were going to be deposited into Tonken-

22  controlled accounts; that such funds would be commingled with funds unrelated to Family

23  Celebration; and that all or a portion of these donations would be improperly diverted by

24  defendants for purposes unrelated to Family Celebration.  On information and belief, the donors

25  were unaware of these facts.  The donors justifiably relied upon defendants in making their

26  donations.  These donors would not have made their donations payable to the American Spirit

27  Foundation had defendants disclosed the aforementioned material facts.

28

---

45.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

187. When defendants Tonken and AT Associates solicited donations for Celebrating Diana from the I&L Association, the Lorsch Foundation, and the English Fund defendants failed to disclose the material fact that most of the funds solicited would be improperly diverted for purposes unrelated to the event. On information and belief, the donors were unaware of this fact. The donors justifiably relied upon defendants in making their donations. On information and belief, none of the aforementioned donors would have donated monies for the event had they been informed by defendants that most of the money would be diverted for purposes unrelated to the event.

188. At the time Pollick agreed that Clarke could be a co-signer on the Celebrating Diana bank accounts, Tonken, AT Associates and Clarke had a fiduciary duty to disclose to Pollick the material fact that Tonken and AT Associates intended to authorize disbursement of nearly all of the funds in the accounts within a very short time period, including for purposes unrelated to the event. On information and belief, Pollick was unaware of this fact. Pollick justifiably relied upon defendants in allowing Clarke to be a co-signer on the account. Had defendants disclosed this material fact, Pollick would not have agreed that defendant Clarke could be a co-signer on the Celebrating Diana accounts.

189. Defendants Clarke and Ronin Law Group entered into a fiduciary relationship both with Loreen Arbus of the I&L Association, a donor of Celebrating Diana, and with the GBF, the fiscal agent of Celebrating Diana, when defendant Clarke agreed to be a signatory on the Celebrating Diana bank accounts. Clarke and Ronin Law Group owed a fiduciary duty to the donors and beneficiaries to ensure that the funds were used for purposes solely related to the event. These defendants had a fiduciary duty to make withdrawals only with the consent and approval of Pollick. When Pollick agreed to allow Clarke to be a signatory on the Celebrating Diana bank accounts, Clarke and Ronin failed to disclose the material facts that they intended to authorize a disbursement of approximately $50,000 from the Celebrating Diana underwriting account to Ronin without the authorization of Pollick and the disbursement of approximately $150,000 of additional funds from that account without the authorization of

46.

1  Pollick. On information and belief, neither the donors nor the beneficiaries of the event, nor

2  Pollick, were aware of these facts. Pollick justifiably relied upon defendants in allowing Clarke

3  to be a signatory on the accounts. Pollick would not have allowed Clarke to be a signatory on the

4  Celebrating Diana accounts if Clarke and Ronin had disclosed these material facts to him.

5       190.  In soliciting and accepting a $75,000 donation from the Eichenbaum

6  Foundation and a $25,000 donation from the Children's Craniofacial Association (CCA) to

7  underwrite the Kids Campaign Event, Tonken and AT Associates entered into a fiduciary

8  relationship with these donors. Notwithstanding this fiduciary relationship, on information and

9  belief, Tonken and AT Associates failed to disclose the material fact that most of the funds

10  solicited would be improperly diverted for purposes unrelated to the Kids Campaign Event. On

11  further information and belief, the donors were unaware of this fact. The donors justifiably relied

12  on defendants in making their donations. On information and belief, the donors would not have

13  donated monies had they been informed by Tonken that most of their donations would be

14  diverted for purposes unrelated to the event.

15       191.  Tonken and AT Associates also had a fiduciary duty to the beneficiaries of

16  the Kids Campaign Event. Tonken failed to disclose to the Kids Campaign the material fact that

17  he was going to divert most of the funds solicited for purposes unrelated to the event. The Kids

18  Campaign was unaware of this fact. Woodrum, on behalf of Kids Campaign, justifiably relied on

19  defendants in authorizing a disbursement of $60,000 of event funds. Woodrum would not have

20  authorized this disbursement if he had been informed that the funds would be used for purposes

21  unrelated to the event.

22       192.  In soliciting donations for the Berle Event and the Great Cause Event,

23  Tonken, AT Associates and Does 1-100 failed to disclose to the donors the material facts that

24  they intended to deposit event funds into Tonken-controlled private accounts and to divert such

25  funds for purposes unrelated to the event. On information and belief, the donors did not know

26  these facts. The donors justifiably relied on defendants in making their donations. On

27  information and belief, had defendants disclosed these facts, the donors would not have donated

28

**47.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1 | to the event.

2 |       193. Under Civil Code section 2224, Tonken and AT Associates are involuntary

3 | trustees of all donations they received through their constructive fraud. They hold these

4 | donations as involuntary trustees for the benefit of the charities who would otherwise have

5 | received them.

6 |       194. Under Civil Code section 2224, Clarke and Ronin are involuntary trustees of

7 | all funds to which they gained control through their constructive fraud. They hold these funds as

8 | involuntary trustees for the benefit of the charities who would otherwise have received them.

9 |       195. As a proximate result of the failure of Tonken, AT Associates, Clarke,

10 | Ronin and Does 1-100, to disclose the material facts as alleged herein, the beneficiaries of

11 | Family Celebration, Celebrating Diana, the Berle Event, the Kids Campaign Event, and the Great

12 | Cause Event have been deprived of what is due them, in the aggregate, in an amount presently

13 | unknown to plaintiff, but believed to be in excess of $500,000.

14 |       196. The amount of monies due from Tonken, AT Associates, Clarke, Ronin and

15 | Does 1-100 to the beneficiaries of the fundraising events at issue in this cause of action are

16 | unknown to plaintiff and cannot be ascertained without an accounting of the receipts and

17 | disbursements of those events. The facts necessary for calculation of the receipts and

18 | disbursements, and thus the amount owed to the beneficiaries of the events, are within the special

19 | knowledge of defendants.

20 |       197. In doing the acts alleged in this cause of action, defendants and each of them

21 | acted in callous disregard of the rights of the charity beneficiaries, knowing that their conduct

22 | was substantially certain to injure the charities. In doing the acts alleged in this cause of action,

23 | defendants and each of them engaged in fraudulent, oppressive and malicious conduct and

24 | plaintiff is therefore entitled to an award of punitive damages in an amount to be decided at the

25 | time of trial.

26 | ///

27 | ///

28 |

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

# NINTH CAUSE OF ACTION

## (For Conversion)

## (Against Defendants Tonken, AT Associates, Clarke,

## Ronin Law Group and Does 1-100)

198. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 134, above.

199. Defendants Tonken, AT Associates and Does 1-100 solicited donations for Family Celebration, Celebrating Diana, the Kids Campaign Event, the Berle Event, the Great Cause Event, the Fox Foundation Event, as well as other events presently unknown to plaintiff. The monies solicited and donated for these events belonged to, and should have benefitted, the beneficiaries of that event. Defendants interfered with the beneficiaries' right of possession of the donations by diverting all or a portion of the funds for purposes unrelated to the aforementioned events. On information and belief, defendants' interference was knowing or intentional. The Attorney General has demanded an accounting, and the beneficiaries and donors of the events have demanded the return of the diverted donations. The interference and diversion of donations has caused harm to the charitable beneficiaries.

200. The charitable beneficiaries of Celebrating Diana and the Berle Event were entitled to and had the right of possession to all donations including underwriting funds. On information and belief, defendants Clarke, the Ronin Law Group and Does 1-100, intentionally or knowingly interfered with the beneficiaries' right of possession of the donations by diverting all or a portion of the funds for purposes unrelated to the aforementioned events. The Attorney General has demanded an accounting and the GBF and WWS have demanded the return of the diverted funds. The interference and diversion of donations including underwriting has caused harm to the charitable beneficiaries.

201. As a proximate result of the diversion of funds by Tonken, AT Associates, and Does 1-100, the beneficiaries of Family Celebration, Celebrating Diana, the Berle Event, Great Cause Event, the Kids Campaign Event and the Fox Foundation Event, have been

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  damaged, in the aggregate, in an amount presently unknown to plaintiff, but believed to be in

2  excess of $1 million.

3  202.  As a proximate result of the diversion of funds by Clarke, the Ronin Law

4  Group and Does 1-100, the beneficiaries of Celebrating Diana and Berle Event have been

5  damaged in an amount presently unknown to plaintiff, but believed to be in excess of $299,000.

6  203.  The total amount of money diverted by Tonken, AT Associates, Clarke, the

7  Ronin Law Group, and Does 1-100 is unknown to plaintiff and cannot be ascertained without an

8  accounting of the receipts and disbursements of those events.

9  204.  In doing the acts alleged in this cause of action, defendants and each of them

10  acted in callous disregard of the rights of the charity beneficiaries, knowing that their conduct

11  was substantially certain to injure the charities.  In doing the acts alleged in this cause of action,

12  defendants and each of them engaged in fraudulent, oppressive and malicious conduct, and

13  plaintiff is therefore entitled to an award of punitive damages in an amount to be decided at the

14  time of trial.

15  ### TENTH CAUSE OF ACTION

16  ### (For Unfair Competition [Bus. & Prof. Code § 17200])

17  ### (Against Defendants Tonken, AT Associates, Gershman

18  ### (as an Individual and as Trustee of the Gershman Foundation),

19  ### Clarke, Ronin Law Group, Freedman and Does 1-100 )

20  205.  Plaintiff re-alleges and incorporates by reference each and every allegation

21  contained in paragraphs 1 through 204, above.

22  206.  Commencing in 2000 and continuing to the present time, Tonken, AT

23  Associates and Does 1-100 solicited and obtained donations and payments from the public,

24  including California residents, in an amount in excess of $500,000.  In soliciting and obtaining

25  those donations and payments, defendants engaged in acts of unfair competition as defined by

26  Business and Professions Code section 17200 by using means that were unlawful, deceptive or

27  unfair for the purpose of obtaining funds that they could then improperly divert, misuse and

28

50.

1  misappropriate for their own personal, private financial benefit and for other purposes unrelated

2  to the purposes for which said defendants obtained the donations and payments.

3         207. Defendants Tonken, AT Associates and Does 1-100 violated Business and

4  Professions Code section 17200 and continue to commit unfair competition by engaging in acts

5  or practices that include, but are not necessarily limited to, the following:

6       (a)     Prior to soliciting funds for charitable purposes and prior to receiving and

7       controlling those funds, Tonken, AT Associates and Does 1-100 failed to register as

8       commercial fundraisers with the Attorney General in violation of Government Code

9       section 12599, subdivision (b);

10       (b)     Tonken, AT Associates and Does 1-100 failed to provide an accounting and failed

11       to file the required financial reports with the Registry of Charitable Trusts in violation of

12       Government Code section 12599, subdivisions (c) and (f);

13       (c)     In violation of Business and Professions Code section 17510.8 and in breach of

14       their fiduciary duty under common law, Tonken, AT Associates and Does 1-100 solicited

15       and accepted donations for Family Celebration, Celebrating Diana, the Berle Event, the

16       Kids Campaign Event, the Fox Foundation Event and the Great Cause Event and failed to

17       ensure that each of these donations were used solely for the purpose for which each such

18       donation was made;

19       (d)     In breach of their fiduciary duty to the donors and beneficiaries of Celebrating

20       Diana, Tonken, AT Associates and Does 1-100 caused funds deposited into the

21       Celebrating Diana underwriting account to be diverted for defendants' own purposes and

22       for other purposes unrelated to the event and then refused to provide a complete

23       accounting of the funds after they received demands for such accounting;

24       (e)     In breach of their fiduciary duty to the donors and beneficiaries of Family

25       Celebration, Tonken, AT Associates and Does 1-100 caused funds solicited for Family

26       Celebration to be deposited into Tonken-controlled bank accounts rather than the

27       accounts monitored by Tanner Mainstain and the GBF and then refused to provide a

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   complete accounting for those funds after they received demands for such accounting and

2   failed to transfer all such funds to the GBF;

3   (f)    In breach of their fiduciary duty to the donors and beneficiaries of the Berle Event,

4   Tonken, AT Associates and Does 1-100 deposited funds solicited for the event into

5   Tonken-controlled bank accounts rather than into the accounts monitored by WWS and

6   then refused to provide a complete accounting for those funds after they received

7   demands for such accounting and failed to return funds belonging to the event's

8   charitable beneficiaries;

9   (g)    In breach of their fiduciary duty to the Gershman Foundation, Tonken, AT

10   Associates, and Does 1-100 solicited funds from the Gershman Foundation and then

11   diverted, misused and misappropriated those funds specifically earmarked for charitable

12   purposes into Tonken-controlled bank accounts, and used all or a portion of those funds

13   for non-charitable purposes;

14   (h)    Defendants Tonken and AT Associates authorized their agent to advise

15   representatives/agents of *Nsync that in exchange for *Nsync's performance at Family

16   Celebration, 50 percent of the net proceeds from the event would be distributed to the

17   charity of *Nsync's choice, even though these defendants had already entered into an

18   agreement with the Ally McBeal cast members that 100 percent of the net revenues would

19   be distributed to the McBeal charities;

20   (i)    Defendants Tonken, AT Associates and Does 1-100 falsely represented to the Ally

21   McBeal representative/agent that Family Celebration would be fully underwritten by the

22   Gershman Foundation. This representation was made to induce the cast members'

23   participation in the event. The cast members agreed to, and did, participate in the event

24   on behalf of their charities. Because the event was not fully underwritten (contrary to the

25   false representation of Tonken), the charitable beneficiaries did not receive the substantial

26   donations that Tonken had promised and represented to the representative/agent of the

27   cast of Ally McBeal;

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    (j)    Defendants Tonken, AT Associates and Does 1-100 falsely represented to

2    members of the public that all costs in excess of $55,000 for Family Celebration would be

3    paid for and underwritten by the Gershman Foundation.  On information and belief,

4    defendants falsely stated that the event was fully underwritten to mislead members of the

5    public into purchasing tickets, auction items and advertisement.  Because the event was

6    not fully underwritten (contrary to the false representation of defendants), the charitable

7    beneficiaries did not receive the substantial donations that the donors who purchased the

8    tickets, auction items, and advertising were led to believe they would;

9    (k)    In violation of Business and Professions Code section 17510.8, and in breach of

10    their fiduciary duty under common law, Tonken and AT Associates solicited donations

11    from Loreen Arbus and the I&L Association for Celebrating Diana, advising Ms. Arbus

12    that, in exchange for the donations, a substantial portion of the net proceeds from the

13    event would be distributed to charities Arbus designated, even though defendants had

14    already entered into an agreement with the English Fund that 100 percent of the net

15    proceeds from that event would be distributed to the English Fund;

16    (l)    In violation of Business and Professions Code section 17510.8, and in breach of

17    their fiduciary duty under common law, Tonken and AT Associates solicited a donation

18    from the Lorsch Foundation for Celebrating Diana, advising the trustee that, in exchange

19    for the donations, the Lorsch Foundation would receive 50 percent of the net proceeds

20    from the event, even though defendants had already entered into an agreement with the

21    English Fund that 100 percent of the net proceeds from the event would be distributed to

22    the English Fund;

23    (m)    In violation of Business and Professions Code section 17510.8, and in breach of

24    their fiduciary duty under common law, Tonken and AT Associates entered into an

25    agreement with the Giving Back Fund that provided that, if the GBF acted as fiscal agent

26    for Celebrating Diana, it would receive a portion of the net proceeds from Celebrating

27    Diana, even though defendants had already entered into an agreement that provided that

28

---

53.

**SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF**

1    100 percent of the net proceeds would be distributed to the English Fund;

2    (n)    In violation of Business and Professions Code section 17510.8, Tonken and AT

3    Associates engaged in fraudulent and deceitful conduct by misrepresenting to the

4    charitable beneficiaries and donors the estimated costs and net proceeds of Family

5    Celebration and the Berle Event;

6    (o)    Defendants Tonken, AT Associates and Does 1-100 falsely represented to WWS

7    that the Berle Event would be fully or substantially underwritten. On information and

8    belief, these representations were made to induce WWS to participate as a fiscal agent

9    and as a beneficiary. Because said defendants knew or should have known at the time of

10    the representations that the event would not be fully or substantially underwritten and the

11    event was not fully or substantially underwritten, WWS as well as the other charitable

12    beneficiaries did not receive the substantial donations that Tonken had promised and

13    represented they would;

14    (p)    In violation of Business and Professions Code sections 17510.8, and in breach of

15    their fiduciary duty under common law, Tonken and AT Associates engaged in fraudulent

16    and deceitful conduct by misrepresenting to Gubb that his payments of funds for the Fox

17    Foundation Event would be given to the Betty Ford Clinic and the Michael J. Fox

18    Foundation. Instead, Tonken diverted the funds for purposes unrelated to the event; and

19    (q)    On information and belief, defendants Tonken and AT Associates established or

20    caused to be established private bank accounts using the names of existing nonprofit

21    organizations as dba's on the accounts without the authorization of those nonprofit

22    organizations. In doing so, Tonken misrepresented to the public at large that he was

23    doing business as a nonprofit organization when he was not.

24        208. Defendants Clarke and Ronin Law Group engaged in and participated in acts

25    of unfair competition as defined by Business and Professions Code section 17200 in obtaining

26    control over and diverting charitable funds in an amount over $299,000 by means that were

27    unlawful, deceptive, or unfair for the purpose of misusing and misappropriating charitable funds

28

---

**54.**

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    for their own personal, private financial benefit and for other purposes unrelated to the purposes

2    for which such funds were donated.

3           209. On information and belief, the actions of Clarke and Ronin Law Group, in

4    violation of Business and Professions Code section 17200 as alleged in this Second Amended

5    Complaint, were done for the purpose of inducing Pollick and the Giving Back Fund to allow

6    defendant Clarke to be a signatory on the Celebrating Diana underwriting account for the purpose

7    of diverting monies in that account for the private gain of defendants Clarke and Ronin.

8    Defendants Clarke and Ronin have committed and continue to commit unfair competition as

9    defined in Business and Professions Code section 17200 by engaging in acts or practices that

10    include, but are not necessarily limited to, the following :

11        (a)    Clarke misrepresented to Pollick that no funds in the Celebrating Diana account

12        would be disbursed before a written agreement was signed;

13        (b)    Clarke misrepresented to Pollick that no funds would be disbursed without first

14        receiving a written authorization for disbursement of those funds from Pollick;

15        (c)    Clarke breached his fiduciary duty to the donors and beneficiaries of Celebrating

16        Diana by improperly diverting monies from the Celebrating Diana underwriting account

17        for his own private financial gain and for purposes unrelated to the charity event; and

18        (d)    Clarke also assisted Tonken in diverting funds from the Berle Event.

19           210. On information and belief, defendant Gershman, in her individual capacity

20    and as trustee of the Gershman Foundation, engaged in and participated in acts of unfair

21    competition as defined by Business and Professions Code section 17200 in obtaining control

22    over and diverting charitable funds from the Gershman Foundation in an amount over $299,000

23    by means that were unlawful, deceptive, or unfair for the purpose of misusing and

24    misappropriating charitable funds for Gershman's and Tonken's own personal, private financial

25    benefit. Defendant Gershman has committed and continues to commit unfair competition as

26    defined in Business and Professions Code section 17200 by engaging in acts or practices that

27    include, but are not necessarily limited to, the following:

28

<center>55.</center>

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    (a)    On information and belief, Gershman authorized Tonken to take money out of the

2    Celebrating Diana account to pay Westside Waldorf School after Gershman reneged on

3    her pledge agreement;

4    (b)    On information and belief, Gershman engaged in acts of self-dealing in violation

5    of Probate Code section 16004 et seq. by allowing Tonken to pay her personal bills from

6    charity accounts;

7    (c)    On information and belief, Gershman allowed Tonken to use her name and the

8    name of Gershman Foundation to entice the participants of Family Celebration and Berle

9    Event to hire Tonken to produce the events on the false promise that the Gershman

10    Foundation would underwrite the events;

11    (d)    Gershman aided and abetted Tonken in misrepresenting to the public that the

12    Gershman Foundation was going to underwrite the entire Family Celebration event when,

13    on information and belief, the Gershman Foundation provided no underwriting for the

14    event;

15    (e)    Gershman breached her fiduciary duty to the Gershman Foundation by making

16    donations to defunct charities or sham charities, which were diverted to Tonken-

17    controlled bank accounts;

18    (f)    Gershman breached her fiduciary duty to the Gershman Foundation by wrongfully

19    diverting funds from the Gershman Foundation to Tonken, AT Associates and Does 1-

20    100;

21    (g)    Gershman breached her fiduciary duty as a trustee of the Gershman Foundation

22    and violated Probate Code sections 16000, 16004, 16006, 16040, 16102 as well as

23    Internal Revenue Code section 4945 by failing to exercise due care in protecting and

24    preserving the Gershman Foundation's trust property, as a result of which the Gershman

25    Foundation's grants were diverted by Tonken, AT Associates and Does 1-100;

26    (h)    Gershman engaged in acts of self-dealing in violation of Probate Code sections

27    16004 and 16102, and in violation of Internal Revenue Code section 4941 by improperly

28

---

56.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    advancing her personal social interests at the expense of the foundation; and

2    (i)    Gershman had a duty to file with the California Attorney General annual financial

3    reports, signed under penalty of perjury, accounting for all of the Gershman Foundation's

4    assets. (Gov. Code, § 12586.)  Gershman failed to timely comply with these

5    requirements and is subject to civil penalties under Government Code section 12591.1

6    and Business and Professions Code 17200.

7        211.  Defendant Freedman engaged in and participated in acts of unfair

8    competition as defined by Business and Professions Code section 17200 by (a) participating in

9    Tonken's misrepresentation to Pollick that $200,000 of event funds must be immediately

10    transferred to Freedman or to a Freedman-controlled entity so that he could secure the presence

11    of Nelson Mandela at the event; (b) withholding material facts from Pollick; (c) participating in

12    Tonken's misrepresentation to Woodrum that $60,000 of event funds must be immediately

13    transferred to Freedman or to a Freedman-controlled entity in repayment of a loan that Freedman

14    made to the event; and (d) withholding material facts from Woodrum.  Freedman also engaged in

15    unfair competition by accepting checks made payable to charities.

16        212.  As a result of the aforementioned acts of unfair competition committed by

17    Tonken, AT Associates, Clarke, Ronin Law Group, Gershman, and Freedman, plaintiff is entitled

18    to civil penalties in an amount which is presently unknown, but believed to be in excess of

19    $350,000.

20        **ELEVENTH CAUSE OF ACTION**

21        **(For Negligence)**

22        **(Against Defendants Tonken, AT Associates, Clarke, Gershman**

23        **(as Trustee of the Gershman Foundation) and Does 1-100)**

24        213.  Plaintiff re-alleges and incorporates by reference each and every allegation

25    contained in paragraphs 1 through 134, above.

26        214.  When defendants Tonken, AT Associates and Does 1-100 solicited and

27    accepted donations for Family Celebration, Celebrating Diana, the Kids Campaign Event, the

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  Berle Event, the Great Cause Event, and funds for the Fox Foundation Event, they owed a duty

2  of care to the donors and beneficiaries of the events to ensure that the donations and funds were

3  used for the events. Defendants breached that duty of care by commingling these donations and

4  funds with other monies and by diverting, misappropriating, and misusing these charitable funds

5  for purposes unrelated to the events. As a result of that breach of duty the beneficiaries of the

6  events have been injured, in the aggregate, in an amount presently unknown to plaintiff, but

7  exceeding $500,000.

8          215.  When defendants Tonken, AT Associates and Does 1-100 solicited

9  donations from the Gershman Foundation, they owed a duty of care to the Foundation to ensure

10 that the donations were used for charitable purposes. Defendants breached that duty of care by

11 commingling these donations with other funds and by diverting, misappropriating, and misusing

12 these charitable funds for non-charitable purposes. As a result of that breach of duty, the

13 beneficiaries of the Gershman Foundation have been injured in an amount presently unknown to

14 plaintiff, but exceeding $350,000.

15         216.  Defendants Tonken, AT Associates, Gershman (as trustee of the Gershman

16 Foundation) and Does 1-100 owed a duty of care to the donors and beneficiaries of Family

17 Celebration and the Berle Event to ensure that the events raised a reasonable amount of net

18 proceeds for the beneficiaries. Defendants breached that duty of care by exceeding the proposed

19 budgets, incurring unreasonable expenditures, and unreasonably giving away too many

20 complimentary tickets. Defendant Gershman aided and abetted defendants' breach of duty by

21 causing Family Celebration to incur unreasonable expenses. As a result of these breaches of

22 duty, the Berle event gave almost no funds to the charitable beneficiaries and the Family

23 Celebration beneficiaries received far less than they should have received. The beneficiaries of

24 Family Celebration and the Berle Event have been damaged in an amount presently unknown to

25 plaintiff, but believed to exceed $500,000.

26         217.  When defendant Clarke agreed to be a signatory on the Celebrating Diana

27 underwriting account, he owed a duty of care to the donors and beneficiaries of Celebrating

28

                                                      58.

1  Diana to ensure that the funds deposited in that account were used solely for purposes related to

2  the event.  Clarke breached his duty of care by diverting, misusing, and misappropriating these

3  charitable funds for purposes unrelated to the event.  As a result of that breach of duty, the

4  beneficiaries of Celebrating Diana have been injured in an amount presently unknown to

5  plaintiff, but exceeding $199,000.

6       218.  Defendant Gershman, as trustee, owed a duty of care to the Gershman

7  Foundation to ensure that the donations from this charitable trust were used exclusively for

8  charitable purposes and to ensure that the donations/grants from the Gershman Foundation were

9  not diverted to private benefit.  On information and belief, Gershman breached her duty of care

10  by engaging in acts of self-dealing by authorizing Tonken to pay her personal bills and debts out ·

11  of charity funds, and by failing to ensure that the Gershman Foundation's donations were

12  properly directed to charity instead of to Tonken-controlled bank accounts.  On information and

13  belief, Gershman engaged in acts of self-dealing in violation of Probate Code section 16004 et

14  seq. by using Gershman Foundation funds to improperly benefit herself at the expense of the

15  Foundation.  Between 1997 and 2003, Gershman failed to comply with federal tax laws and

16  failed to exercise due care and expenditure responsibility.  Gershman failed to obtain grant

17  agreements, annual reports, financial statements, accounting reports or other documentation from

18  any of the grantee organizations on how the Gershman Foundation's funds were actually spent.

19  Instead, on information and belief, between 1997 to 2003, Gershman entrusted donations to

20  Tonken, AT Associates, and Does 1-100.  Tonken, AT Associates and Does 1-100, in turn,

21  diverted the donations Gershman entrusted to them.  As a result of these breaches of duty, the

22  beneficiaries of the Gershman Foundation have been injured in an amount presently unknown to

23  plaintiff, but exceeding $4 million.

24      219.  The total damages caused by defendants Tonken, AT Associates and Does

25  1-100 to the charitable beneficiaries of the Family Celebration, Celebrating Diana, the Kids

26  Campaign Event, the Berle Event, the Great Cause Event, and the Fox Foundation Event are

27  unknown to plaintiff and cannot be ascertained without an accounting of the receipts and

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   disbursements of those events. The facts necessary for calculation of the receipts and

2   disbursements, and thus the amount owed to the beneficiaries, are within the special knowledge

3   of defendants.

### TWELFTH CAUSE OF ACTION

### (Negligence Per Se )

### (Against Defendants Gershman (as Trustee of the

### Gershman Foundation) and Does 1-100)

8   220. Plaintiff re-alleges and incorporates by reference each and every allegation

9   contained in paragraphs 1 through 134 and 214-219, above.

10   221. Under Probate Code section 16000, Gershman had a duty to administer the

11   trust (the Gershman Foundation) according to the trust instrument. Under Probate Code section

12   16004, Gershman had a duty to abstain from using or dealing with the trust property for her own

13   profit or for any other purpose unconnected with the trust. Under Probate Code section 16006,

14   Gershman had a duty to preserve the trust property. Under section 16040 Gershman had a duty

15   to administer the trust with reasonable care, skill, and caution as a prudent person would use

16   under similar circumstances. Under Probate Code section 16102, Gershman had a duty to

17   abstain from engaging in acts of self-dealing or from making any taxable expenditures as defined

18   by Internal Revenue Code section 4945(d). As trustee of a private foundation, Gershman also

19   had a duty to comply with the Internal Revenue Code and federal tax regulations, which required

20   Gershman to use all reasonable efforts to verify that donations from the Gershman Foundation

21   were spent solely for the charitable purpose for which they were made. (26 U.S.C.A. § 4945 (h);

22   26 C.F.R § 53.4945-5. )

23   222. The People are the intended beneficiary of the protection afforded by the

24   above-mentioned provisions of the Probate Code, federal tax statutes and regulations. The

25   Attorney General represents the interests of the People. The above-mentioned statutes were

26   designed to prevent the diversion of charitable assets and to preserve the trust property dedicated

27   to charity. The above-mentioned statutes were also designed to ensure that donations made from

28

60.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1  the Gershman Foundation benefitted charity.

2  　　　223. Between 1997 to 2003, Gershman violated all of the above-mentioned

3  provision of the Probate Code and related Internal Revenue Code sections and regulations. The

4  Attorney General first learned of the aforementioned statutory violations in May of 2003.

5  Gershman engaged in acts of self-dealing by improperly using the Gershman Foundation to

6  advance her personal social interests instead making donations consistent with the trust

7  instrument. Gershman failed to administer the trust in accordance with the trust instrument,

8  failed to administer the trust with due care, and failed to exercise expenditure responsibility, as

9  required under the Probate Code and the Internal Revenue Code.   As a proximate cause of

10  Gershman's breach of statutory duty, Tonken, AT Associates, and Does 1-100 were able to divert

11  charitable donations intended and dedicated for charity. The Gershman Foundation and its

12  charity beneficiaries have been damaged in excess of $4 million.

13  　　　　　**THIRTEENTH CAUSE OF ACTION**

14  　　　　　**(For Breach of Pledge Agreement)**

15  　　　**(Against Defendants Gershman (as Trustee of**

16  　　　　　**the Gershman Foundation), and Does 1-100)**

17  　　　224. Plaintiff hereby re-alleges and incorporates by reference each and every

18  allegation contained in paragraphs 1 through 44, above.

19  　　　225. Gershman, as trustee to the Gershman Foundation, irrevocably pledged to

20  donate $650,000 to WWS. As trustee, Gershman had the ability to, and did, bind the Gershman

21  Foundation in the pledge. As trustee, Gershman has failed and refused to honor the Gershman

22  Foundation's pledge agreement. WWS accepted the pledge agreement and in reliance thereon

23  WWS honored Gershman publicly at a luncheon that took place in the Summer of 2000, WWS

24  made public announcements in 2001 concerning Gershman's generosity, and WWS staff and

25  board members spent hundreds of hours negotiating the purchase of a new building and entered

26  into a letter agreement for the purchase of the building. WWS is unable to purchase the building

27  because of Gershman's refusal to honor the pledge agreement.

28

　　　　　　　　　　　61.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    226. Gershman, as trustee, also made a pledge agreement with WWS to

2    underwrite four charitable fundraising events for the benefit of WWS. As trustee, Gershman had

3    the ability to, and did, bind the Gershman Foundation in that pledge. Gershman has failed and

4    refused to honor that pledge and has refused to donate the promised underwriting.

5    227. On or about March 6, 2003, WWS assigned in writing to plaintiff the right

6    under the pledge agreement to sue on its behalf for breach of the pledge agreement.

7    228. The public as beneficiary of the charitable purposes of WWS has been

8    injured as a result of Gershman's breach of pledge agreement in an amount unknown to plaintiff,

9    but believed to be in excess of $1 million.

10   ### FOURTEENTH CAUSE OF ACTION

11   ### (For Breach of Contract)

12   ### (Against Defendants Tonken and AT Associates)

13   229. Plaintiff re-alleges and incorporates by reference each and every allegation

14   contained in paragraphs 1 through 13 and 72-76, above.

15   230. In September 2002, defendants Tonken and AT Associates entered into a

16   written contract with the AWF, through Sonia Nassery Cole, whereby Tonken agreed to provide

17   "special event services" in connection with a charity fundraiser to be called "A Time to Give,"

18   which was to be held on February 7, 2003. A true and correct copy of the contract is attached

19   hereto as Exhibit A and is incorporated by reference as if fully set forth herein.

20   231. For Tonken's agreed-upon services under the contract, the AWF paid

21   Tonken and AT Associates $25,000.

22   232. In October 2002, Tonken and AT Associates breached the contract with the

23   AWF by refusing to perform under the contract. On information and belief, the failure of

24   performance of Tonken and AT Associates was neither justified nor excused.

25   233. As a result of the breach of contract of Tonken and AT Associates, the

26   AWF has been damaged in the amount of $25,000.

27   234. On July 22, 2003, the AWF assigned in writing to plaintiff the right under

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1    the contract to sue on its behalf for breach of the contract.

2    ## FIFTEENTH CAUSE OF ACTION

3    ### (Promissory Estoppel)

4    ### (Against Defendant Tonken)

5    235. Plaintiff re-alleges and incorporates by reference each and every allegation

6    contained in paragraphs 1 through 13, and 77-78, above.

7    236. In 2001, defendant Tonken promised representatives from Project Inform

8    that he would support the 2001 Evening of Hope fundraising dinner by obtaining a $10,000

9    donation from Cynthia Gershman or the Gershman Foundation for that event. In return for a

10   donation for the event in the amount of $10,000, the donor would be entitled to 10 tickets to the

11   event. Tonken requested a representative of Project Inform to hold 9 of the 10 tickets to be

12   received for the above-mentioned donation in the name of Cynthia Gershman and 1 ticket in the

13   name of Aaron Tonken.

14   237. In reasonable and foreseeable reliance upon Tonken's promise to obtain the

15   above-mentioned $10,000, Project Inform set aside and held 10 tickets for the events as

16   requested by Tonken. On information and belief, the 10 tickets were claimed by Tonken and/or

17   Gershman on the evening of the event, but neither Tonken nor Gershman nor the Gershman

18   Foundation made a donation to the event.

19   238. Defendant Tonken is estopped from denying the debt as a result of Project

20   Inform's reasonable reliance on his promise.

21   239. As a result of the actions of Tonken as alleged in this cause of action,

22   Project Inform has been damaged in the amount of $10,000.

23   240. On August 20, 2003, Project Inform assigned in writing to plaintiff the right

24   to sue defendant Tonken on a cause of action for promissory estoppel.

25   WHEREFORE, plaintiff prays for judgment as follows:

26   1. For a finding that defendants Tonken, AT Associates and Does 1-100 are

27   commercial fundraisers for charitable purposes within the meaning of Government Code section

28

---

63.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   12599 and for an order requiring them to comply with the provisions of that section;

2        2. For a preliminary and permanent injunction, enjoining defendants Tonken, AT

3   Associates, Does 1-100, their employees, agents, servants, representatives, successors, and

4   assigns, any and all persons acting in concert or participation with them, and all other persons,

5   corporations, or other entities acting under, by, through, or on their behalf from engaging in or

6.  performing any of the following acts:

7        a) soliciting any charitable contributions in this State, borrowing, or conducting

8        business of any kind, on behalf of or in the name of, any nonprofit corporation or other

9        entity holding assets in charitable trust for the benefit of the public until such time as

10       defendants have rendered full and complete, accurate accountings of all funds received by

11       them and/or controlled by them and/or disbursed by them at any time in connection with

12       the charity events mentioned in this Second Amended Complaint;

13       b) soliciting any charitable contributions in this State, borrowing, or conducting

14       business of any kind, on behalf of or in the name of, any nonprofit corporation or other

15       entity holding assets in charitable trust for the benefit of the public until such time as

16       defendants have rendered a full and complete, accurate accounting of all funds received

17       by them and/or controlled by them and/or disbursed by them at any time in connection

18       with the Performing Arts Foundation bank account held in defendant Tonken's name

19       c) soliciting any funds, assets or property for charitable purposes and/or receiving

20       and/or controlling and/or disbursing any funds, assets, or property as a result of a

21       solicitation for charitable purposes in this State prior to fully complying with the

22       registration and reporting requirements set forth in Government Code section 12599,

23       subdivisions (b), (c) and (d); and

24       d) expending, disbursing, transferring, encumbering, withdrawing, or otherwise

25       exercising control over any funds donated for one or more of the charity events

26       mentioned in this Second Amended Complaint without prior authorization from this

27       Court;

28

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE REᴸᴵᴱᴲ

1    e) improperly diverting charitable funds they control for purposes unrelated to the

2    purpose for which the funds were given; and

3    f) refusing to provide an accounting of charitable funds when required by law to

4    do so.

5    3. For a preliminary and permanent injunction, enjoining defendant Clarke, his

6    employees, agents, servants, representatives, successors, and assigns, any and all persons acting

7    in concert or participation with him, and all other persons, corporations, or other entities acting

8    under, by, through, or on his behalf from

9    a) disbursing or causing to be disbursed, from whatever source, any funds

10    received in connection with a charitable campaign or from a charitable donor until he has

11    first provided a full and complete accounting for all funds disbursed from the Celebrating

12    Diana underwriting account and for all funds deposited into the Ronin Law Group Trust

13    Account by, or at the direction of, defendant Tonken from January 1, 2001, to the present

14    b) disbursing charitable funds or causing such funds to be disbursed prior to

15    receiving all proper authorizations for such disbursement from the charity representative;

16    and

17    c) authorizing the disbursement of charitable funds for purposes unrelated to the

18    purposes for which such funds were given.

19    4. For a preliminary and permanent injunction, enjoining defendant Gershman,

20    her employees, agents, servants, representatives, successors, and assigns, any and all persons

21    acting in concert or participation with her, and all other persons, corporations, or other entities

22    acting under, by, through, or on her behalf from authorizing by whatever means, the

23    disbursement of funds from the Gershman Foundation until she has done all of the following: (i)

24    provided a full and complete, accurate accounting of all funds disbursed from the Gershman

25    Foundation from April 1, 1999, to the present, (ii) established procedures satisfactory to the

26    Court to ensure that the disbursements she authorizes from the Gershman Foundation further the

27    charitable purpose of the Foundation, (iii) ensured that the Gershman Foundation has

28

65.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1 | implemented all required policies and procedures related to the disbursement of charitable funds

2 | by private foundations as provided for in federal statutes and regulations, and (iv) filed the

3 | required financial reports with the Attorney General for the year 2001;

4 |      5. Pursuant to Business and Professions Code section 17203, for a preliminary

5 | and permanent injunction enjoining defendants, their successors, agents, representatives,

6 | employees and all persons who act in concert with, or on behalf of defendants from engaging in

7 | unfair competition as defined in Business and Professions Code section 17200, including, but not

8 | limited to, acts and practices like those alleged in this Second Amended Complaint;

9 |      6. For damages due the beneficiaries of the events at issue and the beneficiaries

10 | of the Gershman Foundation and prejudgment interest in an amount to be proved at trial, but at

11 | least $4 million;

12 |      7. For a full and complete, accurate accounting from defendants Tonken, AT

13 | Associates, Clarke and Gershman concerning the charity events identified in this Second

14 | Amended Complaint and the charitable donations made by the Gershman Foundation from

15 | January 1, 2000, to the present; for defendants' expenditure and disposition of all revenues and

16 | assets that were solicited and received for Family Celebration, Celebrating Diana, the Kids

17 | Campaign Event, the Berle Event, the Fox Foundation Event and the Great Cause Event and

18 | from the Gershman Foundation, and which were controlled and improperly diverted from bank

19 | accounts through defendants' breach of fiduciary duty, fraud, or other wrongful acts as alleged in

20 | this Second Amended Complaint. Upon the rendering of such accounting, that the Court

21 | determine the property, real or personal, or the proceeds thereof, to which the beneficiaries of

22 | Family Celebration, Celebrating Diana, the Kids Campaign Event, the Berle Event, the Fox

23 | Foundation Event and the Great Cause Event and the Gershman Foundation are lawfully entitled,

24 | in whatsoever form and in whatsoever hands they may now be, and order and declare that all

25 | such property or the proceeds thereof is impressed with a trust for charitable purposes, that

26 | defendants are constructive trustees of all such charitable funds and assets and that the same shall

27 | be deposited forthwith in Court by each and every defendant now holding or possessing the same

28 |

66.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF

1   or claiming any right, title or interest therein.  In addition, that defendants Tonken, AT

2   Associates, Clarke, and Gershman be surcharged and held liable and judgment entered against

3   each of them for any and all such assets for which they fail to properly account, together with

4   interest thereon at the legal rate from the date of liability thereon; and that any and all expenses

5   and fees incurred by defendants in this action be borne by defendants and each of them, and not

6   by any charitable funds or assets;

7        8.  Pursuant to Business and Professions Code section 17206, that the Court

8   assess a civil penalty of two thousand five hundred dollars ($2,500) against defendants for each

9   violation of Business and Professions Code section 17200 per day, as proved at trial, in an

10  amount no less than $350,000;

11       9.  For punitive and exemplary damages according to proof;

12       10.  For plaintiff's costs of suit and other costs pursuant to Government Code

13  sections 12597 and 12598;

14       11. For Attorneys fees as provided in Government Code section 12598, as

15  amended on August 2, 2003, and Code of Civil Procedure section 1021.8;

16       12.  For such other and further relief as the Court may deem to be just and proper.

17  DATED: ~~August~~ September 25, 2003

18                                      Respectfully submitted,

19                                      BILL LOCKYER, Attorney General
                                        of the State of California
20                                      JAMES M. CORDI, Supervising
                                        Deputy Attorney General
21                                      TANIA M. IBANEZ
                                        SONJA K. BERNDT
22                                      Deputy Attorneys General

23

24                                      By _____
                                           SONJA K. BERNDT
25                                         Deputy Attorney General

26                                      Attorneys for Plaintiff

27  AT.2ndamcomplaint.wpd

28
                                        67.

SECOND AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, DECLARATION OF A
CONSTRUCTIVE TRUST, AN ACCOUNTING, AN INJUNCTION AND FOR OTHER EQUITABLE RELIEF